## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF TEXAS *ex rel.* DR. JOSÉ G. DONES, | § § § § | CIVIL ACTION NO. 1:21-cv-181 |
| *Plaintiffs* | § § | JURY TRIAL DEMANDED |
| v. | § § § | FILED UNDER SEAL |
| HARLINGEN MEDICAL CENTER L.P., DR. ERIC G. SIX, VALLEY NEUROSURGEONS P.L.L.C., MICHAEL GONZALES, NUERA MEDICAL L.L.C., and PRIME HEALTHCARE SERVICES, INC., | § § § § § § § | |

## FIRST AMENDED COMPLAINT

Plaintiffs United States of America and State of Texas, *ex rel* Dr. Jose G. Dones, file this First Amended Complaint.  This lawsuit is a *qui tam* action brought under the False Claims Act against Defendants Harlingen Medical Cetner, L.P., Dr. Eric G. Six, Valley Neurosurgeons, P.L.L.C., NuERA Medical, LLC, and Prime Healthcare Services, Inc.

## INTRODUCTION

1.     President Lyndon Baines Johnson signed Medicare and Medicaid into law in 1965 to protect senior citizens and low-income Americans from the dread of being ill and uninsured. Unfortunately, some contemporary opportunists abuse Medicare and Medicaid to enrich themselves at public expense.  In this case, Harlingen Medical Center, L.P. and its corporate parent Prime Healthcare Services, Inc. have provided illegal benefits to Dr. Eric Six in exchange for Dr. Six performing lucrative spine surgeries at Harlingen Medical Center.

2.     Specifically, Harlingen Medical Center, L.P. and Prime Healthcare Services, Inc. have induced Dr. Six to perform surgeries at its facilities by agreeing to purchase surgical hardware and supplies from a NuERA Medical, LLC, a company owned by his son-in-law Michael Gonzales. Through their joint conduct, Defendants have caused false certifications and claims to be submitted to the Centers for Medicare and Medicaid Services ("CMS") and to the Defense Health Agency in violation of the federal False Claims Act, Anti-Kickback Statute, and Stark Law,

FIRST AMENDED COMPLAINT                                                                                              1

as well as the state Medicaid Fraud Prevention Act.

3.      Dr. José Dones, a respected neurosurgeon who has practiced in the Rio Grande Valley for almost twenty years, brings this *qui tam* action on behalf of himself, the United States of America, and the State of Texas to hold Defendants accountable for their malfeasance, bring justice to the injured parties, and protect the reputation of the medical profession. Dones seeks statutory penalties and attorneys' fees and demands trial by jury.

## I.    PARTIES

4.      *Qui tam* Plaintiff and Relator, Dr. José Dones ("Dones" or "Relator"), is a natural person. Dones resides in Harlingen, Cameron County, Texas. Dones brings this action for violations of 31 U.S.C. §§ 3729, *et seq*. on behalf of himself, the United States of America pursuant to 31 U.S.C. § 3730(b)(1), and the State of Texas pursuant to Texas Human Resources Code § 36.101. Dones has knowledge of the fraudulent practices complained of herein.

5.      Defendant Dr. Eric G. Six ("Dr. Six") is a natural person. Dr. Six resides in Harlingen, Cameron County, Texas. Dr. Six is a neurosurgeon who practices at Harlingen Medical Center in Harlingen, Cameron County, Texas.

6.      Defendant Valley Neurosurgeons P.L.L.C. ("VNS") is a Texas professional limited liability company. Its principal place of business is 5505 South Expressway 77, Suite 306, Harlingen, Cameron County, Texas. Dr. Six is VNS's owner and sole member.

7.      Defendant Michael Gonzales ("Gonzales") is a natural person. Gonzales is a resident of Harlingen, Cameron County, Texas. Gonzales is a seller and distributor of medical devices used in surgery, including neurosurgery, and Dr. Six's son-in-law.

8.      Defendant NuERA Medical L.L.C. ("NuERA") is a Texas limited liability company that Gonzales owns. Its principal place of business is 2404 East Expressway 77/83 (2404 South Expressway 83), Harlingen, Cameron County, Texas.  Gonzales is NuERA's owner and sole member.

9.      Defendant Harlingen Medical Center, L.P. ("HMC") is a Texas limited partnership. HMC operates a level-four trauma designated hospital. Its principal place of business is 5505 South Expressway 77, Harlingen, Cameron County, Texas.

10.      Defendant Prime Healthcare Services, Inc. ("PHS"), is a Delaware corporation. It is one of the largest profit-oriented hospital systems in America. PHS and its chief executive officer recently settled separate False Claims Act allegations for $65,000,000. Press Release, U.S. Dep't of Justice, Prime Healthcare Services and CEO to Pay $65 Million to Settle False Claims Act Allegations (Aug. 3, 2018), *available at* https://www.justice.gov/opa/pr/prime-healthcare-services-and-ceo-pay-65-million-settle-false-claims-act-allegations. According to its filings with the Texas Secretary of State, PHS is HMC's sole general partner. PHS's principal place of business is 3480 East Guasti Road, Ontario, San Bernardino County, California.  PHS owns Defendant Harlingen Medical Center, L.P.

## II.      JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over claims arising under the False Claims Act, 31 U.S.C. §§ 3729–3733 ("FCA"), pursuant to 28 U.S.C. § 1331 and to 31 U.S.C. § 3732(a), the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

12.      This Court has subject matter jurisdiction over claims arising under the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), pursuant to 28 U.S.C. § 1331 and to 42 U.S.C. § 1320a-7b, the latter of which specifically deems violations of the AKS to be violations of the FCA.

13.      The Court has jurisdiction over the subject matter of claims arising under the Stark Law, 42 U.S.C. § 1395nn ("Stark"), pursuant to 28 U.S.C. § 1331 and to Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1993 (2016) (holding that implied false certification of statutory compliance can create FCA liability).

14.      This Court has supplemental jurisdiction over this case for the claims brought on behalf of the State of Texas pursuant to 31 U.S.C. § 3732(b) under the Texas Medicaid Fraud Prevention Act ("MFPA") because recovery sought on behalf of the State of Texas arises from the same transactions and occurrences as the claim brought on behalf of the United States.

15.      This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a), which provides that "[a]ny action under section 3730 may be brought in any judicial

district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business or in which any act proscribed by section 3729 occurred." Section 3732(a) also authorizes nationwide service of process. During the relevant period, Defendants resided and/or transacted business in the Southern District of Texas and the violations of 31 U.S.C. § 3729 *et seq* described herein occurred within this judicial district.

16.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because the Defendants can be found in, reside in, and/or transact business in the Southern District of Texas and because the violations of 31 U.S.C. § 3729 described herein occurred within this judicial district.

### III.     QUI TAM ALLEGATIONS

17.     The facts and allegations underlying this Complaint have not been publicly disclosed before the unsealing of Relator's Complaint, as public disclosure is defined in 31 U.S.C. § 3730(e)(4).

18.     Notwithstanding any prior public disclosure, Relator is the original source of the facts alleged in this Complaint, as "original source" is defined in 31 U.S.C. § 3730(e)(4)(B).

19.     As required by the FCA, 31 U.S.C. § 3730(b)(2), and the MFPA, Tex. Human Res. Code § 36.102, Relator has provided to the Attorney General of the United States, the U.S. Attorney for the Southern District of Texas, and the Attorney General of the State of Texas, simultaneously with or prior to the filing of this Complaint, a Disclosure Statement of all material evidence and information related to this Complaint.

20.     This Disclosure Statement was supported by material evidence known to Relator at the time of the filing of this Complaint. This evidence establishes the existence of Defendants' legal responsibility for false claims under the FCA and MFPA.

21.     Because the Disclosure Statement included attorney-client communications and Relator's attorneys' work product and was submitted to the U.S. Attorney General, the U.S. Attorney, and the Texas Attorney General in their capacities as potential co-counsel in this litigation, Relator understands his Disclosure Statement and its content to be privileged and confidential.

## IV.   <u>APPLICABLE LAW</u>

### A.   FALSE CLAIMS ACT

22.   The FCA provides that any person who knowingly submits or causes to be submitted a false or fraudulent claim to the government of the United States ("USG") for payment or approval is liable for a civil penalty of $5,500 to $11,000 for each such claim submitted or paid, plus three times the amount of the damages sustained by the USG. 31 U.S.C. § 3729(a)(1). Liability attaches both when a defendant knowingly presents, or causes to be presented, a false claim for payment from the USG, 31 U.S.C. § 3729(a)(1)(A), and when false records or statements are knowingly used, or caused to be used, for payment from the USG, 31 U.S.C. § 3729(a)(1)(B). The FCA allows any person having information regarding a false or fraudulent claim against the USG to bring an action for himself as a "relator" on behalf of the USG and to share in any recovery. 31 U.S.C. § 3730(b).

### B.   ANTI-KICKBACK STATUE

23.   The Anti-Kickback Statute is designed to ensure that healthcare providers make decisions based on the needs of their patients without influence from those who stand to profit by influencing those decisions. The law prohibits any person or entity from offering or accepting a payment or other incentive intended to encourage the recommendation, use, or purchase of any good or service that could be covered under a government health program such as Medicare, Medicaid, or Tricare. 42 U.S.C. § 1320A-7b(b).

24.   Compliance with the Anti-Kickback Statute is a material condition of receiving payment from government-funded healthcare programs, including Medicare, Medicaid, and Tricare. *See, e.g.*, U.S. Centers for Medicare and Medicaid Services, Medicare Enrollment Form, CMS-855A, *available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/cms855a.pdf. Falsely certifying compliance with the Anti-Kickback Statute in connection with a claim submitted to a government-funded healthcare program renders the claim false under the FCA and MFPA. 42 U.S.C. § 1320a-7b(g). Indeed, submitting any claim "that includes items or services resulting from a violation of [the Anti-Kickback Statute] constitutes a false or fraudulent claim for purposes of [the False Claims Act]," *id.*, and "a person need not have

actual knowledge of this section or specific intent to commit a violation of this section," 42 U.S.C. § 1320a-7b(h). Thus, submitting a claim, whether certified or not, that violates the Anti-Kickback Statute is a *per se* violation of the False Claims Act.

**C.    STARK LAW**

25.    The Stark Law prohibits healthcare providers from billing Medicare, Medicaid, and Tricare for items or services provided based on a referral from a physician with whom the provider has a financial relationship. 42 U.S.C. § 1395nn. The statute defines "referral" broadly to include any "request by a physician for [an] item or service." 42 U.S.C. § 1395nn(h)(5)(A). Financial relationships include ownership interest in an entity as well as a compensation arrangement between a physician and an entity. 42 U.S.C. §§ 1395nn(a)(2), 1395nn(h)(1)(A). If a physician has a financial relationship with an entity, the physician cannot request items or services from the entity and cannot bill third parties for those items or services. 42 U.S.C. § 1395nn(a)(1)*.* This prohibition extends to immediate family members, *id.*, including the spouses of one's children, 42 C.F.R. § 411.351.[1] Further, the Stark Law prohibits entities, such as hospitals, from requesting Medicare, Medicaid, and Tricare reimbursements "for designated health services furnished pursuant to a [prohibited] referral." 42 U.S.C. § 1395nn(a)(1)(B).

26.    Compliance with the Stark Law is a material condition of receiving payment from government funded healthcare programs, including Medicare, Medicaid, and Tricare. U.S. ex rel. Parikh v. Citizens Med. Ctr., 977 F. Supp. 2d 654, 663 (S.D. Tex. 2013), *aff'd* sub nom. U.S. ex rel. Parikh v. Brown, 762 F.3d 461 (5th Cir. 2014), opinion withdrawn and superseded on reh'g, 587 F. App'x 123 (5th Cir. 2014), withdrawn from bound volume (Oct. 1, 2014), and *aff'd* sub nom. U.S. ex rel. Parikh v. Brown, 587 F. App'x 123 (5th Cir. 2014). Falsely certifying compliance with the Stark Law in connection with a claim submitted to government-funded healthcare program renders the claim false under the FCA and MFPA. *Id.*

---

[1] Federal regulations clarify the meaning of "immediate family member" as used in the Stark Act: "Immediate family member or member of a physician's immediate family means husband or wife; birth or adoptive parent, child, or sibling; stepparent, stepchild, stepbrother, or stepsister; father-in-law, mother-in-law, ***son-in-law***, daughter-in-law, brother-in-law, or sister-in-law; grandparent or grandchild; and spouse of a grandparent or grandchild." 42 C.F.R. § 411.351 (emphasis added).

**D.      MEDICAID FRAUD PREVENTION ACT**

27.      The MFPA similarly provides that any person who knowingly submits or causes to be submitted a false or fraudulent claim to the government of the State of Texas ("TSG") for payment or approval under the Medicaid program is liable for a civil penalty of $5,500 to $11,000 for each such claim submitted or paid, plus two times the amount of the damages sustained by the State. Texas Human Resources Code § 36.052(a)(3). Liability attaches to a defendant who knowingly makes, or causes to be made, a false statement on an application for payment under the Medicaid program and to a defendant who knowingly makes, or causes to be made, a false statement concerning information required by federal or state law pertaining to Medicaid. Texas Human Resources Code § 36.002(4)(B). Liability also attaches if a defendant knowingly charges, solicits, accepts, or receives money as a condition to providing service to a Medicaid recipient if the cost of the service is paid for, in whole or in part, by Medicaid. Texas Human Resources Code § 36.002(5). The MFPA also allows any person having information regarding a false or fraudulent claim against the State to bring an action for himself on behalf of the State and to share in any recovery. Texas Human Resources Code § 36.101(a).

**E.      RELATOR**

28.      Based on these statutory provisions, *qui tam* Plaintiffs and Relator seek, through this action, to recover damages, civil penalties, and attorneys' fees arising from the Defendants' submission, or actions that caused the submission, of false and fraudulent claims, records, and statements to the USG and TSG to obtain consequently improper payments from Medicare, Medicaid, and Tricare.

**V.      FACTUAL ALLEGATIONS**

**A.      BACKGROUND: GOVERNMENT-FUNDED HEALTHCARE AND ITS REQUIREMENTS**

29.      The Medicare program, as enacted under Title XVIII of the Social Security Act of 1965, 42 U.S.C. §§ 1395, *et seq.*, pays for certain healthcare services. Medicare eligibility is based on age, disability, or affliction with diseases.

30.      The Medicaid program, as enacted under Title XIX of the Social Security Act of

1965, 42 U.S.C. § 1396, *et seq.*, provides medical assistance for indigent individuals. Although federally created, the Medicaid program is a joint federal-state program in which both the USG and TSG fund the program.

31.     Tricare Management Activity ("Tricare") is a program of the U.S. Department of Defense that helps pay for covered civilian health care obtained by military beneficiaries, including retirees, their dependents, and dependents of active-duty personnel. 10 U.S.C. §§ 1079, 1086; 32 C.F.R. Part 199.  Tricare does not itself review claims but instead contracts with fiscal intermediaries and managed care contractors to review and pay claims. U.S. Dep't of Def., Instruction 6015.23, Foreign Military Personnel Care and Uniform Business Offices in Military Treatment Facilities at 18 (Feb. 23, 2015), *available at* https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/601523p.pdf.

32.     To understand Defendants' FCA and MFPA liability, it is necessary to understand how providers bill the government for qualified healthcare. There are two general components to government-funded healthcare, Part A and Part B. Part A is for hospital billing and skilled nursing care. Part B is for physician or physician-group billing. Every Medicare, Medicaid, and Tricare claim submitted by either a hospital or a physician must include a unique billing number, known as the healthcare provider's National Provider Identifier ("NPI").

33.     To be eligible for Medicare reimbursement, a hospital or physician must apply for an NPI with the National Plan and Provider Enumeration System ("NPPES"). Once approved, the hospital or physician then receives an NPI, which is used as an identifier on billing forms. This provider number is cross-referenced with the provider's tax identification number.

34.     To be eligible for Medicare reimbursement, a hospital or physician must execute a CMS Provider Agreement.  The CMS Provider Agreement's certification contains three specific parts: (1) the applicant agrees to abide by Medicare laws, regulations, and program instructions; (2) the applicant understands that payment by Medicare is conditioned on complying with the aforementioned rules as well as the AKS and Stark Law, and (3) the applicant understands that payment by Medicare is also conditioned on compliance with applicable conditions of participation.

35.     To be eligible for Texas Medicaid reimbursement, a hospital or physician must enroll with the Texas Medicaid Healthcare Partnership ("TMHP") through an application process. Under federal law, Medicaid is the payor of last resort. That is, Medicare-covered services must first be billed to and paid by Medicare. Thus, a hospital or physician must be a Medicare participant to enroll in Texas Medicaid.

36.     To be eligible for Tricare reimbursement, a hospital or physician must apply for certification through Tricare. Like Medicaid, Tricare is a payor of last resort. Thus, a hospital or physician must be a Medicare participant and have a valid NPI to become certified.

37.     When submitting a bill to Medicare, Medicaid, or Tricare, the healthcare provider must use code numbers to identify the services, diagnoses, or procedures rendered. These billing codes are contained in manuals known as the Healthcare Common Procedure Coding System ("HCPCS"),[2] which is based on the American Medical Association's Current Procedural Terminology ("CPT").

38.     Physicians enter these codes on form CMS-1500. Hospitals use form UB-04.[3] Both forms are universal and are submitted to most third-party payors of healthcare services, including Medicare, Medicaid, and Tricare. The forms are designed for quick and easy reading. The codes entered onto the forms establish what services were performed, by whom, and how much the government is being charged. Based on these codes, Medicare, Medicaid, and Tricare determine how much they will pay.

---

[2] More information about the HCPCS is available on the Center for Medicare and Medicaid Services website at https://www.cms.gov/Medicare/Coding/MedHCPCSGenInfo.

[3] Form UB-04 is also known as form CMS-1450. This standardized form is used in the Medicare/Medicaid program to apply for reimbursement of covered services by all providers that accept Medicare/Medicaid assigned claims and that do not bill Medicare/Medicaid electronically.

The CMS-1450 form (aka UB-04 at present) can be used by an institutional provider to bill a Medicare fiscal intermediary (FI) when a provider qualifies for a waiver from the Administrative Simplification Compliance Act (ASCA) requirement for electronic submission of claims. It is also used for billing of institutional charges to most Medicaid State Agencies.

CMS,          Institutional          Paper          Claim          Form          (CMS-1450), https://www.cms.gov/Medicare/Billing/ElectronicBillingEDITrans/15_1450 (last visited Oct. 13, 2021).

FIRST AMENDED COMPLAINT                                                                    9

39.     When submitted under either Part A or Part B, physicians and hospitals are responsible for ensuring that all Medicare, Medicaid, and Tricare claims accurately reflect the services rendered and by whom.

40.     Form CMS-1500 claims include a certification that the services listed were medically necessary and "were personally furnished by me or my employee under my personal direction."[4] CMS-1500 forms also require doctors to certify as follows: "I certify that the foregoing information is true, accurate, and complete. I understand that payment and satisfaction of this claim will be from Federal and State funds[] and that any false claims, statement, or documents, or concealment of material fact, may be prosecuted under applicable Federal or State laws." Additionally, this USG's National Uniform Claim Committee-approved Health Insurance Claim Form carries the following express warning: "NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete[,] or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

41.     Submission of Form UB-04 "constitutes certification that the billing information as shown on the face [t]hereof is true, accurate[,] and complete. That the submitter did not knowingly or recklessly disregard or misrepresent or conceal material facts," as the back of the form states. Likewise, Form UB-04 contains the following express warning:

> 8.      For Medicaid purposes: The submitter understands that because payment and satisfaction of this claim will be from Federal and State funds, any false statements, documents, or concealment of a material fact are subject to prosecution under applicable Federal or State Laws.
>
> 9.      For TRICARE Purposes:
>
> (a)     The information on the face of this claim is true, accurate[,] and complete to the best of the submitter's knowledge and

---

[4] A sample of this form (CMS-1500) is available on the Center for Medicare and Medicaid Services website at https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms1500.pdf.

belief, and services were medically necessary and appropriate for the health of the patient[.]

42.     Therefore, Defendants had notice of their obligations under the law.

43.     Examples of false healthcare claims under these laws include when a healthcare practitioner or provider presents a claim for payment for a medical item or service that the person knows or should know is not provided as claimed, 42 U.S.C. § 1320a-7a(a)(1), or is false or fraudulent, 42 U.S.C. § 1320a-7a(a)(1)(B), 42 U.S.C. § 1320a-7b(a). False claims also exist whenever a healthcare practitioner or provider submits a claim found to be false, fictitious, or fraudulent or to be supported by a written statement that is false fictitious, fraudulent, or lacking a material fact required to be included. 31 U.S.C. § 3801 *et seq*.

44.     This entire system of government-funded healthcare is premised on honesty and good faith because the USG and TSG both rely on accurate codes and truthful representations when receiving claims. When honesty and good faith prevail, American taxpayers can be assured that they are only paying for fairly billed medical goods and services that deserve public support as part of our country's imperfect but intentional social contract. When dishonest, bad-faith actors enter the system to enrich themselves at public expense, they undermine support for the programs from which they take and weaken the social contract.

**B.     STARK LAW MISCONDUCT: HMC INDUCED DR. SIX TO PERFORM LUCRATIVE SPINE SURGERIES AT ITS HOSPITAL BY MAKING PAYMENTS TO DR. SIX'S SON-IN-LAW'S COMPANY NUERA**

45.     Spine surgeries are one of the most lucrative lines of business for hospitals.[5]

46.     Dr. Six is a neurosurgeon.  The more surgeries Dr. Six performs at HMC, the more money HMC and PHS make.

47.     Dr. Six asked HMC to purchase services and supplies, including expensive surgical hardware, from NuERA and other companies represented by Gonzales (including Xspine/Xtant) each time Dr. Six performed a surgery at HMC.

---

[5] *See., e.g.*, Reed Abelson, *The Spine as Profit Center*, NEW YORK TIMES (December 30, 2006).

48.     HMC agreed to Dr. Six's request and, to reward him for performing his surgeries at HMC rather than a competing hospital, purchased services and goods from NuERA and other companies represented by Gonzales (including Xspine/Xtant) each time that Dr. Six performed a surgery.   These services and goods, including surgical hardware, were used in the surgeries performed by Dr. Six.

49.     Gonzales was often in the operating room at the same time as Dr. Six during these surgeries.

50.     HMC, PHS, Dr. Six, and Gonzales all knew that Gonzales was Dr. Six's son-in-law, and that it was a Stark Law violation for the hospital to purchase goods and services from NuERA and other companies represented by Gonzales (including Xspine/Xtant) in connection with surgeries performed by Dr. Six.

51.     Upon information and belief, HMC did not purchase goods and services from NuERA and companies where Gonzales was acting as the representative when other spine surgeons operated at the hospital.

52.     NuERA is owned by Gonzales, who is Dr. Six's son-in-law by virtue of his marriage to Dr. Six's daughter, Tammy Gonzales née Six. As noted above, Gonzales is therefore one of Dr. Six's "immediate family member[s]", as defined by the USG. *See* supra n.1. Further, because Gonzales's ownership interest in NuERA is a community property that he owns with his wife, every benefit conferred upon NuERA and Dr. Six's son-in-law is conferred equally upon Dr. Six's daughter. Thus, HMC's purchases of medical supplies from NuERA confer a direct financial benefit upon Dr. Six's family, and Dr. Six's direction to make those purchases constitutes self-dealing and an improper financial relationship as defined by the Stark Law. 42 U.S.C. §§ 1395nn(a)(2), 1395nn(h)(1)(A).

53.     Since Dr. Six and HMC began using Gonzales,NuERA, and other companies represented by Gonzales as their suppliers, every bill that Dr. Six, HMC, either, or both has submitted to the USG or TSG for reimbursement for medical supplies, physician services, or hospital services used during or related to the surgeries that Dr. Six has performed at HMC has violated the Stark Law because the Stark Law bars HMC from requesting Medicare, Medicaid,

and Tricare reimbursements for services "furnished pursuant to" such prohibited referrals. 42 U.S.C. § 1395nn(a)(1)(B); *see* supra Part IV.C.

54.     Employees of PHS, HMC's corporate parent, were aware of this scheme but took no action because PHS was profiting from the surgeries.

55.     Upon information and belief, HMC, Dr. Six, and Gonzales have engaged in this scheme since at least 2012.

## C.     ANTI-KICKBACK STATUTE MISCONDUCT: HMC CONFERS IMPROPER BENEFITS UPON DR. SIX AND HIS FAMILY IN EXCHANGE FOR DR. SIX'S PATIENT REFERRALS

56.     Dr. Six and HMC engage in a scheme of mutual exploitation. The nature of the agreement and exchange between Defendants is straightforward: HMC provides an illegal financial payment to Dr. Six's family each time Dr. Six performs a surgery at HMC. *See* supra Part V.B..

57.     Dr. Six stopped or all but stopped performing surgeries at other hospitals in the Rio Grande Valley, the service region where HMC is located, and began to perform surgeries at HMC exclusively or almost exclusively. Neurosurgery, Dr. Six's specialty, is highly prized and highly compensated, and it results in high fees to the hospitals at which it is performed. Because HMC's profits vary directly with the number of neurosurgeries performed at its facilities, HMC is highly motivated to retain doctors like Dr. Six, especially on an exclusive or nearly exclusive basis. By conferring an improper and illegal benefit upon Dr. Six and his family to induce the doctor to provide services at its facility and to maintain the doctor's exclusivity or near exclusivity, however, HMC has succumbed too far to that motivation.

58.     Since the improper financial arrangement between Dr. Six, Gonzales, and HMC began, every bill that Dr. Six, HMC, either, or both has submitted to the USG or TSG for reimbursement for medical supplies, physician services, or hospital services used during or related to the surgeries that Dr. Six has performed at HMC has violated the Anti-Kickback Statute.

59.     Upon information and belief, HMC, Dr. Six, and Gonzales have engaged in this scheme since at least 2012.

**D.    REVIEW**

60.    *First*, Defendants were aware that Gonzales was Dr. Six's son-in-law. Therefore, Defendants had knowledge that Gonzales was a member of Dr. Six's "immediate family", as defined under 42 C.F.R. § 411.351 and 42 C.F.R. § 411.351.

61.    Gonzales' ownership interest in NuERA is community property. Therefore, Dr. Six's daughter is also an owner of NuERA.

62.    The commissions earned by Gonzales and/or NuERA while selling goods on behalf of other companies (including Xtant/Xspine) were community property.

63.    Defendants were aware that Gonzales owned NuERA. Therefore, Defendants had knowledge that Gonzales had a "financial relationship" with NuERA, as defined under the Stark Law at 42 U.S.C.A. § 1395nn(a)(1)(A).

64.    Defendants were aware that HMC agreed to and did pay NuERA (and companies such as Xtant/Xspine that paid a commission to Gonzales and/or NuERA) for goods used in surgeries performed by Dr. Six. Therefore, Defendants had knowledge of the "compensation arrangement", as defined by 42 U.S.C.A. § 1395nn(h)(1)(A), that existed between HMC and NuERA/Gonzales because of Dr. Six's patient referrals to HMC and supply acquisition referrals to NuERA and companies represented by Gonzales/NuERA.

65.    The Stark Law prohibits such referrals. 42 U.S.C.A. § 1395nn(a)(1)(A). Therefore, each instance in which Dr. Six referred HMC to NuERA and other companies represented by Gonzales constituted a violation of the Stark Law.

66.    Every Medicare, Medicaid, and Tricare claim submitted for reimbursement to the USG or TSG that violates the Stark Law constitutes a false claim under the FCA. U.S. ex rel. Parikh v. Citizens Med. Ctr., 977 F. Supp. 2d 654, 663 (S.D. Tex. 2013). Therefore, each instance in which any Defendant billed the USG or TSG for services rendered or products tendered pursuant to Dr. Six's improper, *i.e.*, Stark Law-violating, referrals violated the FCA.

67.    Further, the Anti-Kickback Statute prohibits hospitals from paying "any remuneration" to doctors for referrals, 42 U.S.C. § 1320A-7b(b)(2), and prohibits doctors from soliciting or receiving "any remuneration (including any kickback, bribe, or rebate) directly or

indirectly, overtly or covertly," for referrals, 42 U.S.C. § 1320A-7b(b)(1). HMC's payments to NuERA, a company owned by Dr. Six's son-in-law (and daughter as community property), constitute prohibited remuneration. Further, HMC's payments to companies represented by Gonzales (and which paid a commission to Gonzales) constitute prohibited remuneration. Therefore, each instance in which Dr. Six agreed to perform a surgery at HMC on the condition that HMC remunerate NuERA or another company represented by Gonzales and/or NuERA violated the Anti-Kickback Statute.

68.     Every Medicare, Medicaid, and Tricare claim submitted for reimbursement to the USG or TSG that violates the Anti-Kickback Statute constitutes a false claim under the FCA. 42 U.S.C. § 1320a-7b(g). Therefore, each instance in which any Defendant billed the USG or TSG for services rendered or products tendered pursuant to HMC's improper payment, Dr. Six's improper solicitation, and Gonzales/NuERA's improper receipt of Anti-Kickback Statute-violating remuneration violated the FCA.

69.     *Second*, Defendants were all aware of each other's activities and coordinated their efforts in a seamless course of conduct that persisted for the greater part of a decade. In short, they conspired to perpetuate their Stark Law and Anti-Kickback Statute violations and in so doing, for the reasons stated above, conspired to present false claims to the USG in violation of the FCA. As co-conspirators, each Defendant is jointly and severally liable for the other's acts under 31 U.S. Code § 3729(a)(1)(C).

70.     *Third*, because falsely certifying compliance with the Stark Law and Anti-Kickback Statute on a Medicaid reimbursement request is a violation of the FCA, a federal law, and making or causing to be made a false statement concerning information required by a federal law pertaining to Medicaid is a violation of the MFPA, Texas Human Resources Code § 36.002(4)(B), Defendants' violations of the Stark Law, Anti-Kickback Statute, and FCA in this regard also constitute violations of the MFPA.

71.     Further, HMC's payments, Dr. Six's knowing charge and solicitation, and Gonzlaes/NuERA's acceptance and receipt of money from HMC as a condition to providing service to Medicaid recipients at HMC also constitutes a violation of the MFPA to the extent that

the costs of those services are paid for, in whole or in part, by Medicaid. Texas Human Resources Code § 36.002(5).

72.    *Fourth*, because Defendants were all aware of each other's activities and coordinated their efforts to defraud Medicaid in a seamless course of conduct that persisted for the greater part of a decade, Defendants engaged in an ongoing conspiracy to present false claims to the TSG in violation of the MFPA. As co-conspirators, each Defendant is jointly and severally liable for the other's acts under Texas Human Resources Code § 36.002(9).

## VI.    DEFENDANTS' VIOLATIONS

### A.    CLAIM 1: FALSE CLAIMS ACT [31 U.S.C. §§ 3729(a)(1)(A)–(B)]

73.    *Qui tam* Plaintiffs and Relator reallege and incorporate by reference the allegations made in Paragraphs 1 through 71 of this Complaint.

74.    This is a claim for treble damages and forfeitures under the FCA, 31 U.S.C. §§ 3729, *et seq.*, as amended.

75.    Through the acts described above, Defendants submitted and/or caused to be submitted to officers, employees, or agents of the USG false or fraudulent claims for payment or approval under the USG's Medicare, Medicaid, and/or Tricare program with knowledge of their falsity or with gross negligence or reckless disregard of facts and conditions that would indicate that said statements or records were inaccurate, inappropriate, or false.

76.    Through the acts described above, Defendants made, used, or caused to be made or used, false records and statements to obtain government payment of false or fraudulent claims that would not have been paid if the truth were known. Defendants had knowledge of the falsity of the records or statements or had grossly negligent or reckless disregard of facts and conditions that would indicate that said statements or records were inaccurate, inappropriate, or false.

77.    Plaintiff, the USG, unaware of the falsity of these claims, records, and/or statements made by Defendants, and in reliance on the accuracy thereof, paid Defendants for medical supplies, physician services, hospital services, or combinations of these tainted by violations of federal law as described above.

78.    By reason of Defendants' false records, statements, claims, and omissions, the USG

has been damaged. For each bill that is tainted by the Defendants' illegal acts and scheme, the USG is entitled to treble damages and forfeitures as well as a $5,500 to $11,000 penalty per fraudulent claim submitted by Defendants.

**B.      CLAIM 2: FALSE CLAIMS CONSPIRACY [31 U.S.C. §§ 3729(a)(1)(C)]**

79.      *Qui tam* Plaintiffs and Relator reallege and incorporate by reference the allegations made in Paragraphs 1 through 71 of this Complaint.

80.      This is a claim for treble damages and forfeitures under the FCA, 31 U.S.C. §§ 3729, *et seq.*, as amended.

81.      Through the acts described above, Defendants entered one or more conspiracies among and between themselves and others to defraud the USG by getting false and fraudulent claims approved or paid. Defendants, moreover, took substantial steps in furtherance of those conspiracies by preparing false records and claims and submitting such documents to the USG via the Medicare, Medicaid, and TriCare system for payment or approval.

82.      A known or intended result of Defendants' conspiracy was to induce the USG to pay for medical supplies, physician services, hospital services, or combinations of these tainted by violations of federal law as described above.

83.      Plaintiff, the USG, unaware of the falsity of these claims, records, and/or statements made by Defendants, and in reliance on the accuracy thereof, paid Defendants for medical supplies, physician services, hospital services, or combinations of these tainted by violations of federal law as described above.

84.      By reasons of Defendants' conspiracies, and the acts taken in furtherance thereof, the USG has been damaged in a substantial amount. For each bill that is tainted by Defendants' illegal acts and conspiracy, the USG is entitled to treble damages and forfeitures as well as a $5,500 to $11,000 penalty per fraudulent claim submitted by Defendants.

**C.      CLAIM 3: VIOLATIONS OF THE TEXAS MEDICAID FRAUD PREVENTION**
**         ACT [TEX. HUMAN RES. CODE ANN. §§ 36.002(1), (4)(B)]**

85.      *Qui tam* plaintiffs and relators reallege and incorporate by reference  the allegations made in Paragraphs 1 through 71 of this Complaint.

86.     This is a claim for double damages and forfeitures under the MFPA,  Tex.Human Res. Code Ann § 36.001, *et seq.*, as amended.

87.     Through the acts described above, Defendants made and/or caused to be made a false statement or misrepresentation of a material fact on an application for payment under the Medicaid program with knowledge of the misrepresentation, or with grossly negligent or reckless disregard of facts and conditions that would indicate that said statements or records were inaccurate, inappropriate, and false.

88.     Through the acts described above, Defendants made, caused to be made, induced, or sought to induce the making of false statements or misrepresentations of material fact concerning information required to be provided by federal and/or state laws, rules, and regulations pertaining to the Medicaid program.

89.     Plaintiff, the TSG, unaware of the falsity of these claims, records, and/orstatements made by Defendants, and in reliance on the accuracy thereof, paid Defendants for medical supplies, physician services, hospital services, or combinations of these tainted by violations of state and federal law as described above.

90.     By reason of Defendants' false records, statements, claims, and omissions, the TSG has been damaged. For each bill that is tainted by the Defendants' illegal acts and scheme, the TSG is entitled to double damages and forfeitures as well as a $5,500 to $11,000 penalty per fraudulent claim submitted byDefendants.

**D.     CLAIM 4: TEXAS MEDICAID FRAUD PREVENTION ACT CONSPIRACY [TEX. HUMAN RES. CODE ANN. §§ 36.002(9)]**

91.     *Qui tam* Plaintiffs and Relator reallege and incorporate by reference the allegations made in Paragraphs 1 through 71 of this Complaint.

92.     This is a claim for double damages and forfeitures under the MFPA,  Tex.Human Res. Code Ann § 36.001, *et seq.*, as amended.

93.     Through the acts described above, Defendants entered one or more conspiracies among and between themselves and others to defraud the TSG by getting false and fraudulent claims approved or paid. Defendants, moreover, took substantial steps in furtherance of those

conspiracies by preparing false records and claims and submitting such documents to the TSG via the Medicare, Medicaid, and TriCare system for payment or approval.

94.     A known or intended result of Defendants' conspiracy was to induce the TSG to pay for medical supplies, physician services, hospital services, or combinations of these tainted by violations of state and federal law as described above.

95.     Plaintiff, the TSG, unaware of the falsity of these claims, records, and/or statements made by Defendants, and in reliance of the accuracy thereof, paid Defendants for medical supplies, physician services, hospital services, or combinations of these tainted by violations of state and federal law as described above.

96.     By reasons of Defendants' conspiracies, and the acts taken in furtherance thereof, the TSG has been damaged in a substantial amount. For each bill that is tainted by Defendants' illegal acts and conspiracy, the TSG is entitled to treble damages and forfeitures as well as a $5,500 to $11,000 penalty per fraudulent claim submitted by Defendants.

## VII.   JURY DEMAND

97.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, *qui tam* Plaintiffs and Relator hereby demand trial by jury.

## VIII.   **PRAYER**

98.     WHEREFORE, *qui tam* Plaintiffs and Relator pray for judgment against Defendants as follows:

99.     that Defendants cease and desist from violating 31 U.S.C. §§ 3729, *et seq.*, 42 U.S.C. § 1320a-7b(b), 42 U.S.C. § 1395nn, and Texas Human Resources Code § 36.001, *et seq.*;

100.    that the Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of Defendants' actions, two times the amount of damages the States of Texas has sustained as a result of Defendants' actions, and a civil penalty against each Defendant of $11,000 for each violation of 31 U.S.C. § 3729, *et seq.*, and $11,000 for each violation of Tex. Human Res. Code Ann. § 36.001, *et seq*;

101.    that *qui tam* Plaintiffs and Relator be awarded the maximum amount allowed

FIRST AMENDED COMPLAINT                                                                                     19

pursuant to 31 U.S.C. § 3730(d) and Texas Human Resources Code § 36.110;

102.     that *qui tam* Plaintiffs and Relator be awarded all costs and expenses of this action, including attorneys' fees and court costs; and

103.     that the United States and *qui tam* Plaintiffs and Relator receive all such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

/s/ Michael Cowen
S.D. Tex. ID. No. 19967
Texas Bar No. 00795306
6243 IH-10 West, Suite 801
San Antonio, Texas 78201
Telephone (210) 941-1301
Facsimile: (210) 880-9461
E-Mail for service:  efilings@cowenlaw.com
Personal e-mail:  michael@cowenlaw.com

ATTORNEY IN CHARGE
FOR RELATOR JOSE G. DONES

OF COUNSEL:

COWEN | RODRIGUEZ | PEACOCK P.C.
6243 IH-10 West, Suite 801
San Antonio, TX 78201
Telephone (210) 941-1301
Facsimile (210) 880-9461

Francisco Guerra IV
Texas Bar No. 00796684
Edward Allred
Texas Bar No. 50511764
WATTS GUERRA LLP
3 Dominion Dr., Ste. 100
San Antonio, TX 78257
Telephone (210) 447-0500
Facsimile (210) 447-0501
E-Mail:  fguerra@wattsguerra.com

ATTORNEYS FOR
RELATOR DR. JOSE G. DONES