**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA and STATE OF TEXAS** *ex rel.* **DR. JOSE DONES** | § § § § | **CIVIL ACTION NO. 1:21-cv-00181** |
| *Plaintiffs* | § § | |
| vs. | § § | |
| **HARLINGEN MEDICAL CENTER, L.P. DR. ERIC G. SIX, VALLEY NEUROSURGEONS, P.L.L.C., MICHAEL GONZALEZ, NUERA MEDICAL L.L.C. and PRIME HEALTHCARE SERVICES, INC.** | § § § § § § § | |
| *Defendants* | § § | |

**DEFENDANTS MICHAEL GONZALEZ AND NUERA MEDICAL L.L.C.'S
MOTION TO DISMISS UNDER FEDERAL RULES 12(B)(6) AND 9(B)**

Defendants, Michael Gonzales ("**Mr. Gonzales**") and NuERA Medical, L.L.C. ("**NuERA**") (collectively, "**Moving Defendants**"), ask for this Court to dismiss Dr. Jose Dones' ("**Relator**") First Amended Complaint (Dkt. 18, "**Complaint**"), based on Federal Rule of Civil Procedure ("**Rule**") 12(b)(6) for failure to state a claim, and based on Rule 9(b) for failure to meet the heightened pleading standard for claims alleging fraud.[1]

---

[1] Moving Defendants also join in and concur in the arguments advanced by co-defendants Harlingen Medical Center, L.P. ("**HMC**"), Prime Healthcare Services, Inc. ("**Prime**"), Dr. Eric G. Six ("**Dr. Six**"), and Valley Neurosurgeons, P.L.L.C. ("**Valley**").

# Table of Contents

I.   PRELIMINARY STATEMENT ................................................................ 1

II.  SUMMARY OF THE CLAIMS ............................................................ 2

III. STATEMENT OF THE ISSUES BEFORE THE COURT ................................ 2

IV. SUMMARY OF THE ARGUMENT ....................................................... 2

V.  LEGAL STANDARDS ..................................................................... 4

    A.   RULE 12(B)(6) ......................................................................4

    B.   RULE 9(B) ...........................................................................4

    C.   FCA PLEADING REQUIREMENTS ...................................................4

VI. RELATOR FAILS TO PLEAD FCA CLAIMS BASED ON STARK LAW OR AKS ... 5

    A.   RELATOR HAS NOT PLEAD A STARK LAW VIOLATION ...........................6

        1.   *Mr. Gonzales and NuERA are Not Physicians* ...........................7

        2.   *Mr. Gonzales and NuEra Do Not Furnish DHS* ..........................8

        3.   *Relator Did Not Plead a Stark Law Violation Or Reliable Indicia* .....9

    B.   RELATOR FAILS TO PLEAD AN AKS SCHEME OR RELIABLE INDICIA ..........11

        1.   *Relator Did Not Plead Actual Inducement or Remuneration* ..........14

        2.   *Relator Did Not Plead "Knowing and Willful" Acts* ...................15

VII. RELATOR DID NOT PLEAD EXPRESS OR IMPLIED CERTIFICATION .......... 15

VIII.    RELATOR DID NOT PLEAD PRESENTMENT BY MOVING DEFENDANTS 16

IX. RELATOR DID NOT PLEAD "CAUSATION" ......................................... 17

X.   RELATOR DID NOT RIGOROUSLY PLEAD SCIENTER ............................. 17

XI. RELATOR DID NOT ALLEGE A CONSPIRACY WITH PARTICULARITY ........ 19

XII. RELATOR FAILED TO PLEAD ANY TMPFA CLAIMS ................................ 20

XIII.    RELIEF/CONCLUSION ............................................................ 20

**Table of Authorities**

Page(s)

Cases

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................... 4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................... 4, 10

*Lozano v. Baylor Univ.,*
408 F Supp 3d 861 (W.D. Tex. 2019) .......................................... 20

*Sandersonv. Allstate Fire and Cas. Ins. Co.,* 22-3536,
2023 WL 417478 (S.D. Tex. Jan. 25, 2023) ................................. 1

*U.S. ex rel. Bennett v. Medtronic,* Inc.,
747 F Supp 2d 745 (S.D. Tex. 2010) ...................................... 16, 17

*U.S. ex rel. Drakeford v.Tuomey,*
792 F3d 364 (4th Cir. 2015) ........................................................ 7, 9

*U.S. ex rel. Farmer v. City of Houston,*
523 F.3d 333 (5th Cir. 2008) .......................................................... 19

*U.S. ex rel. Foster v. Bristol-Myers Squibb Co.,*
587 F Supp 2d 805 (E.D. Tex. 2008) ............................................ 9

*U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.,*
748 F Supp. 2d 95 (W.D. Tex. 2010) ............................................ 8

*U.S. ex rel. Grubbs v Kanneganti,*
565 F.3d 180 (5th Cir. 2009) .................................................. passim

*U.S. ex rel. Harman v. Trinity Indus., Inc.,*
872 F.3d 645 (5th Cir. 2017) .......................................................... 5

*U.S. ex rel. Hebert v. Dizney,*
295 Fed Appx 717 (5th Cir. 2008) ............................................... 13

*U.S. ex rel. Lam v. Tenet Healthcare Corp.,*
481 F Supp 2d 689 (W.D. Tex. 2007) .......................................... 12

*U.S. ex rel. Parikh v Citizens Med. Ctr.,*
977 F. Supp. 2d 654 (S.D. Tex. 2013) ...................................... 7, 11

*U.S. ex rel. Parikh vCitizens Med. Ctr.,*
762 F.3d 461 (5th Cir 2014) ........................................................... 7

*U.S. ex rel. Shupe v. Cisco Sys., Inc.,*
759 F.3d 379 (5th Cir. 2014) .......................................................... 4

*U.S. ex rel. Steury v. Cardinal Health, Inc.,*
625 F.3d 262 (5th Cir. 2010) .................................................. 16, 20

*U.S. ex rel. Woods v.SouthernCare, Inc.,*3:09-CV-00313-CWR,
2013 WL 1339375, at *9 (S.D. Miss. Mar. 30, 2013)................... 9

*Unimobil 84, Inc. v. Spurney,*
797 F.2d 214 (5th Cir. 1986).......................................................... 16

*United States ex rel. Colquitt v. Abbott Lab*s.,
858 F.3d 365 (5th Cir. 2017)......................................................... 12

*United States ex rel. Freyv. HealthMgt. Sys., Inc.*,4:21-CV-02024,
  2023 W.L. 2563239 (S.D. Tex. Feb. 10, 2023)............................................................. 9, 10
*United States ex rel. Gage v. Davis S.R. Aviation, L.L.C.*,
  623 F. App'x 622 (5th Cir. 2015)......................................................................... 4
*United States ex rel. Hendrickson v Bank of Am., N.A.*,
  343 F Supp 3d 610 (N.D. Tex. 2018)................................................................. 18, 19
*United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, In*c.,
  SA-17-CV-1249-XR, 2019 WL 5970283 (W.D. Tex. Nov. 13, 2019)................................... 19
*United States ex rel. Jackson v Ventavia Rsch. Grp., LLC,* ,
  2023 WL 2744394, at *11 (E.D. Tex. Mar. 31, 2023)...................................................... 15, 16
*United States ex rel. Jacobs v. Walgreen Co.*,
  21-20463, 2022 W.L. 613160 (5th Cir. Mar. 2, 2022)................................................... 18, 20
*United States ex rel. King v. Solvay Pharm., Inc.*,
  871 F.3d 318 (5th Cir. 2017)................................................................................ 5, 6
*U.S. ex rel. King v Solvay S.A.,*
823 F. Supp 2d 472, 517 (S.D. Tex. 2011)………………………………………………………..19
*United States ex rel. Martin v Hathaway,*
63 F4th 1043, 1052 (6th Cir. 2023)………………………………………………...... 13
*United States ex rel. Monsour v. Performance Accounts Receivable, LLC*,
  2022 W.L. 16840338 (S.D. Miss. Nov. 9, 2022) ......................................................... 18
*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
  519 F. App'x 890 (5th Cir. 2013)...................................................................... 11, 12, 13, 14
*United States ex rel. Park v. Legacy Heart Care, LLC*,3:16-CV-803-S,
  2018 W.L. 5313884 (N.D. Tex. Oct. 26, 2018) ...................................................... 5, 10
*United States ex rel. Ruscher v. Omnicare, Inc.*,
  663 F. App'x 368 (5th Cir. 2016)...................................................................... 11
*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
  125 F.3d 899 (5th Cir.1997) ................................................................................. 1
*United States ex rel.Emerson Park v Legacy Heart Care, LLC*,3:16-CV-0803-S,
  2019 WL 4450371 (N.D. Tex. Sept. 17, 2019) .................................................... 10
*United States ex rel.Hueseman v. Professional Compounding Centers of Am., Inc.,* 14-CV-
  00212-XR, ---F.Supp.3d---,
  2023 WL 2669879 (WD Tex. Mar. 27, 2023) ......................................................... 17
*United States ex rel.Sparks v. IntegraCare Home Health Services, Inc.*, 6:14-CV-480-JDK,
  2022 W.L. 2709685 (E.D. Tex. Mar. 1, 2022).......................................................... 5, 10, 13
*United States v Catholic Health Initiatives*,
  312 F Supp 3d 584 ......................................................................... 7, 9, 14, 15
*United States v CatholicHealth Initiatives*, 4:18-CV-123,
  2022 WL 2657131............................................................................................ 7, 20
*United States v. AbundantLife Therapeutic Services Texas, LLC,* 18-773,
  2019 WL 1930274 (S.D. Tex. Apr. 30, 2019) ......................................................... 4, 12
*United States v. Dental HealthPrograms, Inc.,* 3:18-CV-00463-E,
  2020 WL 3064712 (N.D. Tex. June 8, 2020)......................................................... 20
*United States v. Marline Med. Sols., LLC*,
  579 F Supp 3d 876 (W.D. Tex. 2022) .................................................... 11, 14, 19
*United States v. Senseonics Holdings, Inc.*,
  SA-20-CV-00657-FB, 2023 WL 2354915 (W.D. Tex. Mar. 3, 2023)............................. 12, 14

*Universal Health Servs., Inc. v. United States,*
    136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016) .......................................................... 3, 17


**Statutes**

28 U.S.C. § 1367(c)(3)........................................................................................... 3
31 U.S.C. § 3729(b)(1)(A)(i)–(iii) ........................................................................ 5
31 U.S.C. § 3730................................................................................................... 1
31 U.S.C. §§ 3729(a)(1)(A) and (B) ..................................................................... 4
42 U.S.C. § 1320a-7a(i)(6) ................................................................................. 14
42 U.S.C. § 1320a-7b(g) ..................................................................................... 13
42 U.S.C. 1320a-7b(b) .......................................................................................... 1
42 U.S.C. 1395nn .............................................................................................. 1, 6
42 U.S.C.A. § 1320a-7b(2)(A) ........................................................................... 11
Section 3729(a)(1)(C) ........................................................................................... 4

**Rules**

FEDERAL RULES 12(b)(6)............................................................................. i, 2, 4
FEDERAL RULES 9(b) ............................................................................... passim

**Regulations**

42 C.F.R. § 411.350 .............................................................................................. 6
42 C.F.R. § 411.351 .............................................................................................. 8
42 C.F.R. § 411.354(a)(1)(i)-(ii) ......................................................................... 9

## I.   PRELIMINARY STATEMENT

Relator's pleading can be summarized thusly:

> *I, Relator, am a surgeon. One of my competitors who has served as an expert witness against me, Dr. Six, works with a different hospital. I **think** his son-in-law does business with that hospital. I **think** that should be illegal. Don't ask me how I know this, or details, because I have none (and I didn't plead them, twice).*

This is a non-intervened[2] False Claims Act (31 U.S.C. § 3730 *et seq.* ("**FCA**")) case, which tries to allege fraud. Rule 9(b) requires Relator to plead his claims with particularity and specify the "who, what, where, when, and how"[3] of the alleged fraud to protect Moving Defendants from reputational harm. Rule 9(b) is meant to weed out the type of speculative claims Relator lodges here (before expensive discovery).[4]

Relator's FCA and Texas Medicaid Fraud Prevention Act ("**TMFPA**")[5] claims against Moving Defendants should be dismissed because they are legally deficient, and fail to meet the Fifth Circuit's Rule 9(b) pleading standard. Relator does not provide: (a) a single example of a false or fraudulent claim submitted to the government; nor does he (b) particularize the facts of an alleged Federal Stark Law, 42 U.S.C. 1395nn ("**Stark Law**") or Federal Anti-kickback law, 42 U.S.C. 1320a-7b(b)("**AKS**") scheme; nor does he (c) provide reliable indicia leading to a strong inference that actual false claims were submitted.[6] Relator masquerades the allegations as factual support. But the Complaint reveals unsupported threadbare recitals, legal conclusions, speculation, and innuendo. The Court should dismiss the FCA and TMFPA claims with

---

[2] Over a year after the complaint was filed and reviewed, the United States and Texas declined to intervene. (Dkt. 13 and 14).

[3] *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997).

[4] Rule 9(b) has four purposes: adequate notice to defendant; protecting against frivolous suits; ***eliminating fraud actions in which all the facts are learned after discovery***; and to protect defendants from undeserved harm to their goodwill and reputation. *See Sanderson v. Allstate Fire and Cas. Ins. Co.*, CV H-22-3536, 2023 WL 417478, at *1 (S.D. Tex. Jan. 25, 2023).

[5] The TMFPA is the Texas State Law's functional equivalent of the FCA.

[6] To satisfy Rule 9(b), the Fifth Circuit requires examples of "actual false claims" or "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted." *U.S. ex rel. Grubbs v Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) ("***Grubbs***").

prejudice, or decline supplemental jurisdiction over TMFPA claims.[7]

## II.   SUMMARY OF THE CLAIMS

Relator filed this case under seal on November 17, 2021, alleging FCA and TMFPA claims based on alleged Stark Law and AKS violations. (Dkt. 1). On January 23, 2023, the United States declined to intervene, (Dkt. 13), and on January 25, 2023, the Texas Attorney General joined in the declination. (Dkt. 14). The complaint was unsealed on January 26, 2023 (Dkt. 15). On March 27, 2023, Relator filed an Amended Complaint as of right (Rule 15). (Dkt. 18).

The Complaint is no more than a parroting of the relevant statutes, coupled with a ***one sentence speculation***[8] that HMC and Prime induced Dr. Six to perform surgeries at their facilities, purportedly by agreeing to buy surgical hardware supplies from NuERA[9] which is owned by Dr. Six's son-in-law, Mr. Gonzales. (Dkt. 18, p. 1, ¶ 2). Based on pure speculation, the Complaint then alleges four counts of violations, discussed below.

## III.   STATEMENT OF THE ISSUES BEFORE THE COURT

1.      Whether Relator's Amended FCA claims should be dismissed with prejudice for failure to state a claim under Rule 12(b)(6), or for failure to plead fraud with particularity as required by Rule 9(b)? **Answer: Yes.**

2.      Whether Relator's FCA claims should be dismissed with prejudice for failure plead with particularity underlying Stark Law and AKS violations? **Answer: Yes.**

3.      Whether the Court should dismiss Relator's TMFPA claims for failure to state a claim under Rule 12(b)(6), and/or failure to plead fraud with particularity under Rule 9(b), or in the alternative, decline to exercise supplemental jurisdiction? **Answer: Yes.**

## IV.   SUMMARY OF THE ARGUMENT

***First***, Relator fails to plead FCA claims against Moving Defendants based on Stark Law as the statute only applies to referring physicians and persons/entities furnishing Designated Health

---

[7] Relator amended his Complaint once as of right. If Relator had the necessary facts to sustain his pleading, he would have already added them to the Complaint. Dismissal with prejudice is appropriate.

[8] The speculation could also be called rumor or innuendo. This Court should not allow itself to be weaponized to further Dr. Dones-Valesques' long-standing personal vendetta against Dr. Six.

[9] Relator amendments to the Complaint rendered it more implausible/less particularized by alleging HMC agreed to purchase equipment from non-defendant companies represented by Gonzales (Xspine/Xtant), without distinguishing from NuERA with dates, times, or specifics (Dkt. 18, p. 11, ¶ 47).

Services ("**DHS**"). Relator has not/cannot plead that Moving Defendants are physicians or that they furnish DHS—as they do not. Even assuming *arguendo* that Moving Defendants could be held liable under Stark Law (they cannot), Relator fails to plead (a) sufficient facts to allege, with particularity, a Stark Law scheme involving Moving Defendants; and/or (b) reliable indicia leading to a strong inference that false claims were submitted based on Stark Law violations. The FCA claims based on alleged Stark Law violations should be dismissed.

    *Second*, Relator fails to plead, with factual particularity, an AKS scheme involving Moving Defendants, including the elements of (a) actual inducement or referrals; (b) remuneration; or (c) that Moving Defendants knowingly intended to violate the AKS. Relator also fails to plead any reliable indicia leading to a strong inference that false claims were submitted based on alleged AKS violations. This requires dismissal.

    *Third*, Relator has not plead with particularity that Moving Defendants expressly or impliedly certified compliance with the Stark Law or AKS, that they presented claims (let alone false claims), or that they "caused" false claims to be submitted to the government.

    *Fourth*, Relator did not "rigorously" plead facts showing that Moving Defendants acted with the scienter required by the FCA (knowing or deliberate/reckless disregard).[10] Failure to properly plead scienter requires dismissal of all claims against Moving Defendants.

    *Fifth*, Relator did not plead facts to show that Moving Defendants agreed to violate the FCA (submit false claims/defraud the government). Relator did not plead "who, what, where, when, and how" of a specific agreement to defraud the government or an act to further that agreement. The conspiracy claims should be dismissed.

    *Finally*, TMFPA claims also face Rule 9(b). For all the above reasons, Relator did not meet the heightened pleading standard for fraud requiring dismissal of TMFPA claims. Alternatively, as the FCA claims should be dismissed, this Court should decline supplemental jurisdiction and dismiss TMFPA claims under 28 U.S.C. § 1367(c)(3).

---

[10] *Universal Health Servs., Inc. v. United States,* 136 S. Ct. 1989, 192, 195 L. Ed. 2d 348 (2016) ("***Escobar***") (the "scienter requirements…are ***rigorous.***") (emphasis added)

## V.    LEGAL STANDARDS
### A.    RULE 12(B)(6)

To survive a Rule 12(b)(6) challenge, Relator must plead enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Relator must demonstrate more than a possibility that Defendants acted unlawfully and "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* The facts must "raise a right to relief above the speculative level." *United States v. Abundant Life Therapeutic Services Texas, LLC,* CV H-18-773, 2019 WL 1930274, at *3 (S.D. Tex. Apr. 30, 2019).

### B.    RULE 9(B)

A FCA Complaint must meet the heightened pleading standard of Rule 9(b). *Grubbs ,* 565 F.3d at 185 n.8. Rule 9(b) states that "a party Case must state with particularity the circumstances constituting fraud," and "requires, at a minimum, that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *See also, U.S. ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 382 (5th Cir. 2014). Particularity requirements serve as a "counterweight to the FCA's power and [] shield against fishing expeditions [by providing] a screening function" *United States ex rel. Gage v. Davis S.R. Aviation, L.L.C.*, 623 F. App'x 622, 623 (5th Cir. 2015)).

### C.    FCA PLEADING REQUIREMENTS

FCA, Section 3729(a)(1)(A) imposes liability on a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the government. FCA, Section 3729(a)(1)(B) imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §§ 3729(a)(1)(A) and (B). Section 3729(a)(1)(C) imparts liability to any person who "conspires to commit a violation of subparagraph (A) [or] (B)…" 31 U.S.C. § 3729(a)(1)(C).

The Fifth Circuit summarized the FCA inquiry as "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3)

that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *U.S. ex rel. Harman v. Trinity Indus., Inc.*, 872 F.3d 645, 653–54 (5th Cir. 2017). The scienter requirement is "[k]nowingly," which means "actual knowledge of the information," "deliberate ignorance of the truth or falsity of the information," or "reckless disregard to the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)–(iii).

## VI.    RELATOR FAILS TO PLEAD FCA CLAIMS BASED ON STARK LAW OR AKS

In the healthcare context, two laws that often serve as FCA predicates are the AKS and Stark Law. Relator has not pleaded, with particularity, a scheme based on either predicate, and has not provided reliable indicia that lead to a strong inference that actual false claims were submitted to the government based on Stark Law or AKS violations.

Rule 9(b) requires a relator to plead "the details of an actually submitted false claim." *Grubbs*, 565 F3d at 190. In the alternative, a relator can plead "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted." *Id.* Without details of a specific claim to the government (e.g., "Here is the fraudulent bill for Patient X for date Y"), to meet the alternative test (particular details/reliable indicia/strong inference) caselaw requires that **relator had intimate knowledge** of the defendants' ***billing systems,* or detailed knowledge** of the "dates that services were fraudulently provided or recorded, by whom, and evidence of the department's standard billing procedure." *Id.* at 189; *see also, United States ex rel. Sparks v. IntegraCare Home Health Services, Inc.*, 6:14-CV-480-JDK, 2022 W.L. 2709685, at *6 (E.D. Tex. Mar. 1, 2022) (explaining that reliable indicia in *Grubbs* included date, place, participants, and the scheme, ***as well as the relator's intimate*** knowledge "because two of the defendants actually solicited the relator to participate in an elaborate scheme"); *United States ex rel. Park v. Legacy Heart Care, LLC*, 3:16-CV-803-S, 2018 W.L. 5313884, at *8 (N.D. Tex. Oct. 26, 2018) (finding a relator ***did not*** provide reliable indicia because there were conclusory allegations about the number of Medicare patients treated and the number of fraudulent claims submitted and relator did not provide a factual basis for the allegations); *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 332 (5th Cir. 2017)

("[a]lthough it is not an unreasonable inference that Solvay intended these programs to boost prescriptions, it would be ***speculation*** to infer that compensation for professional services legally rendered actually caused the physicians to prescribe Solvay's drugs to Medicaid patients.").

Relator pleads no "details of an actually submitted false claim." Here, Relator pleads "my competitor works at a different hospital, and I think his son-in-law does business with that hospital." That is the extent of his knowledge. This does not, and cannot, meet the alternative "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted." *Grubbs,* at 190. In *Grubbs*, relator brought the Court first-hand knowledge **because the defendants personally briefed him on their scheme(!)**. The *Grubbs* relator had intimate knowledge, and plead the who/what/where/when. Relator does not do that. Rather, like *Park* and *King v. Solvay Pharm.,* Relator wants the Court to speculate without adequate factual predicate or reliable indicia. As in *Park* and *King*, this Court should dismiss Relator's claims.

### A. Relator Has Not Plead A Stark Law Violation

Relator has not/cannot plead an underlying Stark Law violation by Moving Defendants. Stark Law prohibits a physician from making a referral under Medicare for DHS to an entity with which the physician or a member of the physician's immediate family has a financial relationship. See 42 C.F.R. § 411.350. The statute states "if a physician (or an immediate family member of such physician) has a financial relationship with an entity specified in paragraph (2), then:

> (A) ***the physician*** may not make a referral to the entity for the furnishing of designated health services…, and
> **(B) *the entity may not present*** or ***cause to be presented*** a ***claim…*** ***or bill*** to any individual, third party payor, or other entity for ***designated health services*** furnished pursuant to a referral prohibited under subparagraph (A)."

42 U.S.C.A. § 1395nn (bolding added). To plead a Stark Law violation as to Moving Defendants, Relator must allege with particularity, that [1] ***a physician*** [2] made a referral [3] ***for DHS*** [4] ***to an entity*** [5] with whom the physician has a financial relationship and, in turn, [6] the ***entity***

***presented or caused to be presented a claim*** arising from such a referral to Medicare. [11] *See United States v Catholic Health Initiatives*, 4:18-CV-123, 2022 WL 2657131, at *5 (S.D. Tex. Mar. 31, 2022], report and recommendation adopted sub nom. *Chihi v Catholic Health Initiative*s, 4:18-CV-00123, 2022 W.L. 2652135 (S.D. Tex. July 8, 2022). The importance of Rule 9(b) in the Stark Law/FCA context cannot be understated. In an important FCA case, *U.S. ex rel. Drakeford v. Tuomey*, Circuit Judge, Hon. A. Wynn, Jr. concurred in the judgment, and stated:

> the Stark Law has proved challenging to understand and comply with…Stark law is infamous among health care lawyers and their clients for being complicated, confusing and counterintuitive; for producing results that defy common sense…elevating form over substance… invective used to describe the Stark law even borders on lyrical: ambiguous[,] arcane[,] and very vague; and heaps of words in barely decipherable bureaucratese…the Stark Law has become a booby trap rigged with strict liability and potentially ruinous exposure—especially when coupled with the [FCA].

792 F3d 364, 395 (4th Cir. 2015) (internal quotes omitted). Given the statutory ambiguity and harsh consequences, the need for heightened pleading is apparent.

Relator fails to plead a predicate Stark Law violation because (1) ***the Moving Defendants are not subject to the prohibitions of the Stark Law.*** Yet, even if the Moving Defendants were subject to regulation (they are not), (2) Relator has not plead with particularity a Stark Law violation and/or reliable indicia that false claims were submitted based on a Stark Law violation.

### 1. Mr. Gonzales and NuERA are Not Physicians

Stark Law applies to referrals by physicians. *See United States v Catholic Health Initiatives*, 312 F Supp 3d 584, 590, n. 1 (S.D. Tex. 2018), *aff'd sub nom.* 792 Fed Appx 296 (5th Cir. 2019).

Here, Relator alleges that Mr. Gonzales is a natural person, a seller and distributor of medical devices used in surgery, and that he is Dr. Six's son-in-law. (Dkt. 18, p. 2, ¶ 7). Relator plead that NuERA is a seller of "surgical hardware." (Id. at 11, ¶ 47). Relator ***did not***/cannot

---

[11] Underlying Stark Law and AKS violations must also be pled with particularity and the Relator must "***explain how these incidents fall into a larger scheme or plan to violate the FCA.***" *See U.S. ex rel. Parikh v Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 671 (S.D. Tex. 2013), aff'd sub nom., 762 F.3d 461 (5th Cir 2014), op withdrawn and superseded on reh, 587 Fed. Appx. 123 (5th Cir 2014), withdrawn from bound volume (Oct. 1, 2014), and aff'd sub nom., 587 Fed. App'x 123 (5th Cir. 2014) (emphasis added) ("*Parikh*").

plead that Mr. Gonzales or NuERA are physicians that made referrals (because they are not). Moving Defendants cannot be held liable under the Physician Prong of the statute.

### 2. Mr. Gonzales and NuEra Do Not Furnish DHS[12]

Relator has not plead that Moving Defendants are persons or "entities" *furnishing* DHS. *See, e.g., U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.,* 748 F Supp. 2d 95, 113 (W.D. Tex. 2010), *aff'd sub nom.,* 689 F.3d 470 (5th Cir. 2012) ("outpatient dialysis services, are not [DHS] and are not covered by the Stark Law.") In 2009, the definition of "Entity" under the Stark Law was amended to clarify that a "person or entity is considered to be furnishing DHS if it— (i) [i]s the person or entity that has provided items or performed services that are billed as DHS; or (ii) [i]s the person or entity that has presented a claim to Medicare for the DHS, including the person or entity to which the right to payment for the DHS has been reassigned…" 42 C.F.R. § 411.351.

Here, Relator alleges NuERA is a Texas limited liability company and that Mr. Gonzales is the owner and sole member (Dkt. 18, p. 2, ¶ 8). Relator alleges that NuERA sells "surgical hardware." (Dkt. 18, p. 11, ¶ 47). *Relator does not (and cannot) allege that Moving Defendants provide/furnish DHS*. *See* 42 C.F.R. § 411.351. This is simple, since medical devices/surgical hardware are not DHS! And, Relator has not plead with particularity: (a) that Mr. Gonzales or NuERA performed services/provided items that were billed as DHS; (b) any information about how any items/services provided by Moving Defendants are billed; and/or (C) any facts to support that Moving Defendants submitted bills to Medicare for any DHS. Relator merely pleads that HMC and Prime agreed to buy surgical hardware and supplies from a NuERA (and other companies represented by NuERA). (Dkt. 18, p. 12, ¶ 48). Even if true, this does not plead that Moving Defendants fall with the definition of an Entity or person furnishing DHS. Moving Defendants cannot be held liable under the DHS Entity prong of the statute and dismissal of FCA claims based on alleged Stark Law is required. Relator may argue conspiracy, but his failure to plead a FCA or TMFPA conspiracy is discussed in Section XI.

---

[12] The list of "Designated health services (DHS)" is found at 42 C.F.R. § 411.351.

### 3. Relator Did Not Plead a Stark Law Violation Or Reliable Indicia

Assuming *arguendo* that Moving Defendants fall within the reach of the Stark Law (they do not), the FCA Claims based on Stark Law still should be dismissed because Relator has not plead a Stark Law violation with particularity, and/or any reliable indicia that false claims were submitted to the government based thereon.[13] When a complaint does not allege the details of an actual false claim, the Court analyzes the allegations under the *Grubbs* standard, looking for particularized details of a scheme coupled with reliable indicia leading to a strong inference that false claims were actually submitted. *United States ex rel. Frey v. Health Mgt. Sys., Inc.*, 4:21-CV-02024, 2023 W.L. 2563239, at *7 (S.D. Tex. Feb. 10, 2023), report and recommendation adopted sub nom., 4:21-CV-02024, 2023 W.L. 2564342 (S.D. Tex. Mar. 17, 2023); *U.S. ex rel. Woods v. SouthernCare, Inc.*, 3:09-CV-00313-CWR, 2013 WL 1339375, at *9 (S.D. Miss. Mar. 30, 2013) (discussing *Grubb*s and stating the "allegations do not include particular details of a scheme or reliable indicia that claims having false certifications of Stark Law compliance were submitted to the Government."); *U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F Supp 2d 805, 825 (E.D. Tex. 2008) ("Foster does not provide any factual details from which this Court can reasonably infer a link between the…scheme…and the submission of a claim…to the United States").

Here, Relator pleaded no specific false claims and did not plead reliable indicia that false claims were submitted based on Stark Law violations. Relator pleaded no ***actual*** claims (claim number, payment, *etc.*) or details of an alleged scheme including specific dates, specific referrals (patients or patient identification numbers), billed amounts, compensation formulas, dates when improper compensation was paid/received, and/or specific payments by the government. Relator doesn't plead ***how Moving Defendants are involved in any billing (or involved in an alleged scheme)***. Relator doesn't link any alleged referrals, payments, times, the identity of any patient,

---

[13] Relator fails to alert Moving Defendants as to or particularize the "Financial Relationship" at issue. A Financial Relationship under the Stark Law means either: "(i) [a] direct or indirect ownership or investment interest…in any entity that furnishes DHS;" or "(ii) [a] direct or indirect compensation arrangement with an entity that furnishes DHS." 42 C.F.R. § 411.354(a)(1)(i)-(ii). Absent this element, Moving Defendants do not have notice required to defend under Rule 8, and this alone requires dismissal of the FCA claims based on Stark Law. Notwithstanding, Moving Defendants adopt HMC Defendants' argument that a direct or indirect Financial Relationship has not been alleged with particularity.

surgery specifics, or the person that actually and knowingly submitted or caused a false claim based on a Stark Law violation, to which government payer any claim was submitted, or billing systems details showing reliability. **Relator has no intimate knowledge**. *Grubbs*, 565 F.3d at 189 and *Sparks*, 2022 W.L. 2709685, at *6, explain that reliable indicia include date, place, participants, the particulars of the scheme, **as well as the relator's intimate knowledge**. *Sparks* states that "general allegations do not provide any 'reliable indications of fraud' and do not 'plead a level of detail' to show that Defendants engaged in a scheme to defraud the government." 2022 WL 2709685, at *6; *United States ex rel. Park v Legacy Heart Care, LLC,* 3:16-CV-803-S, 2018 WL 5313884, at *8 (N.D. Tex. Oct. 26, 2018) (estimate that about 80% of the patients are Medicare beneficiaries and 80% lacked eligibility for coverage is conclusory); *cf. United States ex rel. Emerson Park v Legacy Heart Care, LLC*, 3:16-CV-0803-S, 2019 WL 4450371, at *7 (N.D. Tex. Sept. 17, 2019) ("Park II") (finding reliable indicia as relator alleged knowledge of billing, including that head of billing department reprimanded relator for "correctly assess[ing] the patient" and not automatically using alleged improper billing code).

Like *United States ex rel. Park* and *Sparks*, here, the allegations are general. All the reliable indicia of a scheme to defraud the government are missing, and unlike *Park II* Relator pleads no intimate knowledge about billing. Relator lumps defendants together, speculates, and claims that all of the bills that Dr. Six, HMC, either, or both has submitted... "violated the Stark Law." (Dkt. 18, pp. 12-13, ¶ 53). It is "impermissible to make general allegations that lump all defendants together." *United States ex rel. Frey v. Health Mgt. Sys., Inc.*, 2023 WL 2563239, at *7. Relator relies on guess/speculation, and pleads lawful behavior that:

- The more surgeries Dr. Six performs at HMC, the more money HMC and PHS make. (Dkt. 18 ¶ 46) and that HMC purchased from NuERA to "reward" Dr. Six for performing surgeries at HMC rather than a competing hospital (Dkt. 18, p. 12 ¶ 48).

Relator also pleads: "***Upon information and belief,*** HMC did not purchase goods and services from NuERA when other spine surgeons operated at the hospital." (*Id*. at ¶ 51). This allegation does not contain sufficient detail to make it "plausible on its face." *See Twombly,* 550

U.S. at 551, 557, 127 S. Ct. 1955 (requiring additional facts to make the "information and belief" allegation plausible). Relator does not plead the source of his information and belief, nor any examples to make the belief plausible. This fails to satisfy Rule 8, let alone particularize under Rule 9(b), how Moving Defendants violated the Stark Law. In the absence of an actual claim, particulars of the scheme, and reliable indicia and facts linking a Stark Law violation to an actual false claim, dismissal of claims against Moving Defendants is required.

### B.  Relator Fails to Plead an AKS Scheme Or Reliable Indicia

Despite Relator's attempt to conflate the AKS and Stark Law, the AKS does not have a "tainted immediate family member" concept. Rather, the AKS "criminalizes the payment of any funds or benefits designed to encourage an individual to refer another party to a Medicare provider for services to be paid for by the Medicare program." *United States ex rel. Ruscher v. Omnicare, Inc.,* 663 F. App'x 368, 374 (5th Cir. 2016)." The AKS prohibits the following conduct:

> knowingly and willfully offer[ing] or pay[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person … to refer an individual to a person for the furnishing ... of any item or service for which payment may be made in whole or in part under a Federal health care program."

*Id.* at 373 (citing 42 U.S.C.A. § 1320a-7b(2)(A)); *United States v. Marlin Med. Sols. LLC*, 579 F Supp 3d 876, 885 (W.D. Tex. 2022) ("The…kickback be received knowingly and willfully.").

**An FCA violation based on the AKS must be plead with particularity.** *See United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013). Relator's Complaint **heavily cites** *Parikh*, 977 F. Supp. 2d at 666–68 (Dkt. 18, ¶¶ 26 and 66). In *Parikh*, the court complaint satisfied Rule 9(b) based on the AKS because the complaint "[i]n ***exacting*** detail comprising eleven pages—included 28 examples of specific Medicare or Medicaid patients that the [emergency room] physicians referred for treatment at the Chest Pain Center." *Id.* The gap between *Parikh*'s "exacting detail" with 28 specific federal payor patients, and Relator's rumor/innuendo pleading, is vast.

Notably, ***Parikh* dismissed claims against other defendants** as that relator did not

"provide specific details explaining how the hospitalists [were] engaged in a [kickback] scheme." *Abundant Life Therapeutic Services Texas, LLC*, CV H-18-773, 2019 WL 1930274, at *7 (discussing *Parikh*). Likewise, complaints that "devote[] a single, vague paragraph to the alleged kickback scheme, mentioning defendants' programs…" should be dismissed. *United States ex rel. Colquitt v. Abbott La*bs., 858 F3d 365, 372 (5th Cir. 2017).

In *Abundant Life,* the court dismissed a complaint that "allege[d] more facts about the scheme than the *Colquitt* pleading" because, *inter-alia*, it did not explain "how and why [Ford] believed that remuneration would induce new business." 2019 WL 1930274, at *8. In *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, the court dismissed FCA claims based on the AKS because, *inter-alia*, plaintiff did not provide "sufficient information to discern that the…financial arrangements made between Tenet and the referring physicians were illegal or made for the purpose of inducing referrals" and relator "failed to link the allegedly fraudulent scheme with the submission of actual claims…to the Government." 481 F Supp 2d 689, 698 (W.D. Tex. 2007). While an actual claim is not required, this does not alleviate the burden of sufficiently pleading the time, place, or identity details of the alternative standard to satisfy Rule 9(b)'s function of fair notice and protection from frivolous suits. *Nunnally ,* 519 Fed App'x at 895.

Here, Relator fails to particularize an AKS scheme and fails to plead reliable indicia of a false claim based on an AKS violation. The information that is missing "would be known to a relator with original information about an unlawful kickback scheme." *United States ex rel. Colquitt*, 858 F.3d at 372. Relator must plead "reliable indicia that lead to a strong inference' that false claims connected to [and] based on illegal kickbacks were actually submitted." *United States v. Senseonics Holdings, Inc.*, SA-20-CV-00657-FB, 2023 WL 2354915, at *4 (W.D. Tex. Mar. 3, 2023), report and recommendation adopted, 2023 WL 2711637 (W.D. Tex. Mar. 30, 2023). Unlike the *Parikh* allegations with 28 specific examples, Relator's allegations are like *Colquitt, Abundant Life,* and *Tenet Healthcare Corp.* because they are conclusory speculation that anyone without reliable,  intimate knowledge could allege:

HMC provides an illegal financial payment to Dr. Six's family each time

Dr. Six performs a surgery at HMC" and "upon information and belief,
Dr. Six, and Gonzales have engaged in this scheme since at least 2012.

(Dkt. 18,¶¶ 55-56). Merely knowing of a son-in-law relationship, guessing that business was

conducted with a hospital, and speculating the relationship is illegal does not make it so, and is a

legal conclusion. *See Nunnally*, 519 Fed. App'x at 894 (the "complaint merely offers sweeping

and conclusory allegations of 'verbal agreements…without a shred of detail or particularity.");

*Sparks*, 2022 W.L. 2709685, at *6 (stating, unlike here, the *Grubbs* "sets out the particular

workings of a scheme…communicated directly to the relator by those perpetrating the fraud.").

The Complaint has no particularized facts concerning defendants' billing systems,

Moving Defendants' billing, or people involved in billing. There are no facts to support a

purported AKS scheme or knowledge of such a scheme: who (patient referrals, and who

submitted claims), what (amounts of payments), when (dates or referrals or payments), or any

other indicators of reliability. Without these particulars, Relator did not and cannot link an AKS

violation (scheme) to the submission or causation of actual false claims or charges to the

Government under Rule 9(b). "When it comes to violations of the [AKS], only submitted claims

'resulting from' the violation are covered by the False Claims Act." *United States ex rel. Martin v*

*Hathaway,* 63 F.4th 1043, 1052 (6th Cir. 2023) (citing 42 U.S.C. § 1320a-7b(g)) and holding

failure to "allege[] but-for causation…[as] [t]here's not one claim for reimbursement identified

with particularity in this case that would not have occurred anyway…"). Here, Relator merely

alleges "…every bill that Dr. Six, HMC, either, or both…violated the Anti-Kickback Statute."

(Dkt. 18). Again, this does not show Moving Defendants' involvement in billing and lacks any

indicia of reliability. Relator has no precise dates. Rather, he alleges on "information and belief"

that all conduct took place since 2012, which ironically roughly coincides with 10-year statute of

limitation for the FCA. These general statements do not satisfy Rule 9(b), *see U.S. ex rel. Hebert*

*v. Dizney*, 295 Fed Appx 717, 722 (5th Cir. 2008) (general statement include "Defendants made

knowingly false representations … at least once each year…"), as they fail to specify the "what,

when, or where" of an AKS fraud violation that must be plead with specificity and/or fail to

plead how Moving Defendants were the "but for cause" of claim submitted based on an AKS

violation, which is required under the AKS statute. Nor did Relator plead the below elements of an AKS violation. Thus, the AKS based claims should be dismissed.

### 1. RELATOR DID NOT PLEAD ACTUAL INDUCEMENT OR REMUNERATION

Actual inducement is an element of the AKS violation, which required the Relator to plead a "reliable indicia that there was a kickback ["remuneration'] provided in turn for the referral of patients." *Nunnally.*, 519 Fed. App'x at 894 (the Complaint did not plead "any particular details of any actual referral by a physician…or even to offer a time period more distinguishing than '[s]ince approximately 1992 and continuing to date," and did not identify a single claim submitted for services rendered pursuant to an illegal referral.).

Here, like *Nunnally*, Relator pleads no particulars about an actual inducement. Rather, Relator pleads in sweeping and conclusory terms that Dr. Six referred patients to HMC. (Dkt. 18, p. 14, ¶ 65). Relator speculates, with no intimate knowledge, no specifics and only "information and belief" that alleged conduct took place "at lease since 2012." (*Id*.). The Relator also fails to particularize the element of "remuneration." *Marlin Med. Sols*. LLC, 579 F Supp 3d at 884 (relator must plead the defendant "solicited or received, or offered or paid remuneration"). "[I]mproper remuneration [must] relate[] to the inducement of referrals, making it plausible that [Moving Defendants] specifically intended to do something the law forbids." *United States ex rel. Patel v. Catholic Health Initiatives,* 312 F. Supp. 3d 584, 599 (S.D. Tex. 2018)). Remuneration is not defined in the AKS, but OIG (who oversees AKS) looks to the Civil Monetary Penalties Law's definition of remuneration which "includes waiver of coinsurance and deductible amounts (or any part thereof), and transfers of items or services for free or for other than fair market value" 42 U.S.C. § 1320a-7a(i)(6). Relator has not pled the who, what, where, when, or how Moving Defendants received/ paid remuneration in exchange for a referral, including when and how it was paid, how any remuneration related to an inducement, or links to a false claim. Like *Senseonics Holdings, Inc*., there are no "detailed allegations in Relator's pleadings that give rise to a strong inference that any payments…" made or received by Moving Defendant were improper or for inducement. 2023 WL 2354915, at *5. Relator's failure to particularize inducement and

remuneration requires dismissal of the FCA claims based on AKS.

### 2. RELATOR DID NOT PLEAD "KNOWING AND WILLFUL" ACTS

AKS liability attaches only if the defendant "knowingly and willfully offer[ed] or pay[ed] [or received] any remuneration (including any kickback, bribe, or rebate) …[to] induce such person … to refer an individual to a person for the furnishing … of any item or service for which payment may be made in whole or in part under a Federal health care program." *Parikh.,* 977 F Supp 2d at 662-63. "[K]nowingly" means "done voluntarily and intentionally, not because of mistake or accident," and "willfully" means "committed voluntarily and purposely with the specific intent to do something the law forbids…"*Patel ,* 312 F. Supp. 3d at 594.

Relator has alleged no facts to support that Moving Defendant knew that any acts were undertaken based on improper remuneration (kickback, bribe, *etc.*) or for the purpose of inducing a referral. The only knowledge alleged is that Defendants knew that Mr. Gonzales was Dr. Six's son-in-law. (Dkt. 18, p. 12 ¶ 50). This does not make nor plead an illegal AKS scheme. This does not specify facts to support that Moving Defendants (or other companies represented by Gonzales) knew alleged purchases/payments were made for purposes of inducing referrals, or that Moving Defendants knowingly acted with specific intent to do something the law forbids. Thus, the FCA claims against Moving Defendants based on AKS must be dismissed.

## VII.   RELATOR DID NOT PLEAD EXPRESS OR IMPLIED CERTIFICATION

Falsity is a key element of an FCA Claim. **Factually false claims** are claims that goods or services were provided, but were not. *United States ex rel. Jackson v Ventavia Rsch. Grp., LLC,* 1:21-CV-00008, 2023 WL 2744394, at *11 (E.D. Tex. Mar. 31, 2023). "**Legally false claims**… contain an 'express' or 'implied' certification of compliance with statutory, regulatory, or contractual requirements when, in fact, the claimant has not complied…" *Id.* at 11. The "express false certification theory of FCA liability is predicated upon outright misrepresentations made to the Government on a…claim…" *Id*. Implied false certification occurs when: "[a claim submitted to the United States] does not merely request payment, but also makes specific representations about the goods or services provided; and…the defendant's failure to disclose noncompliance

with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.* at *14. In the AKS context, "…the basis of liability is the certification of compliance [with the AKS], not the payment or acceptance of remuneration." *U.S. ex rel. Bennett v. Medtronic*, Inc., 747 F Supp 2d 745, 784 (S.D. Tex. 2010) ("***Bennett***"). This court requires relator to plead the "who, what, when, where, and how' of the alleged false certifications." *Id.* at 785 (dismissed for failure to plead particulars of an AKS certification).

Here, Relator has not pled with particularity that ***Moving Defendants*** expressly or impliedly certified compliance with the AKS or Stark Law. The words "certify" or "certified" appear in the Complaint as legal conclusions or generally refer to "hospital or physician" or forms without stating who submitted the forms. (*e.g.*, Dkt. 18, ¶¶ 24-26, 34, 40-41, and 70). But no particularized facts plead the who, what, where, when, and how a Moving Defendant certified compliance with any statue, rule, or regulation, or made a misrepresentation, to the government. Relator cannot rely on certification theory against the Moving Defendants. Nor has Relator alleged any facts showing how Moving Defendants ***"caused"*** another defendant to make false certifications. *Id.* at 784. This requires dismissal of the FCA claims against Moving Defendants.

## VIII.    RELATOR DID NOT PLEAD PRESENTMENT BY MOVING DEFENDANTS

Relator does not allege with particularity a key element of an FCA presentment claim – that Moving Defendants presented a claim to the government. *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 (5th Cir. 2010). Relator merely pleads that: "every bill that Dr. Six, HMC, either, or both has submitted to the USG or TSG.. has violated the Stark Law (Dkt. 18, ¶ 53) and the AKS (Dkt. 18, ¶ 58). Relator doesn't even know who purportedly billed – "either, or both"! Relator's Cause of Action section makes a similar lumping legal conclusions, that every "Defendants submitted and/or caused to be submitted…false or fraudulent claims for payment or approval…"(Dkt. 18, ¶ 75). **Relator must satisfy Rule 9(b) as to each defendant**. *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) (general allegations that do not allege wrongdoing of each separate defendant do not satisfy Rule 9(b)). Relator's allegation that

every defendant submitted false claims is meaningless, and is bereft of reliable indicia that

Moving Defendants submitted or caused false claims to the government. This does not provide

notice under *Twombl*y to prepare a defense, nor  does it satisfy Rule 9(b). Dismissal is required.

## IX.   RELATOR DID NOT PLEAD "CAUSATION"

Relator did not plead that Moving Defendants caused a false claim to be submitted.

"Causation under the FCA requires proximate cause, not merely 'but for' cause." *United States*

*ex rel. Hueseman v. Professional Compounding Centers of Am., Inc.,* SA-14-CV-00212-XR, ---

F.Supp.3d---, 2023 WL 2669879, at *20 (WD Tex. Mar. 27, 2023). A defendant may have caused

submission of a claim if its conduct was "(1) a substantial factor in inducing providers to submit

claims for reimbursement, and (2) if the submission of claims for reimbursement was reasonably

foreseeable or anticipated as a natural consequence of defendants' conduct." *Id. at* *20.

Here, Relator has not plead any facts showing Moving Defendants induced anyone to submit

a claim for reimbursement, and/or that it was foreseeable, or a natural consequence of anything

Moving Defendant are alleged to have done. In *Bennett,* the court discussed the detail required to

plead a defendant causation as indicated by *Grubbs,* 565 F.3d at 192. There, the plaintiff provided

"detail, including the date, place, and participants, ***the dinner meeting at which two doctors in his***

***section attempted to bring him into the fold of their on-going fraudulent plot***. He alleges his first-

hand experience of the scheme unfolding before him, describing how the weekend on-call nursing

staff attempted to assist him in recording face-to-face physician visits that had not occurred." 747

F. Supp 2d at 781. Without this level of detail, *Bennett* held "the relators' complaint does not

sufficiently allege that by promoting off-label use, Medtronic caused the submission of false

claims and is liable under the FCA." *Id.* The same is true here. Even if HMC bought surgical

supplies/devices from Moving Defendants, that does not plead how Moving Defendants caused

false claims to be submitted. The FCA claim should be dismissed for failure to plead Moving

Defendants proximately caused false claims to be submitted.

## X.   RELATOR DID NOT RIGOROUSLY PLEAD SCIENTER

Relator did not rigorously plead scienter in the manner outlined by *Escobar.,* 579 U.S. at

192. Courts in this circuit have noted, "[a]llegations of scienter may be averred generally, but simple allegations of fraudulent intent will not suffice, and 'plaintiffs must set forth specific facts supporting an inference of fraud." *United States ex rel. Hendrickson v Bank of Am., N.A.*, 343 F Supp 3d 610, 635 (N.D. Tex. 2018), aff'd, 779 Fed. Appx. 250 (5th Cir. 2019); *United States ex rel. Monsour v. Performance Accounts Receivable, LLC*, 2022 W.L. 16840338, at *6 (S.D. Miss. Nov. 9, 2022)(discussing the "rigorous" scienter element and that relator did "not provide a sufficient basis to show how" defendant would have known or was reckless). [14]

Relator pleads no facts related to scienter (knowledge/reckless disregard). Relator pleads no specifics claims, referrals, remuneration, dates, amounts, billing, referrals, kickbacks, identity of persons who submitted claims, links to false claims, or which payers. No facts allege that Moving Defendants knew or were in a position to know or disregard compensation that varied in relation to a referral, a kickback paid for a referral, or that there was a false claim or statement made in connection with a claim to the government. Relator lumps all defendants together and alleges "every bill that Dr. Six, HMC, either, or both has submitted…violated the Stark Law" (Dkt. 18, p. 12, ¶ 53) and the AKS (*Id*. at ¶ 58). This mish-mosh lumping of the defendants precludes pleading scienter as to an individual defendant.

In *Hendrickson,* the Court found that Relator "insufficiently pleaded the alleged misconduct [and] fail[ed] to identify which…representatives allegedly confirmed misconduct to investigators, ***so that alleged fact also does not support an individualized finding of scienter.***" 343 F Supp. 3d at 636. (emphasis added). The same is true here. **There are no facts to even show how Moving Defendants were or could be in a position to see or even be aware of a false claim.** Relator implies that by mere sales of the equipment that Moving Defendants knowingly or recklessly disregarded false claims. In *Hendrickson*, relator similarly argued Defendants were knowledgeable participants in an Automated Clearing House ("ACH") network and cited certain Green Book rules related to ACH. 343 F Supp 3d at 636. *Hendrickson* held that "FCA

---

[14] Mistakes or negligence do not suffice. *United States ex rel. Jacobs v. Walgreen Co.*, 21-20463, 2022 W.L. 613160, at *1 (5th Cir. Mar. 2, 2022), cert denied sub nom., 214 L Ed 2d 23, 143 S Ct 104 (2022).

liability does not attach when a defendant reasonably, yet erroneously, interprets its legal obligations." *Id.* (the FCA's scienter "requires plaintiffs to prove that the defendant knows that he violated an obligation, not simply that he mistakenly interpreted a legal obligation."). Stating a defendant was a participant and must have known of a rule, a violation, a false claim, or recklessly disregarded the same is not enough without supporting facts. Relator simply alleges HMC bought equipment from Moving Defendants - this is not enough to plead knowledge or disregard of illegal conduct or false claims. All FCA claims must be dismissed against Moving Defendants.

## XI.    RELATOR DID NOT ALLEGE A CONSPIRACY WITH PARTICULARITY

To plead FCA conspiracy, Relator must allege, particular facts that establish both an unlawful agreement to have a false claim paid, and at least one act to further the conspiracy. *U.S. ex rel. Farmer v. City of Houston,* 523 F.3d 333, 343 (5th Cir. 2008). The Complaint must allege that the co-conspirators shared "specific intent to defraud the government," *Marlin Med. Sols. LLC,* 579 F. Supp 3d at 895, and agreement for the "purpose of having an impact on the Government's decision to pay false…claims." *U.S. ex rel. King v Solvay S.A.,* 823 F. Supp 2d 472, 517 (S.D. Tex. 2011], order vacated in part on reconsideration, CIV.A. H-06-2662, 2012 WL 1067228 (S.D. Tex. Mar. 28, 2012)("King I) (agreement did not indicate any illegalities). It is not enough to allege defendants "intended to engage in the conduct that resulted in the injury." *United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, In*c., SA-17-CV-1249-XR, 2019 WL 5970283, at \*12 (W.D. Tex. Nov. 13, 2019)

Relator does not allege facts showing that Moving Defendants specifically agreed to have a false claim paid with intent to defraud the government or acts in furtherance. Relator does not allege dates, where, when, and how Moving Defendants agreed to get false claims paid, which claims and to which payers. ***Even if Moving Defendants agreed to sell medical devices, this is not the equivalent of an agreement to violate the law or get false claims paid.*** In *United States ex rel. Integra Med Analytics*, various doctors were found to have submitted false claim over the years, but this "did not, by itself, do more than point to the possibility of an agreement among them." 2019 WL 5970283, at \*12 (citing *Grubbs*) (internal quotes omitted). Mere possibility fails to

satisfy the Rule 8 plausibility standard, as it does not "raise a right to relief above the speculative level." *Lozano v. Baylor Univ.*, 408 F Supp 3d 861, 887 (W.D. Tex. 2019). The FCA conspiracy claims against Moving Defendant implausible, unparticularized, and should be dismissed.

## XII.   RELATOR FAILED TO PLEAD ANY TMPFA CLAIMS

The Fifth Circuit considers TMFPA claims analogous to FCA claims. *United States v. Dental Health Programs, Inc.*, 3:18-CV-00463-E, 2020 WL 3064712, at *7 (N.D. Tex. June 8, 2020). Although the TMPFA does not require claim payment, Relator must still satisfy Rule 9(b) and allege the falsity or misrepresentation of material fact, or concealment or nondisclosure of information, with particularity as it concerns the TMFPA. *Id.*

Here, Relator has not plead particularized facts to support that Moving Defendants submitted or caused actual false claims, participated in any Stark Law or AKS scheme, acted with scienter, made any false statement or misrepresentation (e.g., TMFPA § 36.002(4)(B)), made or received any improper charges/gifts/donations (e.g., TMFPA § 36.002(5)), nor reliable indicia that any false claim or statement was made or caused to be submitted by the Moving Defendants. Relator did not allege language or conduct attributable to the Moving Defendants that indicates an agreement to defraud the federal government or the State of Texas. *Dental Health Programs, Inc.*. 2020 WL 3064712, at *15. The scienter /culpable mental state under the TMFPA is essentially the same as the FCA (*e.g.*, "know[ing]" "conscious indifference" or "reckless disregard" Tex. Hum. Res. § 36.0011(a)(1)-(3)). As with the FCA claims, Relator pleads no particularized facts to show Moving Defendants knew, could know or deliberately or recklessly disregarded any falsity in connection with a claim. *See Catholic Health Initiatives*, 4:18-CV-123, 2022 WL 2657131, at *13 (TMFPA claims dismissed because the FCA claims were dismissed for failure to allege defendants' basic involvement in the scheme). The TMFPA claims must be dismissed. Alternatively, as the FCA claims should be dismissed, the Court should decline supplemental jurisdiction over the TMFPA claims. *Jacobs*, 2022 W.L. 613160, at *2.

## XIII.   RELIEF/CONCLUSION

For all the foregoing reasons, the Court should dismiss the Complaint, with prejudice.

**Respectfully submitted on May 26, 2023.**

*Clinton Mikel /s/*
Clinton Mikel
The Health Law Partners, P.C.
Attorney in Charge for Defendants
Michael Gonzales and NuEra Medical L.L.C.
State Bar No. 24133667
Federal ID No. 3841067
32000 Northwestern, #240
Farmington Hills, MI 48334
Telephone no. (248) 996-8510
Telecopy No.  (248) 996-8525
Email: cmikel@thehlp.com
**Attorney for Defendants Michael Gonzales**
**NuERA Medical L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, I electronically filed the foregoing Defendants Michael Gonzales and NuERA Medical L.L.C.'s Motion to Dismiss Under Federal Rules 12(b) and 9(b) using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*Clinton Mikel /s/*
Clinton Mikel