## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF TEXAS *ex rel* DR. JOSÉ G. DONES, <br><br> *Plaintiffs*, <br><br> v. <br><br> HARLINGEN MEDICAL CENTER L.P., PRIME HEALTHCARE SERVICES, INC., DR. ERIC G. SIX, VALLEY NEUROSURGEONS P.L.L.C., MICHAEL GONZALES, and NUERA MEDICAL L.L.C., <br><br> *Defendants*. | Case No. 1:21-cv-181 |

### PLAINTIFFS' OMNIBUS RESPONSE
### TO DEFENDANTS' MOTIONS TO DISMISS

Dr. José G. Dones ("Relator") hereby files Plaintiffs' Omnibus Response ("Response") to the three motions to dismiss (collectively, "Defendants' Motions") Plaintiffs' First Amended Complaint ("FAC") filed by (i) Defendants Harlingen Medical Center L.P. ("HMC") and Prime Healthcare Services, Inc. ("PHC"), (ii) Dr. Eric G. Six ("Six") and Valley Neurosurgeons P.L.L.C. ("VNS"), and (iii) Michael Gonzales ("Gonzales") and NuERA Medical L.L.C. ("NuERA"). *See* Dkt. Nos. 30, 31, and 29, respectively; *see also*, First Am. Compl., Dkt. No. 18.

### INTRODUCTION AND SUMMARY OF THE ARGUMENT

Relator is a medical doctor with a long history of service to the South Texas community. He filed the FAC on March 27, 2023.

Defendant Six is also a medical doctor. He is paid through VNS, an entity of which he is the sole owner and employee. Six and VNS filed a joint motion to dismiss. Dkt. No. 31 (hereinafter "Six Mot."). Nowhere in the motion do Six or VNS argue that the distinction between them is anything but illusory. Accordingly, they will be referred to jointly and in the singular as "Six" throughout this Response.

Defendant Gonzales is a medical device seller. Gonzales is paid through NuERA, an entity that he owns. Gonzales and NuERA filed a joint motion to dismiss. Dkt No. 29 (hereinafter "Gonzales Mot."). Nowhere in the motion did Gonzales or NuERA argue that the distinction between them is anything but illusory. Accordingly, they will be referred to jointly and in the singular as "Gonzales" throughout this Response.

Defendant PHC is a for-profit health services corporation. It owns Defendant HMC, a general partnership, and is PHC's sole general partner. PHC and HMC filed a joint motion to dismiss. Dkt. No. 30 (hereinafter "PHC Mot."). As detailed below, PHC argues that it is not a proper party to the suit. PHC Mot. at 7–9. However, as explained below, that argument is unavailing. Accordingly, PHC and HMC shall be referred to jointly and in the singular as "PHC" throughout this Response.

The illegal conduct that Plaintiffs allege in their FAC is straightforward: HMC agreed with Six to purchase medical devices from Gonzales in exchange for Six performing neurosurgeries at HMC. HMC agreed to do so because neurosurgery is lucrative for HMC. Six agreed to do so because Gonzales is his son-in-law. Further, HMC engaged in this scheme at the direction of or with the knowledge of PHC. Each defendant benefited financially from this arrangement at Plaintiffs' cost—that is, from the public purse.

Each group of defendants now moves to dismiss the FAC. For the reasons set forth more fully below, the Court should deny Defendants' Motions. In summary:

- Six's defendant-specific Anti-Kickback Statute arguments fail because they rely on the erroneous premise that a physician need personally receive remuneration to run afoul of that statute and because Six's characterizations of Plaintiffs' FAC as lacking certain allegations is demonstrably incorrect.

- NuERA's defendant-specific Stark Law arguments fail because the Stark Law does not require that an offender be a physician, because NuERA provides designated health services, and because Plaintiffs' FAC provides clear notice

of the alleged financial relationships between the Defendants.—NuERA's arguments fail PHC

- NuERA's defendant-specific Anti-Kickback Statute argument fails because it ignores plain text of the statute, which creates a lower threshold for scienter that NuERA contends.

- Nu-ERA's other defendant-specific arguments fail because rely on mischaracterizations of Plaintiffs' allegations.

- PHC's defendant-specific argument that it is not a proper party to this action fails because HMC is a partnership, PHC is a partner in HMC, and partners are liable for the acts of the partnership.

- Defendants' common arguments, which are principally that Plaintiffs do not plead their allegations with sufficient particularity, fail because Defendants misconstrue Plaintiffs' allegations, misinterpret the statutes at issue, and rely on an unrealistic assessment of what a Relator in Dones's position could conceivably allege before beginning discovery.

In light of Relator's credible allegations, which render Plaintiffs' claims plausible, Defendants' attempts to terminate this action are premature and should be denied. For the Court's convenience, a proposed order is attached reflecting that conclusion.

## LEGAL STANDARD

The Court is familiar with the legal standards applicable to motions brought under Federal Rule of Civil Procedure 12(b)(6). As this Court wrote two years ago:

> To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6). A plaintiff satisfies the facial plausibility standard by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations in the complaint are not required to be thoroughly detailed, but must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court considers only the allegations in the complaint and must accept them as true, viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). If the allegations are sufficient

"to raise a right to relief above the speculative level," the Court will not dismiss the cause of action. *Twombly*, 550 U.S. at 555.

*Reyna v. Garza*, 569 F. Supp. 3d 567, 576 (S.D. Tex. 2021).

When a complaint alleges fraud, Federal Rule of Civil Procedure 9(b) also applies. It requires that "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). False Claims Act complaints must meet the heightened pleading standard of Rule 9(b). *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). However, "Rule 9(b) does not reflect a subscription to fact pleading and requires only simple, concise, and direct allegations of the circumstances constituting fraud." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (internal quotation marks omitted). In other words, "the rule is context specific and flexible." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).[1]

## ARGUMENT AND AUTHORITIES

Plaintiffs' Complaint pleads facts sufficient to render their claims plausible under Rule 12(b)(6) and to meet the particularity requirements of Rule 9(b). Plaintiffs here address each set of Defendants' unique arguments before addressing all Defendants' common arguments.

## I.    DEFENDANT-SPECIFIC ARGUMENTS

### A.    Six

Six makes three unique arguments,[2] all related to the Anti-Kickback Statute.[3] Six

---

[1] Six invites the Court to resolve his motion, at least in part, on the basis of assertions that are not within the four corners of the FAC and that Six evidently believes will prejudice the Court against Plaintiffs. Six Mot. at 2 ("Background and Perspective"). This attempt to color the Court's 'perspective'—that is, taint its reasoning with irrelevancies—is wholly improper. Accordingly, Plaintiffs hereby move to strike the section titled "Background and Perspective" from Six's motion. *See* Six Mot. at 2, para. 2.

[2] Six makes a fourth argument: that Plaintiffs fail to plead the alleged scheme with particularity. Six Mot. at 2–4. This argument is common to all defendants and is addressed in Part II, below.

[3] As Six makes no unique arguments related to the Stark Law or the TMFPA, such arguments are waived. *See generally*, Six Mot.

argues that Plaintiffs fail to allege (1) that Six received remuneration as a result of their schemes, (2) that Six made referrals, or (3) that Six had *scienter*. Six Mot. at 5–6. In so doing, Six misinterprets the law and ignores the FAC. Plaintiffs address each in turn.

First, a doctor need not personally receive remuneration to violate the Anti-Kickback Statute. 42 U.S.C. § 1320A-7b(b)(1); *United States v. St. Junis*, 739 F.3d 193, 210 (5th Circ. 2013) (holding that proving actual knowledge or specific intent to violate the Anti-Kickback Statute is not necessary so long as defendant willfully committed an act that violated the statute). Instead, a doctor need only solicit remuneration. 42 U.S.C. § 1320A-7b(b)(1). As alleged in the FAC, Six solicited remuneration for his son-in-law. FAC ¶ 67. Even if the Anti-Kickback Statute did require a violating doctor to receive remuneration personally, Plaintiffs allege that Six performed surgeries at HMC pursuant to the alleged conspiracy and notes that surgery is a "lucrative" business. FAC ¶ 1, ¶ 45. Therefore, in resolving Defendants' Motions, because the Court must view the allegations in the light most favorable to Plaintiffs, the FAC sufficiently alleges that Six received remuneration personally for performing surgeries at HMC.

Second, Plaintiffs do allege that Six referred patients to Gonzales by conspiring with HMC to have the hospital purchase supplies from Gonzales for the surgeries Six performed. FAC ¶¶ 47–48, ¶ 64. Each instance in which HMC did so constituted a referral from Six to Gonzales. Each such referral violated the Anti-Kickback Statute. 42 U.S.C. § 1320A-7b(b). *See United States v. Cooper*, 38 F.4th 428, 433 (5th Cir. 2022) (holding that the plain text of the statute specifies that when a person pays any person to induce such person to refer an individual to a person to, say, order a prescription from that person, he commits a felony and [past holdings] provide a straightforward and consistent explanation [… that] instances in which the defendant pays someone to induce that person to refer someone *else* to a health care good or service [he is violating 42 USC §1320 a- 7b(b)]).

Third and finally, Plaintiffs expressly allege *scienter* on the part of all Defendants, including Six. FAC ¶ 64. However, even if Plaintiffs had not expressly alleged *scienter*,

their allegations would withstand Defendants' Motions because a *qui tam* plaintiff need only allege facts sufficient to "render[] an *inference* of scienter at least as likely as any plausible opposing inference." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (emphasis supplied). Here, Plaintiffs' allegations regarding Six's professional activities would, on their own, be sufficient to give rise to the inference of *scienter* even if Plaintiffs had not expressly alleged *scienter* because it is inconceivable that a working doctor at HMC, such as Six, would not know that at least some of his work is billed to Medicare, Medicaid, and Tricare, and it is equally inconceivable that Six, specifically, would not know that Gonzales was his son-in-law.

For all these reasons, Six's unique arguments fail, and his Motion, therefore, must be denied as to these issues.

## B.   Gonzales

### 1.   Stark Law

Gonzales makes three unique arguments in support of its motion to dismiss Plaintiffs' Stark Law claims. First, Gonzales argues that he is not subject to the Stark Law because he is not a physician. Gonzales Mot. at 7–8. Second, Gonzales argues that he does not furnish designated health services. Mot. at 8. Third, Gonzales argues that Plaintiffs fail to allege a financial relationship between Six and Gonzales within the meaning of the Stark Law. Gonzales Mot. at n.13. Each of Gonzales's arguments fail.

First, non-physicians are subject to the Stark Law, as the plain language of the statute makes clear. *U.S. v. Cooper* 38 F.4th 428, 433 (5th Cir. 2022). To argue otherwise, Gonzales relies upon an erroneous reading of the Stark Law. In relevant part, the Stark Law provides:

> [I]f a physician (or an immediate family member of such physician) has a financial relationship with an entity specified in paragraph (2), then—
>
> (A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter, *and*
>
> (B) the entity may not present or cause to be presented a claim under this subchapter or bill to any individual, third party payor, or other entity for

designated health services furnished pursuant to a referral prohibited under subparagraph (A).

42 U.S.C. § 1395nn(a)(1) (emphasis added). Gonzales misinterprets the word 'and' (italicized above) as joining a two-member series of necessary conditions for a violation of the Stark Law. However, that interpretation is incorrect precisely because subsection (A) addresses prohibited physician conduct whereas subsection (B) addresses prohibited entity conduct. Therefore, the 'and' upon which Gonzales's argument hinges is correctly interpreted as joining a two-member series of sufficient but not necessary conditions for a violation of the Stark Law. Accordingly, non-physicians, such as Gonzales, may be held liable for Stark Law violations. *U.S. v. Cooper* 38 F.4th 428, 433 (5th Cir. 2022); *see also United States v. Miles*, 360 F.3d 472, 479 (5th Cir. 2004) (emphasis added); *see also United States v. Ricard*, 922 F.3d 639, 647 (5th Cir. 2019); *United States v. Martinez*, 921 F.3d 452, 466–67 (5th Cir. 2019).

Second, contrary to his assertion, Gonzales does provide designated health services within the meaning of the Stark Law. Gonzales Mot. at 8. The Stark Law expressly identifies "inpatient and outpatient hospital services" as a designated health service. 42 U.S.C. § 1395nn(h)(6)(k); 42 C.F.R. § 411.351. As co-Defendant Six admits, "spine surgeons work closely with device representatives who accompany surgeons into the operating room and assist in the preparation of the trays of implant pieces." Six Mot. at 4. Such work undoubtedly constitutes "inpatient . . . hospital services" within the meaning of the Stark Law, and Plaintiffs allege that Gonzales performed such work. Compl. 48–49. Therefore, Gonzales furnishes designated health services within the meaning of the Stark Law. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997) (noting that the Stark Law "prohibits referring Medicare patients to an entity for certain designated health services including inpatient and outpatient hospital services).

Third, Plaintiffs allegations provided unambiguous notice of the financial relationship between the Defendants. FAC ¶¶ 47–48, ¶ 52. Further, this relationship falls unambiguously within the ambit of the Stark Law. Indeed, the Stark Law prohibits

referrals from a doctor to an immediate family member, 42 U.S.C. § 1395nn(a)(1), and Federal regulations expressly define "immediate family member" to include children and children-in-law, 42 C.F.R. § 411.351. Here, Plaintiffs allege that as a result of Six's referrals, HMC compensated Gonzales for goods and services, and because Gonzales and Six's daughter are married and hold NuERA as common property, all payments to Gonzales were also payments to Six's daughter. FAC ¶¶ 47–48, ¶ 52. Accordingly, Gonzales's assertion that Plaintiffs fail to allege a "direct or indirect compensation arrangement" prohibited by the Stark Law fails to withstand scrutiny. *See* Gonzales Mot. at n.13.

> ### 2.  *Anti-Kickback Statute*

Gonzales' initial attack on Plaintiffs' AKS allegations amounts to one argument: that Plaintiffs fail to render their AKS allegations with sufficient particularity to withstand the requirements of Rule 9(b). Gonzales Mot. at 11–14. HMC articulates the same view in its motion, and Plaintiffs therefore respond to this argument in Part II below.

Gonzales next appears to argue that Plaintiffs fail to plead inducement to Six or remuneration to Gonzales. Gonzales Mot. at 14–15. This argument is also made by HMC and will likewise be addressed in Part II below.

Finally, Gonzales argues that Plaintiffs failed to plead "knowing and willful acts." Gonzales Mot. at 15. This contention is without merit because it is based on an erroneous understanding of what is required for an act to be knowing and willful under the AKS. To wit, Defendants appear to believe that an act is only knowing or willful if the alleged wrongdoer understands that the act is illegal and yet proceeds to commit it. *Id.* ("Relator has alleged no facts to support that Moving Defendant[s] knew that any acts were undertaken based on *improper* remuneration (kickback, bribe, *etc.*) . . . ." (emphasis added)). However, to perform an act "knowingly and willfully" merely means to perform the act with intention to perform the act. It does not mean to perform the act with specific intention to break the law. Indeed, this distinction is made clear in the statute itself, which provides that "[w]ith respect to violations of this section, a person need not have actual

knowledge of this section or specific intent to commit a violation of this section" of the AKS in order to be found guilty. 42 U.S.C. § 1320a-7b. *See United States v. St. Junis*, 739 F.3d 193, 210 (5th Circ. 2013) (holding that proving actual knowledge or specific intent to violate the Anti-Kickback Statute is not necessary so long as defendant willfully committed an act that violated the statute). Or, as the Committee on Federal Criminal Jury Instructions of the Seventh Circuit succinctly put it, "section 1320a-7b(b) does not require an intent to defraud." FED. CRIM. JURY INSTR. 7TH CIR. 1320a-7b(b) (2022 ed.), FED. CRIM. JURY INSTR. 7TH CIR. 1320a-7b(b) (2022 ed.). In other words, acts committed voluntarily are knowing and willful within the meaning of the AKS, and Plaintiffs specifically allege that Gonzales was aware of the other Defendants' activities and coordinated his efforts with them. FAC ¶¶ 69–72. Furthermore, Plaintiffs specifically allege that each of the Defendants, including Gonzales, "had notice of their obligations under law." FAC ¶ 11. Therefore, even if "knowing and willful" meant what Gonzales appears to believe—which it does not—Plaintiffs' allegations still would be adequate.

### 3.    *Other General Arguments*

Gonzales also argues that Plaintiffs fail to plead certification, presentment, causation, or scienter. Gonzales Mot. at 15–19. These misstatements are easily answered by reference to paragraphs 66 (certification and presentment), 69 (causation), and 64, 69, and 72 (*scienter*) of the FAC, which address each of these issues. Therefore, Plaintiffs have sufficiently pleaded certification, presentment, causation, and scienter. The remainder of Gonzales' arguments parallel HMC's arguments. *Compare* Gonzales Mot. at 19–20 with PHC Mot. at 17–19. Accordingly, they are addressed in Part II below.

### C.    PHC

As noted in the Introduction, PHC argues that it is not a proper party to this suit. To begin, PHC argues that a parent company cannot be held liable for the actions of its subsidiaries. PHC Mot. at 7. This overstates the case. While the actions of a subsidiary corporation may not generally be imputed to a parent corporation, that "bedrock principle of corporate law" does not apply in the case of a Texas partnership. *See* PHC

Mot. at 7 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006)).

Under Texas law, "[e]ach partner is an agent of the partnership for the purpose of its business." Tex. Bus. Orgs. Code Ann. § 152.301. Further, "[a] partnership is liable for loss or injury to a person, including a partner, or for a penalty caused by or incurred as a result of a wrongful act or omission or other actionable conduct of a partner acting . . . in the ordinary course of business." *Id.* § 152.303. And, "all partners are jointly and severally liable for all obligations of the partnership." *Id.* § 152.304. *See Am. Star Energy & Mins. Corp. v. Stowers,* 457 S.W.2d 427, 429 (Tex. 2015); *see also Commons W. Off. Condos, Ltd. v. Resol. Tr. Corp.*, 5 F.3d 125, 127 (5th Cir. 1993).

Here, Plaintiffs seek to hold PHC, a general partner of HMC, accountable for the actions of the partnership. As both PHC and Six concede, the relevant conduct forming the basis of this action occurred in the "ordinary course of business." PHC Mot. at 5; Six Mot. at 3. Therefore, PHC's contrary citations based on Florida and Georgia law simply do not apply, and PHC is a proper party to this action. *See* PHC Mot. 12 (citing *U. S. ex rel. Lewis v. Cmty. Health Sys., Inc.*, No. 18-20394-CIV, 2020 WL 3103994, at *19 (S.D. Fla. June 11, 2020) and *U. S. ex rel. Heller v. Guardian Pharmacy, LLC*, 521 F. Supp. 3d 1254, 1280-81 (N.D. Ga. 2021)).

## II.    DEFENDANTS' COMMON ARGUMENTS

The arguments common to all Defendants are organized differently by each Defendant. For two reasons, Plaintiffs here address these common arguments in the order presented by PHC. First, Six expressly joins the arguments advanced by PHC. Six Mot. 2. Second, PHC's presentation of Defendants' common arguments is more linear than Gonzales's.

### A.  Plaintiffs Plead Their FCA Claims with Sufficient Specificity

Defendants acknowledge that Stark Law and AKS violations may serve as the basis for FCA claims. PHC Mot. at 7. However, Defendants argue that Plaintiffs have failed to state a claim under Rule 12(b)(6) because Plaintiffs have failed to plead their

claims with the particularity required by Rule 9(b). *Id.* In particular, Defendants argue that Plaintiffs fail to plead "the details of an actually submitted false claim or particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted." PHC Mot. at 9 (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)) (internal quotations omitted). Defendants' application of the relevant law at this stage of the litigation is incorrect.

As to the issue of whether Plaintiffs adequately pleaded the details of an actually submitted false claim: This case was unsealed in January of 2023, and Plaintiffs filed their FAC in March 2023. Dkt. No. 18. Relator is seeking to obtain whatever evidence the U.S. Department of Justice and Texas Attorney General may have acquired during their investigations of the case, and to minimize the risk of duplicate discovery, Plaintiffs have so far refrained from serving additional discovery requests upon Defendants. Further, and as Defendants correctly point out, Relator is not an employee of HMC and lacks access to the records showing that Defendants submitted or cause to be submitted false claims. Accordingly, to grant Defendants' motion because Relator has not pleaded the details of an individual false claim would be to punish Relator for his forbearance in the interest of making this litigation as efficient as possible for all parties, including Defendants. Moreover, for the reasons stated, the relevant evidence on the basis of which Plaintiffs could plead the details of particular false claims are in Defendants' custody or control. Therefore, it would be premature and against the public interest at this stage in the litigation, when discovery propounded by Relator has yet to begin, to dismiss this *qui tam* action because Relator lacks access to the documents necessary to prove his claims. That is too high a bar, and it is found nowhere in the law. Relator is not required to identify particular claims prior to discovery. *See U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 665 (S.D. Tex. 2013), *aff'd sub nom. U.S. ex rel. Parikh v. Brown*, 762 F.3d 461 (5th Cir. 2014), *opinion withdrawn and superseded on reh'g*, 587 F. App'x 123 (5th Cir. 2014), *withdrawn from bound volume* (Oct. 1, 2014), and *aff'd sub nom. U.S. ex rel. Parikh v.*

*Brown*, 587 F. App'x 123 (5th Cir. 20140); *see also U.S. ex rel. Grubbs v. Kanneganti*, 565 F. 3d 180, 190 (5th Cir. 2009).

As to the issue of whether Plaintiffs adequately pleaded reliable indicia giving rise to the inference that false claims were submitted: Plaintiffs allege a comprehensive scheme of misconduct. FAC ¶¶ 2, 45–72. Again, Plaintiffs allege that PHC induced Six to perform lucrative surgeries at HMC in exchange for HMC's use of Gonzales as a supplier of medical devices. FAC ¶¶ 2, 47–48. Defendants do not dispute that Six serviced patients at HMC whose care was paid by Medicare, Medicaid, and Tricare, that Gonzales-supplied devices were used in those surgeries, or that Gonzales is Six's son-in-law, as alleged in the FAC. *See* FAC ¶¶ 2, 7, 50, 52. Under the circumstances of this case, the existence of these well-pleaded relationships alone constitutes sufficient indicia that Defendants submitted or cause to be submitted to the federal and state government. Put another way, viewing the factual allegations in the light most favorable to Plaintiffs, it is reasonable to infer that Defendants' scheme resulted in false claims being submitted to the United States and to Texas in violation of the AKS and Stark Law and, thus, in violation of the FCA.

**B.    Plaintiffs Plead Plausible FCA Claims Based on the Stark Law**

Defendants argue that Plaintiffs fail to allege violations of the Stark Law with sufficient particularity and fail to plead a prohibited financial relationship altogether. PHC Mot. at 10–15. As explained more fully below, Defendants' erroneous arguments fail.

### 1.    *Plaintiffs Plead All Elements of Their Claims*

First, Plaintiffs adequately plead each element of a Stark Law violation by each of the Defendants. Relevantly, a plain-language reading of the Stark Law shows that a violation occurs when:

(i)     a physician (or immediate family member)

(ii)    refers a patient to an entity

(iii)   to receive designated health services and

    (iv)    the referring physician (or immediate family member) and entity have a compensation arrangement.

42 U.S.C. § 1395nn(a). Likewise, a Stark Law Violation also occurs when:

    (i)    an entity

    (ii)    presents or causes to be presented

    (iii)    a claim for designated health services

    (iv)    pursuant to a prohibited referral.

*Id.* Defendants over-enunciate these elements[4] and ignore that the Stark Law prohibits both physicians and entities from engaging in certain conduct. PHC Mot. at 11. That is, as here, both physicians and entities may violate the Stark Law.

As to Stark Law violations by Six: Plaintiffs allege that Six is a physician, specifically, a neurosurgeon. FAC ¶¶ 5, 46. This satisfies the first element of a Stark Law violation by a physician. Plaintiffs allege that Six refers patients to HMC and NuERA, and that HMC and NuERA are entities. FAC ¶¶ 8–9, 48. This satisfies the second element of a Start Act violation by a physician. Plaintiffs allege that these referrals are for inpatient and outpatient hospital services, which are designated health services. FAC ¶¶ 48–49. This satisfies the third element of a Stark Law violation by a physician. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997) (noting that the Stark Law "prohibits referring Medicare patients to an entity for certain designated health services including inpatient and outpatient hospital services). Finally, Plaintiffs allege that a compensation agreement exists between both HMC and Six and between HMC and NuERA. FAC ¶ 48. This satisfies the fourth element of a Stark Law violation by a physician. *See id.*

---

[4] Defendants characterize a well-pleaded Stark Law violation as satisfying six elements in a two-step process. A plain reading of the statutory text shows this approach to be wrong. PHC Mot. at 11.

As to Stark Law violations by PHC: Plaintiffs allege that PHC is an entity. FAC ¶ 9–10.[5] This satisfies the first element of a Stark Law violation by an entity. Plaintiffs allege that PHC and HMC present claims for reimbursement to Plaintiffs. FAC ¶¶ 53, 66. This satisfies the second element of a Stark Law violation by an entity. Plaintiffs allege that these claims are for designated health services, including hospital services. FAC ¶¶ 48–49. This satisfies the third element of a Stark Law violation by an entity. Plaintiffs allege that these claims were presented pursuant to a prohibited referral, as described in the immediately preceding paragraph. This satisfies the fourth element of a Stark Law violation by an entity.

As to Stark Law violations by NuERA: Plaintiffs allege that NuERA is an entity. FAC ¶ 8. This satisfies the first element of a Stark Law violation by an entity. Plaintiffs allege that NuERA causes false claims for reimbursement to be submitted to Plaintiffs. FAC ¶ 75. This satisfies the second element of a Stark Law violation by an entity. Plaintiffs allege that these claims are for designated health services, including hospital services. FAC ¶¶ 48–49. This satisfies the third element of a Stark Law violation by an entity. Plaintiffs allege that these claims were presented pursuant to a prohibited referral, as described two paragraphs above. This satisfies the fourth element of a Stark Law violation by an entity.

As to the particularity of these allegations: As noted above, Defendants' complaints concerning the level of particularity with which Plaintiffs have made these allegations are ill founded. At the pleading stage, under the circumstances of this case, it is unreasonable to expect Relator to have particular documents upon which to rely in stating his allegations because these reside in Defendants custody or control, and the circumstances of the illegal arrangement between Defendants and the relationships

---

[5] As noted in the Introduction, PHC and HMC are treated as one for the purposes of this Response.

among them—the disclosure of which Relator is the original source vis-à-vis Plaintiffs—are, standing alone, sufficient indicia of Stark Law violations to give rise to the inference that false claims have been submitted.

### 2. *Plaintiffs Allege Financial Relationships Between the Parties*

Second, Plaintiffs adequately allege a web of Stark-prohibited financial relationships to render their claims plausible. To argue otherwise, Defendants pretend that the Stark Law does not say what it does. This attempt fails.

The Stark Law prohibits referrals from physicians not only to themselves but to entities in which their immediate family members have a financial interest. 42 U.S.C. § 1395nn(a). Here, Six's immediate family members (Gonzales and his wife, Six's daughter) have a financial interest in NuERA. As alleged in the FAC, Six refers patients to HMC for the use of its facilities in performing their surgeries and refers patients to NuERA by requiring HMC to use NuERA to procure certain medical devices and services for use in those surgeries. Thus, Six's immediate family members are not "indirectly compensated" as Defendants aver but are directly compensated by HMC. Accordingly, Defendants' invocation of and analysis of Plaintiffs' allegation under 42 C.F.R. § 411.354(c)(2) is simply inapposite. *See* PHC Mot. at 13–15. As Defendants themselves demonstrate, that section of the Code of Federal Regulations addresses situations in which a string of nested entities are used in an attempt to obscure the beneficial ownership of the Stark-Law-violating physician or immediate family members. *See* PHC Mot. at n.6 (describing a hypothetical referring physician's payment through nested hypothetical entities A, B, C, and D). That is not the case here. Here, the relationships between the physician and his co-conspirators are direct, as the illustration on the next page demonstrates.



Fig. 1. The relationships between Defendants.

Thus, compensation flows directly from one of the entities to which Six makes referrals (HMC) to an entity (NuERA) owned by immediate family members (Gonzales and his spouse) without an intermediary. *See* PHC Mot. at n.3. Because this is a direct flow, no additional elements need be pleaded, and Defendants concede that Plaintiffs have adequately alleged an "unbroken chain of financial relationships" between HMC and NuERA. PHC Mot. at 14.

However, should the Court find that 42 C.F.R. 411.354(c)(2) applies and, therefore, that Plaintiffs must plead additional factual allegations to assert a cause of action under the Stark Law, then the Court should grant Plaintiffs leave to amend accordingly.

**C.      Plaintiffs Plead Plausible FCA Claims Based on the AKS**

Defendants' attack on Plaintiffs' AKS claims reduces to the assertions that "the FAC fails to make any showing of *remuneration*" and that the FAC "fails to allege that HMC actually induced the referral of any federal healthcare program patient." PHC Mot. at 16. Along the way, Defendants make numerous irrelevant or incorrect statements, but Defendants are wrong on both counts.

### 1. Remuneration

First, Defendants assert that Plaintiffs fail to allege that HMC "paid [NuERA] for medical devices that were unnecessary or . . . above fair market value." PHC Mot. at 16. Even if true, this assertion is irrelevant because there is no requirement in the AKS that a government healthcare funding program be charged for needless or price-inflated products.

Second, Defendants assert that Plaintiffs "allege[] no detail of what remuneration passed from HMC to Michael Gonzales through NuERA." *Id.* This assertion ignores Plaintiffs' clear indication that Six was paid *money* to perform surgeries at HMC and that Gonzales was paid *money* to provide supplies and services used in Six's surgeries. *See, e.g.*, FAC ¶¶ 1–2, ¶¶ 45–46, 47. Indeed, Plaintiffs specifically allege that HMC tendered payment for its "purchase" of goods and services from Gonzales, FAC ¶ 47, and that Six was "highly compensated." FAC ¶ 57.

Third, Defendant asserts that "the Complaint pleads no allegation of remuneration passing from Mr. Gonzales to Dr. Six," pleads "no detail . . . of any remuneration passing from HMC to Dr. Six—whether directly or through Mr. Gonzales," and that "Relator appears to conflate the Stark Law's explicit treatment of a physician's immediate family members as relevant for purposes of determining the presence of a financial relationship." PHC Mot. at 16. These assertions are erroneous. Defendants' confusion arises, again, from a misreading of the relevant statute.

The AKS reads, in relevant part, as follows:

(1) Whoever knowingly and willfully *solicits* or *receives* any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—

(A) *in return for referring* an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) *in return for purchasing*, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good,

> facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

(2)   Whoever knowingly and willfully *offers* or *pays* any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

    (A)   *to refer an individual* to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

    (B)   *to purchase*, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

42 U.S.C. § 1320a–7b(b) (emphases added). Importantly, the AKS prohibits both the *solicitation* and the *receipt* of remuneration for referrals or purchases, *id.* § 1320a-7b(b)(1), and the AKS does not require that that the solicitor of remuneration be the recipient of remuneration. *See United States v. Cooper*, 38 F.4th 428, 433 (5th Cir. 2022). That is, the AKS facially applies even when the solicitation is made by one party with the intention that a third party will be the beneficiary of the verboten scheme. Additionally, the AKS prohibits the *paying* of remuneration for referrals. *United States v. St. Junius*, 739 F.3d 193, 210 (5th Cir. 2013) (holding the Anti–Kickback Statute prohibits receiving commissions in return for referrals); *United States v. Miles,* 360 F.3d 472, 479 (5thCir. 2004) (holding the Anti–Kickback Statute "criminalizes the payment of any funds designed to encourage an individual to refer another party to a Medicare provider for services to be paid for by the Medicare program"). Here, Six is alleged to have *solicited* purchases by HMC from NuERA in exchange for *referring* patients to HMC, and NuERA is alleged to have *received* payment for such purchases. FAC §§ 56–57. And HMS is alleged to have made those payments. *Id.* Therefore, Defendants' alleged conduct falls squarely within the AKS.

### 2.   Inducement

Defendants assert that Plaintiffs "fail[] to allege that HMC actually induced the referral of any federal healthcare program patient." PHC Mot. at 16. Per Defendants' own citation, "[t]his requires pleading that [the defendant] knowingly paid remuneration to specific physicians in exchange for referrals." *Id.* 17 (quoting *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 Fed. App'x 890, 894 (5th Cir. 2013). Setting aside that the AKS does not limit its reach to physicians, Plaintiffs' allegations easily meet Defendants' proposed test. Contrary to Defendants' assertions, *qui tam* Plaintiffs are not required to plead a specific "discussion[] or event . . . about any kick-back tainted understanding between HMC and Dr. Six." PHC Mot. 17. It is sufficient that Plaintiffs plead that such an understanding existed and that it actually induced Six to perform surgeries at HMC and induced HMC to pay Gonzales for goods and services. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (holding that a relator satisfies Rule 9(b) by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that false claims were actually submitted, even if the relator cannot allege details of a particular false claim). Plaintiffs do so repeatedly. *See, e.g.*, FAC ¶¶ 1–2 ("Harlingen Medical Center, L.P. and Prime Healthcare Services, Inc., have *induced* Dr. Six to perform surgeries at its facilities by agreeing to purchase surgical hardware and supplies from a NuERA Medical, LLC . . . .") (emphasis added), ¶¶ 4–48 ("Dr. Six asked HMC to purchase services and supplies . . . from NuERA and other companies represented by Gonzales . . . each time Dr. Six performed a surgery at HMC. HMC agreed to Dr. Six's request . . . .") (showing that the inducement was effective, *i.e.*, 'actual'). Therefore, despite not pleading a specific discussion or event, Plaintiffs allegations here are sufficient.

### D.    Plaintiffs' Plead Plausible Conspiracy Allegations

The Fifth Circuit set forth the elements of an FCA conspiracy claim in *U.S. ex rel. Grubbs v. Kanneganti*:

> [T]o prove a False Claims Act conspiracy, a relator must show (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement. The particularity requirements of Rule 9(b) apply to the False Claims Act's conspiracy provision with equal force as to its "presentment" and "record" provisions.

565 F.3d at 193 (5th Cir. 2009).

Here, Plaintiffs allege both of these elements. Plaintiffs allege the existence of an unlawful agreement, specifically, that PHC and HMC "induced Dr. Six to perform surgeries at its facilities by agreeing to purchase surgical hardware and supplies from a NuERA," which is owned by Six's son-in-law. *See, e.g.*, FAC ¶ 2. Plaintiffs allege many acts performed in furtherance of that agreement, including that HMC did, in fact, purchase goods and services from NuERA pursuant to the unlawful agreement, FAC ¶ 48–49, beginning no later than 2012 and continuing to present, FAC ¶ 55.

Defendants' mischaracterization of these allegations as "threadbare" relies on an unstated premise, namely, that the conspiracy alleged need somehow be more complex than it was. *See* PHC Mot. at 18. That simply is not so. A self-referral under the Stark Law or kickback under the AKS giving rise to an FCA violation need not involve an overly complex scheme, and Defendants identify no law indicating otherwise. That Defendants here engaged in so plain a scheme to defraud Plaintiffs in no way undermines the completeness of Plaintiffs' allegations. Therefore, in alleging the scheme illustrated in Figure 1, above, Plaintiffs have pleaded a conspiracy with sufficient particularity to meet the requirements of Rules 12(b)(6) and 9(b).

Defendants' other mischaracterizations of Plaintiffs' allegations are also unavailing, in part because they are needlessly scholastic. For example, Defendants assert that "Relator does not identify which minds are alleged to have met" and that "Relator does not identify which of the defendants are alleged to have participated in any

conspiracy." PHC Mot. 18. Such statements fly in the face of the text of the FAC, which plainly states that all the Defendants agreed to the conspiracy and participated in it. *See, e.g.*, FAC ¶¶ 47–48, ¶ 50.

Defendants continue to ignore the FAC when they assert that Plaintiffs fail to explain what the false claims submitted were. PHC Mot. at 18. Indeed, Plaintiffs FAC takes great pains to explain the specific forms presented to Plaintiffs by Defendants or caused by Defendants to be presented to Plaintiffs to achieve the objects of their conspiracy and that they did submit them. FAC ¶¶ 29–44, ¶ 53.

### E.   Plaintiffs Plausibly Plead TMFPA Violations

Finally, Plaintiffs adequately plead claims under Sections 36.002(1), 36.002(4)(B), and 36.002(9) of the Texas Human Resources Code, commonly known as the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code, chapter 36 ("TMFPA"). As these claims are predicated on violations of the Stark Law and AKS and on the alleged conspiracy between Defendants, Plaintiffs successfully state their claims under the TMFPA for the same reasons, explained above, that they successfully state their claims under the Stark Law, AKS, and FCA.

Defendants' unlawful conduct, as described in the FAC, also violates the TMFPA in its own right. Accordingly, Plaintiffs note that Defendants' arguments concerning the submission of false claims do not apply to the Texas causes of action. A review of the plain language of the TMFPA reveals that liability under that statute for the unlawful acts pleaded here does not require the actual submission of a false claim. Tex. Hum. Res. Code § 36.002(1), 4(B), & (9).

However, Defendants strike at a straw man when they assert that Plaintiffs fail to state a claim under Section 36.002(5) of the Texas Human Resources Code, *see* PHC Mot. 19, because Plaintiffs do not assert a cause of action under that section, FAC ¶¶ 85–96.

Accordingly, Defendants' motion to dismiss Plaintiffs purported (but non-existent) cause of action under Section 36.002(5) is not properly before the Court and must be denied.[6]

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motions. In the alternative, the Court should grant Plaintiffs leave to amend their First Amended Complaint to the extent the Court finds any of their allegations deficient at this early state of the action.

Respectfully submitted,

/s/ Michael Cowen
Michael Cowen
(S.D. Tex. No. 19967, Tex. Bar No. 00795306)
6243 IH-10 West, Suite 801
San Antonio, TX 78201
(210) 941-1301 telephone
(210) 880-9461 facsimile
efilings@cowenlaw.com (service email)
michael@cowenlaw.com (personal email)

ATTORNEY-IN-CHARGE FOR RELATOR

---

[6] In the interest of transparency, Plaintiffs would inform the Court that they do intend to amend their complaint to add causes of action under Sections 36.002(5) and 36.002(13). Under Section 36.002(5), the TMFPA provides, in relevant part, that it is unlawful when a person "knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program." Tex. Human Res. Code § 36.002(5). Section 36.002(13) incorporates by reference the Texas Anti-Kickback Statute.

Notably, the statute does not say that the solicitor of the additional consideration must be the same person who receives the additional consideration. As alleged in the FAC and discussed above: (i) HMC, Six, and Gonzales were paid for goods and services *paid for under the Medicaid program*; (ii) Six, the cost of whose services are paid for by Medicaid, *solicited* additional consideration, *i.e.*, purchases from Gonzales, as a condition to perform surgeries at HMC; (iii) HMC agreed to *pay* and did *pay* that consideration; and (iv) Gonzales *accepted* and *received* that conditional consideration. Therefore, if Plaintiffs had asserted a cause of action under Section 36.002(5), they would have done so adequately.

/s/ Francisco, Guerra IV
Francisco Guerra IV
(Tex. Bar No. 00796684)
fguerra@wattsguerra.com
Edward W. Allred
(Tex. Bar No. 50511764)
eallred@wattsguerra.com
WATTS GUERRA LLP
475 East Ashby Place
Suite 1200
San Antonio, TX 78212
(210) 447-0500 telephone
(210) 447-0501 facsimile

CO-COUNSEL FOR RELATOR

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of this document in accordance with the Federal Rules of Civil Procedure via the Court's CM/ECF system on July 31, 2023.

/s/ Michael Cowen
_____
Michael Cowen
(S.D. Tex. No. 19967, Tex. Bar No. 00795306)
6243 IH-10 West, Suite 801
San Antonio, TX 78201
(210) 941-1301 telephone
(210) 880-9461 facsimile
efilings@cowenlaw.com (service email)
michael@cowenlaw.com (personal email)