## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | § | |
| STATE OF TEXAS *ex rel.* DR. JOSE | § | |
| DONES | § | CIVIL ACTION NO. 1:21-cv-00181 |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| vs. | § | |
| | § | |
| HARLINGEN MEDICAL CENTER, | § | |
| L.P. | § | |
| DR. ERIC G. SIX, VALLEY | § | |
| NEUROSURGEONS, P.L.LC., | § | |
| MICHAEL GONZALEZ, NUERA | § | |
| MEDICAL L.L.C. and PRIME | § | |
| HEALTHCARE SERVICES, INC. | § | |
| *Defendants* | § | |

## DEFENDANTS MICHAEL GONZALEZ AND NUERA MEDICAL L.L.C.'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS UNDER FEDERAL RULES 12(B)(6) AND 9(B)

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT .................................................................1

II.  MOVING DEFENDANTS CANNOT BE HELD LIABLE UNDER STARK LAW...3

III. RELATOR FAILS TO PLEAD FCA CLAIMS WITH PARTICULARITY .............5

   A.   RELATOR DOES NOT PLEAD "PARTICULAR DETAILS" WITH "RELIABLE INDICIA" THAT LEAD TO A STRONG INFERENCE..................................................................................................... 6

   B.   RELATOR FAILS TO PLEAD AN AKS VIOLATION WITH PARTICULARITY ................................ 8

      1.   Remuneration and Inducement........................................................................ 8

      2.   Relator Argues an Incorrect Scienter Standard for AKS....................................... 10

IV.  RELATOR FAILED TO PLEAD CONSPIRACY ...................................... 11

V.   RELATOR DID NOT PLEAD TMFPA CLAIMS ...................................... 13

VI.  SCIENTER, CERTIFICATION, PRESENTMENT AND CAUSATION .......... 15

VII. CONCLUSION ............................................................................ 18

## TABLE OF AUTHORITIES

Page(s)

Cases

*Castillo v. Boston Sci. Corp.,* 7:20-CV-00123,
2021 WL 3630001 (S.D. Tex. Jan. 19, 2021) ...........................................................19

*Patel v. Catholic Health Initiatives,*
312 F. Supp. 3d 584 (S.D. Tex. 2018) ...............................................................8, 11

*Sanderson v. Allstate Fire and Cas. Ins. Co.,*
2023 WL 417478 (S.D. Tex. Jan. 25, 2023) ...............................................................1

*Tellabs, Inc. v Makor Issues & Rts., Ltd.,*
551 U.S. 308, 127 S Ct 2499, 168 L Ed 2d 179 (2007) ........................................16

*U.S. ex rel. Bennett v. Medtronic*, Inc.,
747 F Supp 2d 745 (S.D. Tex. 2010) ...............................................................2, 7, 18

*U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.,*
748 F Supp 2d 95 (W.D. Tex 2010)...............................................................10

*U.S. ex rel. Grubbs v Kanneganti,*
565 F.3d 180 (5th Cir. 2009).......................................................................*passim*

*U.S. ex rel. King v Solvay S.A.,*
823 F. Supp 2d 472 (S.D. Tex. 2011) .........................................................12

*U.S. ex rel. Wall v. Vista Hospice Care, In*c.,
778 F. Supp. 2d 709 (N.D. Tex. 2011)........................................................16

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc*.,
336 F3d 375 (5th Cir. 2003).........................................................................10

*U.S. ex rel. Williams v McKesson Corp.,* 3:12-CV-0371-B,
2014 WL 3353247 (N.D. Tex. July 9, 2014) .................................................1

*United States ex rel. Beck v St. Joseph Health Sys.*,
 5:17-CV-052-C, 2021 WL 7084164,at *10 (N.D. Tex Nov. 30, 2021), appeal dismissed, 22
10137, 2023 W.L. 1433614 (5thCir. Feb. 1, 2023).....................................4, 5

*United States ex rel. Brisenov. Hillcroft Med. Clinic Assn*.,
4:20-CV-02871, 2022 WL 17417178, at *4 (S.D. Tex. Dec. 5, 2022), report and
recommendation adopted, 4:20-CV-02871, 2022 WL 17834209 (S.D. Tex. Dec.21, 2022)....16

*United States ex rel. Emanuele v. Medicor Associates,*
No. 10-245 Erie, 2013 WL 3893323 (W.D. Pa. July 26, 2013)...................................9

*United States ex rel. Nunnally v. W. Calcasieu Cameron H*osp.,
519 F. App'x 890 (5th Cir. 2013) ...............................................................8, 9

*United States v Dental Health Programs, Inc*., 3:18-CV-00463-E,
2020 WL 3064712 (N.D. Tex. June 8, 2020) .........................................13

*United States v. Cooper*,
38 F4th 428 (5th Cir. 2022) ........................................................................3

*United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.,*
17-CV- 1249-XR, 2019 WL 5970283 (W.D. Tex. Nov. 13, 2019)..........................12

*United States v. Lozano*,
CV 17-2433 (RJL), 2023WL 5036355, at *6 (D.D.C.Aug. 8, 2023) ..............8, 9, 10

*United States v. Marlin Med.Sols. LLC*,
579 F.Supp 3d 876 (W.D. Tex. 2022)..........................................................12

*United States v. Nora*,
988 F3d 823 (5th Cir. 2021).....................................................................10, 11

*United States v. Senseonics Holdings, Inc.,*
SA-20-CV-00657-FB, 2023 WL 2354915 (W.D. Tex. Mar. 3, 2023) .......................................8

*United States v. St. Junis,*
739 F.3d 193 (5th Circ. 2013)............................................................................................10

*UnitedStates ex rel. Frey v. Health Mgt. Sys., Inc.,*
4:21-CV- 02024, 2023 W.L.2563239, at *7 (S.D. Tex. Feb. 10, 2023), report and
recommendation adoptedsub nom., 4:21-CV-02024, 2023W.L. 2564342 (S.D. Tex. Mar. 17,
2023) ......................................................................................................................................6

*UnitedStates ex rel. Jackson v. Ventavia Rsch. Grp., LLC,*
1:21-CV-00008, 2023 WL 2744394,at *11 (E.D. Tex. Mar. 31, 2023) ..................................17

*Universal Health Servs., Inc. v. United States,*136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016).......16

*Workman v Calogero,*
174 Fed Appx 824 (5th Cir. 2006) .........................................................................................7

## Statutes

31 U.S.C. § 3729(a)(1)(A)-(B)...........................................................................................17
31 U.S.C. § 3729(a)(1)(C) ...................................................................................................17
42 U.S.C. § 1320a-7b(b)(2) .................................................................................................10
42 U.S.C. § 1395nn(h)(6)(k)..................................................................................................3
42 U.S.C.A. § 1395nn(a)(1)(B)..............................................................................................4

## Rules

Federal Rule of Civil Procedure (**"Rule"**) 12(b)(6)............................................................*passim*
Fed. R. Civ. P. 8 ........................................................................................................1, 5, 7

## Regulations

42 C.F.R. § 411.351 ............................................................................................................3, 4
42 C.F.R. 411.354 ...............................................................................................................7

## Other Authorities

73 Fed. Reg, 161 ..............................................................................................................4, 5

iv

Michael Gonzales ("**Gonzales**") and NuERA Medical, L.L.C. ("**NuERA**") (collectively, "**Moving Defendants**"), submit this reply in further support of their motion to dismiss Dr. Jose Dones' ("**Relator**") First Amended Complaint (Docket "**Dkt**." 18, "**FAC**"),[1] for failure to state a claim under Federal Rule of Civil Procedure ("**Rule**") 12(b)(6) and for failure to meet the Rule 9(b) heightened pleading standard for claims alleging fraud.

## I.    PRELIMINARY STATEMENT

Relator's opposition fails to show that the FAC pleads plausible or particularized FCA and TMFPA[2] claims against Moving Defendants. (Dkt. 36, "**Opposition/Opp**"). Relator's brief reveals a patent misunderstanding of Rule 8 and Rule 9(b), as he rehashes the unadorned, conclusory, legal conclusions that are prevalent in the FAC.

Moving Defendants' summarized Relator's pleadings in this way:

> "*I, Relator, am a surgeon. One of my competitors who has served as an expert witness against me, Dr. Six, works with a different hospital (I think). I think his son-in-law does business with that hospital. I think that should be illegal. Don't ask me how I know this, or details, because I have none (and I didn't plead them, twice).*"

Relator accedes this, stating that Moving Defendants' "rely on an unrealistic assessment of what a Relator *in Dones's position* could conceivably allege before beginning discovery" (Opp., p. 3). Just so! Relator has plead everything someone in his position (*someone who knows nothing about any defendant*) can. Relator admits he fails to plead facts/fraud with particularity, but asks the Court to ignore this because "discovery…has yet to begin" and because he has "so far refrained from serving additional discovery requests" (Opp., p. 11). A main purpose of Rule 9(b) is to "eliminat[e] fraud actions in which all the facts are learned *after* discovery…"[3]

Without the required facts, the FAC should be dismissed under Rule 8 for failure meet the plausibility standard and under Rule 9(b) for failure to particularize FCA/TMFPA claims

---

[1] The FAC alleges False Claims Act ("**FCA**") and Texas Medicaid Fraud Prevention Act ("**TMFPA**") claims.

[2] TMFPA claims must also meet Rule 9(b) requirements. *U.S. ex rel. Williams v McKesson Corp.,* 3:12-CV-0371-B, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014).

[3] *Sanderson v. Allstate Fire and Cas. Ins. Co.*, 2023 WL 417478, at *1 (S.D. Tex. Jan. 25, 2023).

based on Stark Law or AKS.

Aside from conclusory allegations masquerading as facts, Relator's Opposition makes incorrect arguments. Relator misconstrues Moving Defendants' Stark Law arguments, but still cannot refute that Moving Defendants are not statutorily liable under the Stark Law. Moving Defendants are neither physicians, nor do they provide[4] Designated Health Services ("**DHS**"), nor does the FAC plead facts showing Moving Defendants presented/caused to be presented a bill for DHS to the government.

Relator's utter lack of knowledge is glaring in their *omnibus* response. Relator cannot specify the who/what/where/when/why as to specific defendants, because Relator does not have the type of knowledge necessary for a pleading to survive in a Rule 9(b) context.[5] Relator improperly generalizes about "all Defendants," but fails to plead that **Moving Defendants:** (a) "actually submitted [a] false claim"; or (b) "particular details of a [Stark Law or AKS] scheme [that Moving Defendants were involved in] to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted,"; or (c) FCA/TMFPA conspiracy. Relator also argues an incorrect AKS scienter/*mens rea* standard, and fails to show that FCA/TMFPA's scienter, certification, and presentment requirements were plead. Relator seeks to distinguish the TMFPA from the FCA, but given the FAC allegations, the similarities outweigh differences, requiring dismissal of TMFPA claims. Finally, despite several bites of the apple, Relator seeks to amend the FAC (without a required motion) and without providing this

---

[4] Nor is it plead that Moving Defendants provide DHS.

[5] *See, e.g.*, *U.S. ex rel. Bennett v. Medtronic*, Inc., 747 F Supp 2d 745, 784 (S.D. Tex. 2010) ("***Bennett***"), citing *U.S. ex rel. Grubbs v Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ("*Grubbs*"), where the *Grubbs* plaintiff provided "detail, including the date, place, and participants, *the dinner meeting at which two doctors in his section attempted to bring him into the fold of their on-going fraudulent plot*... He alleges his first-hand experience of the scheme unfolding before him, describing how the weekend on-call nursing staff attempted to assist him in recording face-to-face physician visits that had not occurred." 747 F. Supp 2d at 781. Without this level of detail, *Bennett* held "the relators' complaint does not sufficiently allege that by promoting off-label use, Medtronic caused the submission of false claims and is liable under the FCA." *Id.*

2

Court with ***any added facts*** to show amendment is proper. For all these reasons, the FAC should be dismissed with prejudice.

## II.    MOVING DEFENDANTS CANNOT BE HELD LIABLE UNDER STARK LAW

Relator's brief misconstrues Moving Defendants' Stark Law arguments, claiming they incorrectly read the word "and" as joining Section (A) of the statute (prohibited physician conduct) with Section (B) (prohibited entity conduct) as two necessary conditions (Opp., p. 7). This is wrong. Moving Defendants argued they cannot be held liable under ***either*** the physician ***or*** entity prong of the Stark Law. (Dkt. 29, "**Mov. Br.**," pp. 7-8). Moving Defendants are not/alleged to be physicians, eliminating liability under the "Physician Prong…" (*Id.*). The cases cited by Relator do not address Stark Law liability. (Opp., p. 7; *citing e.g.*, *United States v. Cooper*, 38 F4th 428, 433 (5th Cir. 2022) (analyzing subparts (A) and (B) of the **AKS**). Relator admits the AKS differs from Stark Law, stating "the AKS does not limit its reach to physicians…" (Opp., p. 19), which implies that Stark Law (Subpart A) does. Only physicians or DHS entities can be liable under Stark Law, Subpart A, and Relator does not plead that Moving Defendants are physicians.

Faced with imminent dismissal, Relator argues Moving Defendants are liable under the "entity prong" of the statute. (Opp. p. 7). Relator admits Moving Defendants sell "surgical hardware and supplies," (FAC, ¶ 2). Again, these services/items are not DHS. 42 U.S.C. § 1395nn(h)(6)(k); 42 C.F.R. § 411.351. To spin, Relator seeks an implausible inference, changing what is actually plead in the FAC. Relator claims Moving Defendants perform "inpatient and outpatient hospital services" and that he plead "Gonzales performed such work" (Opp., p. 7). Relator actually plead that HMC "purchased services and goods from NuERA" and "Gonzales was often in the operating room." (FAC ¶¶ 48-49).[6] Even if true, these allegations do not/cannot give rise to an inference that Moving Defendants are hospitals/part of a hospital - performing inpatient or outpatient hospital services. The Center for Medicare & Medicaid Services

---

[6] Relator has no knowledge to this effect.

("**CMS**")[7] has stated in its Final Rule[8] related to the Stark Law:

> We do not consider an entity that leases or sells space or equipment used for the performance of the service, or furnishes supplies that are not separately billable but used in the performance of the medical service…to perform DHS.

73 Fed. Reg. 161, p. 48726. CMS does not consider an entity (like NuEra) that "sells…equipment" used in the "performance of the medical service" that is not billed by that entity to Medicare to be "performing" DHS. This alone requires dismissal.

Starkly, Relator does not plead/argue any facts about DHS billing, as required. The Stark Law states, the "***entity may not present or cause to be presented a claim*** under this subchapter or bill…***for [DHS].***" 42 U.S.C.A. § 1395nn(a)(1)(B) (emphasis added). Relator did not plead how Moving Defendants' services are billed and he did not allege with specificity that Moving Defendants[9] submitted a claim or billed for DHS, nor can he because they do not provide DHS or bill the government for DHS. (Mov. Br., p. 8).[10]

Finally, Relator did not plead particularized facts to show Moving Defendants "caused" the submission of any claim for DHS.[11] *See United States ex rel. Beck v St. Joseph Health Sys.*, 5:17-CV-052-C, 2021 WL 7084164, at \*10 (N.D. Tex Nov. 30, 2021), appeal dismissed, 22-10137, 2023 W.L. 1433614 (5th Cir. Feb. 1, 2023). In CMS's Final Rule, it states: "[w]e are not revising the definition of 'entity' in § 411.351 to include the 'or cause a claim to be presented' language…" 73 Fed. Reg, 161, 48727. CMS made it clear that it is only "**once a**

---

[7] CMS oversees The Medicare and Medicaid programs.

[8] Federal Register / Vol. 73, No. 161 / Tuesday, Aug. 19, 2008 - "**Changes to Disclosure of Physician Ownership in Hospitals and Physician Self-Referral Rules.**"

[9] Relator argues that because the Moving Brief referred to Gonzales and NuEra as "Moving Defendants" they are one in the same. This defined term was merely for briefing convenience.

[10] Stark Law and AKS predicates must also satisfy Rule 9(b). (Mov. Br., p. 7, fn. 11)(citing *Parikh*).

[11] Relator's failure to plead "causation" is further briefed in Section VI below.

**person or entity has furnished DHS,** and therefore is considered to be a DHS entity with respect to that service, [that] the person or entity is prohibited from either presenting a claim or causing a claim to be submitted." *Id.* And, according to CMS, Moving Defendants do not provide/furnish DHS if they "sell...equipment" used for the medical service. 73 Fed. Reg. 161, p. 48726.

In *Beck*, the relator argued that although Defendants were not "hospital entities" they "caused the false claims to be submitted to the Government..." *Id.* at *10. *Beck* held the "***newly asserted causation theory fails to pass muster under federal pleading requirements...***," let alone for summary judgment, absent "a single piece of evidence showing [defendants] caused the submission of a false claim." *Id. Beck* recognized facts are needed to plead causation, especially when Moving Defendants are "***not enrolled in the Medicare program, [and do] not and cannot present claims to Medicare for DHS***." *Id. (emphasis added).*

Moving Defendants sell surgical supplies (not DHS). Here, Relator does not plead facts that would satisfy federal pleading requirements (Rule 8 – plausible; or 9(b))- particularized) to show that Moving Defendants caused or in any way could or did present or were in anyway involved in submitting a DHS claim. If the Court credited Relator's argument, every item provided to a hospital (including drinking cups) would automatically become DHS, rendering the statutory list unnecessary. This sentiment was echoed in the commentary period on the CMS's Final Rule, and CMS sought to ***avoid*** turning any "entity that performs services for a DHS entity, even a provider of linens or food services, into a DHS entity itself." See 73 Fed. Reg, 161, 48726-27. Thus, Moving Defendants correctly argued they cannot be held liable, since Relator did not/cannot plead Moving Defendants' liability under Stark Law as a physician, entity, or that they provided/billed/or caused the submission of DHS claims. And so, the FCA claim against Moving Defendants based on Stark Law must be dismissed.

## III.   RELATOR FAILS TO PLEAD FCA CLAIMS WITH PARTICULARITY

Relator's Opposition acknowledges that the FAC does not plead "details of an actually

submitted false claim." (Opp., pp. 10-11). Relator claims he "is not required to…" (Opp., p. 11). This is only half the story. Rule 9(b) requires Relator to ***either*** plead the "details of an actually submitted false claim" or "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted." (Mov. Br., p. 10, citing *Grubbs*). Relator again argues "discovery" is the reason he does not identify a false claim, (Opp. p. 11), but this does not absolve his Rule 9(b) burden to either identify an actual false claim or the particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted. (Mov. Br., p. 5 citing *Grubbs*). Relator did neither. Relator's brief rehashes the unadorned allegations of the FAC in the same conclusory fashion as the FAC itself. (*e.g.*, FAC ¶¶ 2, 45–72). Below we address Relator's arguments as they relate to the Moving Defendants.

## A. Relator Does Not Plead "Particular Details" with "Reliable Indicia" that Lead to a Strong Inference

Moving Defendants show that they are not liable under Stark Law above. In an abundance of caution, though, we address additional arguments interspersed in the Opposition. Relator argues he plead with particularity a scheme under which Moving Defendants "cause[d] false claims for reimbursement to be submitted" citing FAC ¶ 75. (Opp., p. 14). Paragraph ¶ 75 is a legal conclusion in the "Causes of Action" section claiming ***all*** "Defendants submitted and/or caused to be submitted to… false or fraudulent claims for payment [to] USG's Medicare, Medicaid, and/or Tricare." (FAC ¶ 75). Relator impermissibly lumps all defendants together,[12] failing to distinguish payers, and failing to point to one particular fact giving rise to even a plausible inference that Moving Defendants caused Stark Law violative claims to be submitted (**patients, dates, amounts of compensation, statistics, improper referrals, *et cetera***). These

---

[12] It is impermissibly conclusory to "lump" all Defendants together when pleading. *United States ex rel. Frey v. Health Mgt. Sys., Inc.*, 4:21-CV- 02024, 2023 W.L. 2563239, at *7 (S.D. Tex. Feb. 10, 2023), report and recommendation adopted sub nom., 4:21-CV-02024, 2023 W.L. 2564342 (S.D. Tex. Mar. 17, 2023) ("***Frey***").

are conclusory statements masquerading as facts. *Workman v Calogero*, 174 Fed Appx 824, 826 (5th Cir. 2006) (legal conclusions masquerading as facts will not prevent dismissal).

Relator also argues he plead a required "financial relationship" under the Stark Law involving Moving Defendants. (Opp., p. 15). Even if Moving Defendants could be liable under Stark Law (they cannot), simply pleading Mr. Gonzales is the son-in-law of Dr. Six and that HMC purchased "surgical equipment" is not enough to plead a Stark Law Financial Relationship:

> Financial relationship [which] means — (i) A direct or indirect ownership or investment interest (as defined in paragraph (b) of this section) ***in any entity that furnishes DHS***; or (ii) A direct or indirect compensation arrangement (as defined in paragraph (c) of this section) ***with an entity that furnishes DHS***.
> 42 C.F.R. 411.354. (***Emphasis added***).

Relator pleaded no facts to show that Moving Defendants furnish DHS -as they do not. It is unclear the type of Stark Law financial relationship Relator claims to have plead (direct, indirect, *et cetera*) regarding Moving Defendants. Despite the incorrect diagram provided by Relator (Opp., p. 16), the FAC lacks any facts to show a statutory financial relationship involving Moving Defendants, justifying a separate reason to dismiss FCA claims based on Stark Law. Although it is unclear from the actual FAC, Relator argues in his brief and via the diagram that he is pleading a "direct financial relationship."(*Id*. at p. 16). Relator admits that he is not even certain what type of relationship he is pleading, as he states if he did not plead a "direct" relationship, he should be permitted to amend to allege an "indirect" relationship. (*Id*.). However, as Relator chose solely pursue legally incorrect arguments and failed to rebut Moving Defendant's Stark arguments, without indicating what new facts he would rely on, Relator has waived the issue.

Finally, Relator has no knowledge and no "reliable indicia" – he is not an insider, and had actually does not know of anything regarding defendants. *See, e.g.*, *Grubb*s and *Bennett*. He has, at best, suspicions. Suspicions with conclusory allegations do not meet the requirements of FRCP 9(b) or Rule 8.

**B.  Relator Fails to Plead an AKS Violation with Particularity**

Relator's Opposition fails to show that the FAC pleads an FCA claim based on an AKS violation committed by Moving Defendants.

### 1.  Remuneration and Inducement

In response to Moving Defendants' arguments and case law, (Mov. Br., pp. 11-15)(*citing e.g., United States ex rel. Nunnally v. W. Calcasieu Cameron H*osp., 519 F. App'x 890, 894 (5th Cir. 2013); *United States v. Senseonics Holdings, Inc.,* SA-20-CV-00657-FB, 2023 WL 2354915 (W.D. Tex. Mar. 3, 2023); Relator rehashes unadorned legal conclusions plead in the FAC, and does not point to any facts to support an AKS scheme or knowledge of such a scheme by Moving Defendants. Relator does not plead who (*e.g.*, patient referrals, and who submitted claims), what (*e.g.*, amounts of payments), when (*e.g.*, dates of referrals or payments), how (*e.g.*, how any type of compensation/remuneration shifted up or down based on referrals), or any other indicators of reliability.

Relator argues that he plead "remuneration" and "inducement" because he speculates (without knowledge) that "Gonzales was paid money to provide supplies and services used in Six's surgeries" (Opp. p. 17, citing, *e.g.*, FAC ¶¶ 1–2, ¶¶ 45–46, 47). Relator's brief uses legal buzz words like "solicited" or "referring patients," (*Id*.), but like the FAC, the arguments do not point to facts to even create an inference of liability, let alone particularize claims. There are no dates, patients, referrals, amounts of remuneration, statistics, details of an agreement, or any facts that show that Moving Defendants paid or received "***improper remuneration [which must] relate[] to the inducement of referrals.***" *Patel v. Catholic Health Initiatives,* 312 F. Supp. 3d 584, 599 (S.D. Tex. 2018) aff'd sub nom. *United States ex rel. Patel v Catholic Health Initiatives*, 792 Fed Appx 296 (5th Cir. 2019) ("**Patel**") (emphasis added); *see also, United States v. Lozano*, CV 17-2433 (RJL), 2023 WL 5036355, at *6 (D.D.C. Aug. 8, 2023)(stating a "Careful reading of the SAC reveals only conclusory allegations of the alleged kickback scheme to provide unlawful remunerations and kickbacks to the six Defendant Physicians in return for unlawful referrals").

In *Lozano,* the Court reviewed several cases and explained the detail necessary to satisfy Rule 9(b) pleading requirements for fraud based on kickback schemes. 2023 WL 5036355, at *6. Ultimately, *Lozano* found the relator's complaint conclusory like the complaint in *United States ex rel. Emanuele v. Medicor Associates,* No. 10-245 Erie, 2013 WL 3893323, at *8 (W.D. Pa. July 26, 2013), as the *Emanuele* relator did not explain why "the medical directorships at issue were not legitimate service contracts, what instructions concerning the service contracts were allegedly given, and whether any specific or even general number of referrals allegedly took place pursuant to the contracts." *Lozano,* 2023 WL 5036355, at *7. Like *Nunnally,* the FAC provides "sweeping and conclusory allegations of verbal agreements" that any stranger could guess about. 519 F. App'x at 894. Like *Lozano*, Relator fails to provide, "substantial details of the alleged agreement," or why the relationships he speculates exist are "not legitimate service contracts." 2023 WL 5036355, at *6. Pleading that HMC buys surgical equipment from Moving Defendants and Gonzales is Dr. Six's son in law, accompanied by legal conclusions and absence of dates, referrals, agreements, statistics, any knowledge, or facts showing wrongdoing by Moving Defendants, justifies dismissal of the AKS claims.

Relator incorrectly argues that it "is sufficient that Plaintiffs plead that such an understanding existed and that it actually induced Six to perform surgeries at HMC and induced HMC to pay Gonzales for goods and services." (Opp. , p. 19, citing *Grubbs*). Yet the detail provided by the *Grubbs* relator was worlds apart from the bare legal conclusions here. (Mov. Br., p. 17 stating the *Grubbs* plaintiff provided "detail, including the date, place, and participants, the dinner meeting at which two doctors in his section attempted to bring him into the fold of their on-going fraudulent plot. [*Grubbs*] alleges his firsthand experience of the scheme unfolding before him..."). Relator has no knowledge – no "firsthand experience" – no *Grubbs* dinners where his competitor (Dr. Six) spelled out the details of and "attempted to bring him into the fold of their on-going fraudulent plot." Relator says he can't be expected to have proper information before discovery. (Opp. p. 14). Relator pleads "on information and belief" that conduct took place since 2012. (Mov. Br, p. 12-13). On rare occasions in fraud cases courts make exceptions for

information and belief allegations when they are actually supported by facts; those same courts warn this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F3d 375, 385 (5th Cir. 2003). Relator's entire pleading is based on speculation with no facts, and no leniency should be afforded. Absent the knowledge/detail discussed in *Grubbs*, *Nunally,* and *Lozano*, the FCA claims based on AKS must be dismissed.

### 2. Relator Argues an Incorrect Scienter Standard for AKS

Relator did not plead or particularize that Moving Defendants committed a "knowing and willful" violation of the AKS. Relator argues the wrong scienter/*mens rea* standard for the AKS. Relator cites a wrong/misleading case from 2013 to argue that the "knowingly and willfully" requirement merely means the intention to perform the act, (Opp., p. 8) (citing *United States v. St. Junis*, 739 F.3d 193, 210 (5th Circ. 2013)). The AKS makes it a ***crime*** to "knowingly and willfully offer[ ] or pay[ ] any remuneration (including any kickback, bribe, or rebate)' to induce someone to refer an individual to a health care provider for which payment may be made under a federal health care program." 42 U.S.C. § 1320a-7b(b)(2). When used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' [meaning] … the defendant acted with knowledge that his conduct was unlawful." *United States v. Nora*, 988 F3d 823, 830 (5th Cir. 2021); *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.,* 748 F Supp 2d 95, 113 (W.D. Tex 2010), aff'd sub nom., 689 F3d 470 (5th Cir. 2012) ("Anti–Kickback Act requires proof that a defendant acted "knowingly and willfully"—***criminal intent*..**" (emphasis added). In *Nora*, the Court stated that while:

> the term willfully can vary depending on the context…this court has held that the general understanding of the term applies to its use in the general health care fraud statute and the ***health care anti-kickback statute…*** Willfulness in the Medicare kickback statute means that the act was committed voluntarily and purposely ***with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.**… **Neither conspiracy nor aider and abettor liability lowers this mens rea…***

Id. at 830 (emphasis added) (internal citations omitted).

**Given *Nora*, the AKS scienter/*mens rea* is more robust than what Relator claims.**
This is why Relator did not address Moving Defendants' citation to *Patel*. (Mov. Br., p. 15). *Patel* reviewed several cases and concluded that to survive dismissal a complaint must have enough detail to show the "improper remuneration clearly relates to the inducement of referrals" 312 F. Supp. 3d at 599. Without this detail, it is not "plausible that the defendants specifically ***intended to do something the law forbids*" *Id.* (emphasis added). Like *Patel,* Relator pleads no details (*e.g.*, what (amounts), who (patients, patient referral or ID numbers), when (dates)), specifics about the alleged kickbacks, statistics, details of an agreement, facts to show actual inducement of referrals, or how any Moving Defendants intended/knew or could have known they did something the law forbids. Failing to plead this detail requires dismissal of the AKS claim. *Id.*

Relator further argues that even if this pleading is required (which it is), then Defendants, including Gonzales "had notice of their obligations under law." (Opp., p. 9). Relator cites FAC, ¶ 11, to impermissibly argue that ***all*** "Defendants had notice of their obligations under the law" - - this does not give rise to even a plausible, let alone, particularize inference that Moving Defendants did/intended to do something the law forbids or knew of wrongdoing by anyone. (FAC, ¶ 42).[13] Like *Nora*, conspiracy allegations (which are not even properly plead), do not alleviate the AKS *mens rea* requirement. 988 F3d at 830. Relator pleads no facts to support that Moving Defendants were even in a position to see government billing, knew of agreements or referrals, or ignored the same. Relator's AKS argument related to "knowing and willing" is legally wrong, and failure to plead facts showing Moving Defendants intended to do something the law forbids/scienter/*mens rea*, requires Dismissal of the AKS claim.

## IV.   RELATOR FAILED TO PLEAD CONSPIRACY

Relator fails to show that he plead FCA/TMFPA conspiracy involving Moving Defendants. Relator ignores Rule 9(b) pleading requirements, citing legal conclusions and

---

[13] It is impermissible to "lump" all Defendants together when pleading. *Frey, supra,* p. 6, fn. 12.

unadorned allegations (*e.g.*, FAC, ¶¶ 2 and 48–49). Relator does not address the Moving Brief's cases which hold that FCA conspiracy based on fraud also must satisfy Rule 9(b), and must allege that the co-conspirators shared "specific intent to defraud the government" for the "purpose of having an impact on the Government's decision to pay false…claims." (Mov. Br., p. 19) (*citing, United States v. Marlin Med. Sols. LLC,* 579 F.Supp 3d 876, 895 (W.D. Tex. 2022); *U.S. ex rel. King v Solvay S.A.,* 823 F. Supp 2d 472, 517 (S.D. Tex. 2011), and *United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.,* SA-17-CV- 1249-XR, 2019 WL 5970283, at *12 (W.D. Tex. Nov. 13, 2019). Relator must particularize facts to show an illegal ***agreement to have false claims paid.*** (Mov. Br., pp. 19-20).

Relator points to FAC allegations that are unembellished, sweeping, conclusory, or "on information and belief," none of which satisfy Rule 9(b) (*e.g.*, FAC, ¶¶ 2 and 48–49). FAC ¶ 48 alleges "HMC agreed to Dr. Six request and to reward him for performing his surgeries at HMC rather than a competing hospital, purchased services and goods from NuERA and other companies represented by Gonzales" (FAC , ¶ 48). This is merely parroting legal elements. There is no factual support (*e.g.*, who [patients], what [information about referrals/information or knowledge of governmental claims], where [where the agreement took place], and when (dates)). Nor could there be factual support, since Relator is a pure outsider with no knowledge. The allegation that Gonzales "was often in the operating room" fairs no better. (FAC, ¶ 49). Even if true, this does not plead Gonzales or NuERA had specific intent to defraud or any agreement to get false claims paid, **which is required**. *United States ex rel. Integra Med Analytics, LLC v Creative Sols. in Healthcare, Inc.*, SA-17-CV-1249-XR, 2019 WL 5970283, at *12 (W.D. Tex. Nov. 13, 2019) ("knowledge is insufficient for a conspiracy…Relator has pleaded no fact…showing…specific intent to defraud the Government").

Like *Integra*, Relator pleads no fact showing specific intent to defraud the Government by Moving Defendants (or anyone else) to get false claims paid or to make any false statements or

submit any false statements to anyone. So the FCA and TMFPA[14] conspiracy claims must be dismissed.

## V.         RELATOR DID NOT PLEAD TMFPA CLAIMS[15]

Relator's opposition fails to show that he plead TMFPA claims under Sections 36.002(1), 36.002(4)(B), and 36.002(9). Neither the FAC nor the opposition alerts the Court as to the basis to assert TMFPA applies to the plead conduct "in its own right' (Opp., p. 21). The State of Texas's statement of interest (Dkt. 35, "**SOI**"), likewise, does not assert that the TMFPA should apply based on the pleadings by Relator – rather, it asserts that the TMFPA has different language and different potentials for liability, objecting to all motions to dismiss and to Moving Defendants' citation to *United States v Dental Health Programs, Inc.*, 3:18-CV-00463-E, 2020 WL 3064712, at *7 (N.D. Tex. June 8, 2020).

While the SOI is correct that the TMFPA has different language, and may cover broader scenarios in certain cases, given the facts pleaded by Relator, the "analogous" parts (or what the State of Texas calls the "similarities") (SOI, p. 2), predominate. The SOI argues that Moving Defendants focus on the absence of claims -- this is an "analogous" or similar part of the statute that requires dismissal. In *Dental Health Programs, Inc.,* the State of Texas also filed a similar Statement of Interest, urging the Court to interpret the TMFPA separately from the FCA, given the textual differences. 2020 WL 3064712, at *7 (N.D. Tex. June 8, 2020). The *Dental Health* court explained some of the pertinent difference in the TMFPA statute (as compared to the FCA), none of which apply here. For example, *Dental Health* stated,  that "only claims under subsection (1) explicitly require the element of materiality…[a]nd, subject to a few exceptions, the TMFPA does not expressly require ***payment of a claim*** for any of the unlawful acts alleged" and "may reach a broader range of false/fraudulent conduct closely tied to the **Medicaid claim submission process**" *Id.; see also United States v Catholic Health Initiatives*, 312 F Supp 3d 584,

---

[14] TMPA is discussed in detail below in **Section V**.

[15] This includes TMFPA conspiracy (based on fraud), which is not plead with particularity.

607 (S.D. Tex. 2018) ("TMFPA prohibits false or misrepresentative statements made to obtain payments under the Medicaid program, but it does not require the presentment of a particular false claim to be identified.")

Moving Defendants did not make a materiality argument. They argued that **none** of the required facts were pleaded. The Moving Brief **argued that Relator did not plead** liability under the "analogous"/similar parts of the TMFPA (submission of claim) because the same allegations made for FCA claims are the same as the TMFPA.(Mov. Br., p. 20). Relator admits this—he argues that because he plead Stark Law, AKS, and FCA claims, he *de facto* has plead TMFPA claims. (Opp., p. 21). But the Moving Brief also argues absence of facts to meet any of the other TMFPA's "plain language" requirements. (SOI, p. 4). Moving Defendants argued that Relator did not particularize facts to support that Moving Defendants submitted or caused actual false claims, participated in any Stark Law or AKS scheme, acted with scienter,[16] made any **false statement or misrepresentations** (*e.g.*, TMFPA § 36.002(4)(B)), made or received any **improper charges/gifts/donations** (*e.g.*, TMFPA § 36.002(5)), nor plead reliable indicia that **any false claim or statement** was made or caused to be submitted by the Moving Defendants. (Mov. Br., p. 20). As explained in *Dental Health Programs, Inc.*, false statements, misrepresentations, concealment, or nondisclosure must "**permit[ ] a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized.**" TEX. HUM. RES. § 36.002(1), (2). *Id.* While a benefit could be obtained in various ways, the FAC focuses on claims *and identifies no other facts or specific fraudulent statements* to Medicaid, or conduct attributable to a Moving Defendants, or anything improper that Moving Defendants are alleged to have done to get Medicaid benefits (via claim, statement, or otherwise). Dismissal of the TMFPA claims are required.

---

[16] Again, the scienter requirements under the TMFPA are essentially the same as the FCA (Mov. Br. p. 20) (e.g., "know[ing]," "conscious indifference," or "reckless disregard." Tex. Hum. Res. § 36.0011(a)(1)-(3)). **Relator has not plead any facts to support a TMFPA claim, let alone that Moving Defendants acted with scienter.**

In a footnote, buried on the last page, Relator admits this is true, stating that "in the interest of transparency, Plaintiffs would inform the Court that they do intend to amend their complaint to add causes of action under Sections 36.002(5) and 36.002(13)," and that they did not assert a "cause of action under Section 36.002(5)" (Opp., p. 22, fn. 6). Relator again parrots statutory requirements, but identifies no dates, no times, no referrals, no patients, the amount or type of alleged "additional consideration," and no differentiation between Medicare and Medicaid – NO FACTS for why they should be allowed to amend their pleadings. The TMFPA claim must be dismissed, without leave to amend. In the alternative, as the Federal claims must be dismissed, the Court should decline supplemental jurisdiction.

## VI.    SCIENTER, CERTIFICATION, PRESENTMENT AND CAUSATION

Relator argues he plead FCA scienter[17] in FAC Paragraphs 64, 69, and 72. Paragraph 64 states:

> Defendants were aware that HMC agreed to and did pay NuERA (and other companies) for goods used in surgeries performed by Dr. Six. Therefore, Defendants had knowledge of the "compensation arrangement"…that existed between HMC and NuERA/Gonzales because of Dr. Six's patient referrals to HMC and supply acquisition referrals to NuERA and companies represented by Gonzales/NuERA.

(FAC, ¶ 64).

Paragraph 64 is a conclusory claim that **all** Defendants were aware of buying and selling goods and payment for same, with no facts to show Moving Defendants "knowingly," or deliberately or recklessly submitted/ignored false claims or caused false claims to be submitted **or made false statement**s based on/related to an improper referral. Similarly, Paragraph 66 is a sweeping legal conclusion that **all** claims submitted by "**any** Defendant" were improper. Paragraph 69 is a conclusory claim that "all Defendants were aware of each other's activities" and then a sweeping unsupported legal conclusion that there was a "conspiracy" and "joint and severa[l] liab[ility]" under the FCA. (Dkt. 18, ¶ 69). Similarly, Paragraph 72 conclusorily alleges "because Defendants were all aware of each other's activities" and then an unadorned legal

---

[17] The scienter requirements under the TMFPA is essentially the same as the FCA. *supra.* Fn. 14.

conclusion about "conspiracy" and "joint and severa[l] liab[ility]" under the TMFPA. *Id.* at ¶ 72). Plain and simple, these are legal conclusions. Dismissal is required because the allegations lump all defendants together without specific facts to support individual scienter for any defendant, much less Moving Defendants.

Relator cites *Grubbs* for the proposition that they need only allege facts the "render[] an inference of scienter at least as likely as any plausible opposing inference." (Opp., p. 6). This is misleading. *Grubbs* cites *Tellabs, Inc. v Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324, 127 S Ct 2499, 2510, 168 L Ed 2d 179 (2007), which stated, "the inference of scienter *must be more than merely* reasonable or permissible—*it must be cogent and compelling, thus strong in light of other explanations*...." *Id.* (emphasis added). *Grubbs*, for other reasons noted above, devastates Relator's FAC. Moreover, *Grubbs* pre-dates *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 192, 195 L. Ed. 2d 348 (2016) ("***Escobar***"), which heightened FCA pleading standards. Relator does not address *Escobar's* "rigorous" scienter pleading standard, requiring facts to show how the defendant knew or acted in deliberate ignorance of or with reckless disregard for the truth or falsity of the claim. (Mov. Br., pp. 17-18); *United States ex rel. Briseno v. Hillcroft Med. Clinic Assn.*, 4:20-CV-02871, 2022 WL 17417178, at *4 (S.D. Tex. Dec. 5, 2022), report and recommendation adopted, 4:20-CV-02871, 2022 WL 17834209 (S.D. Tex. Dec. 21, 2022) (citing the *Escobar* "rigorous" standard, and dismissing because the court could not "surmise how [defendant] learned that Hillcroft knowingly submitted false claims," and citing *Grubbs* which stated that "the Hospital may *have been __inadvertently__ and in the normal course of business processing the [false] claims of services...We have no basis for inferring otherwise.")* (emphasis added); *see also U.S. ex rel. Wall v. Vista Hospice Care, In*c., 778 F. Supp. 2d 709, 716 (N.D. Tex. 2011) (finding relator did satisfy 9(b) because the complaint did not specify that the persons perpetuating the alleged fraud acted with the requisite intent").

Here, as it relates to Moving Defendants, Relator alleges nothing more than speculation which a stranger could guess and legal behavior, (*i.e.*, HMC bought and paid for equipment from Moving Defendants – Gonzales is Dr. Six's Son in law). There are no facts plead to show how a

Moving Defendant knew, or deliberately/recklessly disregarded false claims by their own person/entity (NuEra/Gonzales) or caused false submissions by others. Like *Briseno,* and *Grubbs,* nothing is plead to allow the court to "infer" anything other than legal sales of surgical equipment. The FAC has no facts to show Moving Defendants were even in a position to know about any violation, falsity, or processing false claims. Thus, the FAC must be dismissed for failure to plead scienter.

As argued in the Moving Brief, falsity (factual or legal falsity) is a key element of an FCA claim. (Mov. Br., p. 15). Relator is apparently attempting to plead "legally false" claims - thus he must plead that Moving Defendants made an "express false certification…which is predicated upon outright misrepresentations made to the Government on a…claim…" (*Id. citing United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*, 1:21-CV-00008, 2023 WL 2744394, at *11 (E.D. Tex. Mar. 31, 2023)) or an "[i]mplied false certification" which occurs when a claim submitted to the United States, "does not merely request payment, but also makes specific representations about the goods or services provided; and…the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." (*Id.*). Similarly, Relator did not plead a key element of an FCA presentment claim – that Moving Defendants presented a claim to the government. (Mov. Br., p. 16). [18]

Relator's sole argument that he plead certification and presentment is a citation to FAC Paragraph 66 (Opp. p. 9), which cites the *Parikh* case for the proposition that "[every Medicare, Medicaid, and Tricare claim submitted for reimbursement to the USG or TSG that violates the Stark Law constitutes a false claim under the FCA." (Dkt. 18, ¶ 66). Paragraph 66 has no facts showing that Moving Defendants expressly or impliedly certified compliance with the AKS,

---

[18] A relator seeking to plead an FCA claim must alleged that the Defendant either "presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B). Conspiracy claims under 31 USCA § 3729(a)(1)(A)-(B) 31 U.S.C. § 3729(a)(1)(C) are discussed above in Section IV.

Stark Law or any other statute, rule, or regulation, which is required to plead the element of falsity under the FCA. (Mov. Br., p. 15) (citing *United States ex rel. Jackson*). Relator has not pointed to any facts showing Moving Defendants signed or submitted any certification to the government, presented any bills to Medicare or Medicaid/the government, or made/used any statement/record or submitted anything to the government. Throughout the Opposition, Relator conflates direct claims (presented or caused a claim, makes/used a statement/record) and conspiracy claims. Statutory elements must be plead for each Moving Defendants, or conspiracy must be plead. Relator did neither and did not plead express/implied certification or presentment/statements/records and the ***direct*** FCA claims against Moving Defendants must be dismissed.

Finally, Relator does not, at all, address Moving Defendants' argument that "Causation under the FCA requires proximate cause, not merely 'but for' cause," nor Moving Defendants' case law citations. (Mov. Br., p. 17) (citing *Grubbs* and U.S. ex rel. B*ennett v. Medtronic, Inc.*, 747 F Supp 2d 745, 784 (S.D. Tex. 2010) (the complaint did not "sufficiently allege that by promoting off-label use, Medtronic caused the submission of false claims…"). Relator's opposition cites to FAC Paragraph 69, arguing he plead causation. (Opp., p. 9). But, again this Paragraph makes a conclusory legal conclusion about all Defendants being aware of each others activities and "conspiracy to present false claim" (Dkt. 18, ¶ 69). The FAC merely pleads Moving Defendants sell surgical supplies and Gonzales was present on some unknown date in the operating room. Nothing contained in the FAC (including Paragraph 69) creates even a plausible inference that Moving Defendants proximately caused a false claim to the government. All FCA claims must be dismissed.

## VII.    CONCLUSION

The FAC should be dismissed (with prejudice) for failure to state a claim and failure to meet the heightened pleading standard for fraud. Relator mentions amendment on two pages, (Opp., p. 16 and p. 22, fn. 6), without a motion, without a sample complaint, and without alerting this

Court to new facts to show the amendment would be viable. *See, e.g., Castillo v. Boston Sci. Corp.,* 7:20-CV-00123, 2021 WL 3630001, at *2 (S.D. Tex. Jan. 19, 2021) (discussing denying request to amend in a brief, where "Plaintiff provides no basis or detail for the…amendment and fails to apprise the Court of what additional facts Plaintiff would provide in an amended complaint'). As the Opposition does not advise the Court which facts would be added, and seeks a "third bite of the apple," dismissal of all claims should be with prejudice.

**Respectfully submitted on September 20, 2023.**

> *Clinton Mikel /s/* _____
> Clinton Mikel
> The Health Law Partners, P.C.
> Attorney in Charge for Defendants
> Michael Gonzales and NuEra Medical L.L.C.
> State Bar No. 24133667
> Federal ID No. 3841067
> 32000 Northwestern, #240
> Farmington Hills, MI 48334
> Telephone no. (248) 996-8510
> Telecopy No. (248) 996-8525
> Email: cmikel@thehlp.com
> **Attorney for Defendants Michael Gonzales**
> **NuERA Medical L.L.C.**

## CERTIFICATE OF SERVICE

I certify that on September 20, 2023, I electronically filed the foregoing using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

> *Clinton Mikel /s/* _____
> Clinton Mikel