United States District Court
Southern District of Texas

**ENTERED**

November 09, 2023

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA AND | § | |
| STATE OF TEXAS *ex rel.* DR. JOSÉ G. DONES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:21-CV-181 |
| | § | |
| HARLINGEN MEDICAL CENTER, *et al.*, | § | |
| | § | |
| Defendants. | | |

## ORDER AND OPINION

Relator Dr. José G. Dones filed a *qui tam* petition on behalf of the United States of America and the State of Texas, alleging an unlawful scheme between Defendants Harlingen Medical Center (HMC), Dr. Eric Six, Valley Neurosurgeons, P.L.L.C. (VN), Michael Gonzales, NuERA Medical, L.L.C., and Prime Healthcare Services, Inc. (PHS).  In essence, Dr. Dones alleges that the Defendants agreed that HMC would purchase surgical equipment and supplies from NuERA for use in the spinal surgeries that Dr. Six performed at the hospital.

All Defendants move for dismissal of Dr. Dones's causes of action for failure to state a claim upon which relief can be granted.  (Gonzales & NuERA Mot., Doc. 29; HMC & PHS Mot., Doc. 30; Dr. Six & VN Mot., Doc. 31)  Based on the record and applicable law, the Court concludes that even after accepting the well-pleaded allegations as true, they do not present viable causes of action under federal law against any of the Defendants.  In addition, the Court declines to exercise supplemental jurisdiction over the remaining claims based on Texas law.

1

I.     **Allegations and Procedural History**

   A.  **Factual Allegations**[1]

   Dr. Six practices medicine as a neurosurgeon and is the "owner and sole member" of Valley Neurosurgeons P.L.L.C.[2] (First Am. Compl., Doc. 18, ¶¶ 6, 45–46)  When Dr. Six performs surgeries, the hospital where the surgery occurs benefits financially.  As a result, "[t]he more surgeries Dr. Six performs at HMC, the more money HMC and PHS make." (*Id.* at ¶ 46)

   At an unidentified point in time,[3] Dr. Six asked an unidentified HMC representative "to purchase services and supplies, including expensive surgical hardware, from NuERA and other companies represented by Gonzales . . . each time Dr. Six performed a surgery at HMC." (*Id.* at ¶ 47)  Gonzales is Dr. Six's son-in-law, and he and his wife own NuERA, a medical supply company, as community property. (*Id.* at ¶¶ 47, 52)

   An unidentified representative of HMC "agreed to Dr. Six's request and, to reward him for performing his surgeries at HMC rather than a competing hospital, purchased services and goods from NuERA and other companies represented by Gonzales . . . each time that Dr. Six performed a surgery." (*Id.* at ¶ 48)  HMC paid "NuERA (and companies such as Xtant/Xspine that paid a commission to Gonzales and/or NuERA) for goods used in surgeries performed by Dr. Six." (*Id.* at ¶ 64)  Gonzales "was often in the operating room at the same time as Dr. Six during these surgeries", although Dr. Dones does not allege that any patient or insurance provider was charged extra for Gonzales's presence. (*Id.* at ¶¶ 48–49)

   Since 2012, Dr. Six has performed surgeries "exclusively or almost exclusively" at HMC. (*Id.* at ¶¶ 55, 57)  Dr. Dones alleges on information and belief that HMC has not purchased goods

---

[1] When deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022) (cleaned up).  But a court does not accept as true any "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Singh v. RadioShack Corp.*, 882 F.3d 137, 144 (5th Cir. 2018).

[2] Dr. Dones has not alleged that VN engaged in any independent acts of wrongdoing apart from Dr. Six's conduct.  Thus, references to Dr. Six also encompass VN.

[3] Dr. Dones alleges only that the alleged scheme arose no later than 2012, and he makes this allegation "on information and belief." (*Id.* at ¶ 55)

and services from NuERA when surgeons other than Dr. Six have performed surgeries at the hospital. (*Id.* at ¶ 51)

Since at least 2012, "every bill that Dr. Six, HMC, either, or both has submitted to the [United States] or [Texas] for reimbursement for medical supplies, physician services, or hospital services used during or related to the surgeries that Dr. Six has performed at HMC" violated the law.  (*Id.* at ¶ 53)  Unidentified "employees of PHS . . . were aware of" the alleged scheme, "but took no action because PHS was profiting from the surgeries." (*Id.* at ¶ 54)

### B. Procedural History

On November 17, 2021, Dr. Dones filed a *qui tam* Complaint, alleging that the Defendants violated the False Claims Act and conspired to do so.  Dr. Dones premises his FCA claim on the Defendants' alleged violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and the Physician Self-Referral Law, 42 U.S.C. § 1395nn (commonly referred to as the "Stark Law").  In addition, Dr. Dones advances causes of action for alleged violations of the Texas Medicaid Fraud Prevention Act, TEX. HUM. RES. CODE § 36.001, *et seq.*, and the Defendants' alleged conspiracy to violate that state law.

As is required in *qui tam* cases, the Complaint remained under seal while the United States and the State of Texas investigated the allegations to determine if either governmental entity wished to intervene in the case. (Sealing Order, Doc. 2)  Over a year later, in January 2023, both the United States and Texas declined to intervene. (U.S. Notice, Doc. 13; Texas Notice, Doc. 14)[4] The Court then unsealed the Complaint, which Dr. Dones served on the Defendants. (Unsealing Order, Doc. 15)

In March 2023, Dr. Dones filed his First Amended Complaint (Doc. 18).

---

[4] The United States may still intervene in the case "upon a showing of good cause." 31 U.S.C. § 3730(c)(3).  If the United States intervened, it could dismiss the case over the Relator's objection. *U.S., ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 438 (2023) (applying Federal Rule of Civil Procedure 41).

Each of the Defendants has moved to dismiss Dr. Dones's causes of action. (Gonzales & NuERA Motion, Doc. 29; HMC & PHS Motion, Doc. 30; Dr. Six & VN Motion, Doc. 31)  After Dr. Dones filed an omnibus Response (Doc. 36), the Defendants filed their respective reply briefs. (Gonzales & NuERA Reply, Doc. 39; HMC & PHS Reply, Doc. 38; Dr. Six & VN Reply, Doc. 40)

On September 26, the Court heard oral argument on the Motions.  At the hearing, Dr. Dones acknowledged that even if the Court granted him leave to amend his First Amended Complaint, he would add no new factual allegations.  Dr. Dones also conceded that if the Court judicially noticed the corporate structure of HMC, he would not have any viable claims against PHS.

## II.     Standard of Review

In order to survive a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6), a complaint must "include sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Henley v. Biloxi H.M.A., L.L.C.*, 48 F.4th 350, 353 (5th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The well-pled facts "must make relief plausible, not merely conceivable." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then dismissal is proper. *Iqbal*, 556 U.S. at 679.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*,

938 F.3d 724, 735 (5th Cir. 2019).  Courts construe all well-pled facts in the light most favorable to the plaintiff. *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020).

"A dismissal with prejudice for failure to state a claim is a decision on the merits and essentially ends the plaintiff's lawsuit." *Forby v. One Techs., L.P.*, 909 F.3d 780, 784 (5th Cir. 2018).

## III.   Analysis

Through their respective motions, each Defendant contends that the heightened pleading standard under Federal Rule of Civil Procedure 9(b) applies to Dr. Dones's federal claims, and that his First Amended Complaint falls short of this standard.  In addition, they commonly argue that Dr. Dones's allegations do not present violations of the Anti-Kickback Statute, the Stark Law, or the TMFPA.

Some Defendants also advance individual defenses.  PHS contends that it is not HMC's general partner and, as a result, cannot be held liable for any alleged misconduct by HMC. (HMC & PHS Motion, Doc. 30–1, 11-13; HMC & PHS Reply, Doc. 38, 9–10)  Gonzales and NuERA argue that Dr. Dones cannot sue them based on alleged violations of the Stark Law because that statute only permits actions against physicians and entities that provide designated health services, and they are neither. (Gonzales & NuERA Motion, Doc. 29, 8)

The Court first addresses whether Dr. Dones has adequately pled a FCA conspiracy claim before turning to whether he has pled a valid FCA claim against any individual defendant.

### A.   Conspiracy

Dr. Dones alleges that the Defendants conspired to violate the False Claims Act.  His allegations, however, do not adequately plead such a claim.

"General civil conspiracy principles apply to conspiracy claims under the False Claims Act." *U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 509 (S.D. Tex. 2003), *aff'd*, 111 F. App'x 296 (5th Cir. 2004).  Under these principles, Dr. Dones must allege facts tending

5

to show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the government] and (2) at least one act performed in furtherance of that agreement." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008).  The alleged facts must demonstrate that the defendants "shared a specific intent" to defraud the government, as opposed to mere negligence. *Id.*  "A plaintiff alleging a conspiracy to commit fraud must plead with particularity the conspiracy as well as the overt acts taken in furtherance of the conspiracy." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (cleaned up).  And the "particularity requirements of Rule 9(b) apply to the False Claims Act's conspiracy provision with equal force as to its 'presentment' and 'record' provisions." *Id.*  If a plaintiff adequately pleads a conspiracy claim under the FCA, the plaintiff can hold every member of the conspiracy jointly and severally liable for the illegal acts undertaken by the conspiracy. *United States ex rel. Drummond v. BestCare Lab'y Servs., L.L.C.*, 950 F.3d 277, 285 (5th Cir. 2020).

Dr. Dones's allegations, viewed in the light most favorable to him, do not satisfy these principles.  The generality of Dr. Dones's allegations proves fatal.  At most, he alleges that at some point no later than 2012, Dr. Six asked an unidentified HMC representative "to purchase services and supplies, including expensive surgical hardware, from NuERA and other companies represented by Gonzales . . . each time Dr. Six performed a surgery at HMC." (First Am. Compl., Doc. 18, ¶ 47)  An unidentified representative of HMC—and the allegations do not make clear whether this representative is the same person to whom Dr. Six proposed the arrangement— "agreed to Dr. Six's request and, to reward him for performing his surgeries at HMC rather than a competing hospital, purchased services and goods from NuERA and other companies represented by Gonzales . . . each time that Dr. Six performed a surgery." (*Id.* at ¶ 48)

These allegations do not establish a plausible conspiracy.  At most, Dr. Dones has described a possible agreement that he believes occurred.  But he fails to allege when the

agreement took place (aside from the no-later-than date of 2012, which is made on information and belief), the participants to the agreements (apart from Dr. Six), or the manner in which the agreement occurred–e.g., via e-mail, an in-person meeting, telephone calls.  The law does not require exacting detail of the particulars, but Dr. Dones must do more than simply plead that at some point in the past, Dr. Six entered into an amorphous agreement with unknown representatives of HMC.  For example, in *Grubbs*, the Fifth Circuit found adequate the relator's allegations describing a specific dinner meeting at which the named participants presented an alleged scheme to the relator. *Grubbs*, at 185.  Even with this level of detail, the Fifth Circuit affirmed dismissal of the conspiracy claim as to the hospital and defendant doctors who did not attend the dinner meeting.  *Id.* at 194; *see also United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response*, Inc., 865 F.3d 71, 76 (2d Cir. 2017) (finding that a relator stated a plausible claim by alleging the details of his supervisors admitting to him that they falsely revised patient care reports so that the reports would qualify for Medicare reimbursement).  In the current matter, Dr. Dones's First Amended Complaint does not contain the specificity presented in *Grubbs*.  And he identifies no authority in which a court has allowed a conspiracy claim to proceed to discovery based on the same level of generality as his own allegations.  On the contrary, courts considering allegations similarly generic to Dr. Dones's have concluded that the relator failed to establish a viable conspiracy claim. *See, e.g., United States v. Marlin Med. Sols. LLC*, 579 F. Supp. 3d 876, 891 (W.D. Tex. 2022) (dismissing a conspiracy claim despite the Government alleging that "Niemeyer entered into an agreement with Marlin Medical in which he would receive remunerations in exchange for attending events in San Antonio, issuing prescriptions for compounded pain and scar creams, and submitting them to Medscript"); *U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 548 (N.D. Tex. 2010) (dismissing conspiracy claim when the relator pled only that "[e]ach of the three joint venture members [Defendants] has

violated the FCA, on some occasions, and has agreed to or acquiesced in violations by the other Defendant(s), on other occasions").

While Dr. Dones is not required to plead every detail of the scheme, he cannot base his complaint solely on speculations and general allegations of a possible agreement. His First Amended Complaint presents only his belief that an agreement possibly occurred, and generally describes what the agreement could have entailed, but it includes no factual allegations to render plausible that any defendant entered into such a conspiracy.

### B.  False Claims Act

Dr. Dones also alleges that each Defendant independently violated the FCA by engaging in conduct prohibited by the Anti-Kickback Statute and the Stark Law.

The FCA holds liable any individual who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval". 31 U.S.C. § 3729(a)(1)(A). Similarly, the statute also applies to any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim". *Id*. at § 3729(a)(1)(B). "An FCA claim consists of four elements: (1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 324 (5th Cir. 2017) (internal quotation marks omitted).

Rule 9(b)'s heightened pleading standard applies to claims under the FCA. *Grubbs*, 565 F.3d at 185. When alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). The complaint "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir.

2023) (internal quotation marks omitted).  "If the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief. However, this luxury must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Burback v. Brock*, No. 22-40609, 2023 WL 4532803, at *3 (5th Cir. July 13, 2023) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003).

In short, an FCA claim requires a false statement or course of conduct, the requisite scienter, materiality, and presentment.  And the relator must meet Rule 9(b)'s heightened pleading standard to establish these elements.  In the present case, all Defendants challenge the sufficiency of Dr. Dones's allegations with respect to a false statement or course of conduct, scienter, and presentment.[5]  The Court addresses each of these challenged elements in turn.  And after applying the controlling caselaw to Dr. Dones's allegations, the Court concludes that his FCA claim fails on multiple grounds.

### 1.  False Statement or Course of Conduct

A FCA claim requires that the relator allege a false statement or fraudulent course of conduct. *King*, 871 F.3d at 324.  Dr. Dones proceeds under a certification theory, which applies when "the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation", and a defendant submits a claim that "falsely certifies compliance with that statute or regulation." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997).

In the complaint, Dr. Dones alleges that the submitted requests did not comply with the AKS and the Stark Law.  As a result, his allegations must present a viable claim that the

---

[5] No defendant challenges the materiality element in its motion to dismiss.

Defendants violated those statutes.  If the First Amended Complaint fails to do so, then Dr. Dones cannot prove that any Defendant submitted a false or fraudulent claim to the federal government. The Court will address each statute in turn.

### a.   Anti-Kickback Statute

The Anti-Kickback Statute criminalizes the solicitation or receiving of remuneration, whether direct or indirect, if given "in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(1).  The statute also criminalizes the offer or payment of remuneration in return for such referrals.

Dr. Dones argues that his First Amended Complaint, properly construed, alleges that Dr. Six violated the AKS by proposing to refer patients to HMC in exchange for the hospital purchasing surgical equipment and supplies from Gonzales's company, NuERA.  Under this theory, HMC also violated the AKS by agreeing to and purchasing equipment and supplies from NuERA to induce Dr. Six to refer surgery patients to the hospital.  The Defendants attack these allegations on multiple grounds.

### i. No Remuneration to Dr. Six

The Defendants contend that Dr. Dones fails to allege that Dr. Six solicited remuneration for himself, or that HMC paid remuneration to him as part of the alleged scheme.  They argue that absent such remuneration to Dr. Six, the alleged scheme could not violate the AKS.

The AKS encompasses remuneration that flows "directly or indirectly, overtly or covertly, in cash or in kind". 42 U.S.C. § 1320a-7b(b)(1).  Thus, the AKS does not require that a hospital pay remuneration directly to the individual who makes a referral.  For example, in one case, a hospital administrator entered into an agreement through which a community educator would refer patients to the hospital, which in turn would "make its payments to her through her son" in exchange for the referrals. *See U.S. v. McCardell*, 750 Fed. App'x 314, 316 (5th Cir. 2018).  The

arrangement represented indirect remuneration to the community educator as the referring agent, in violation of the AKS.

At the same time, the AKS requires that the payer intend the remuneration to reach the referring individual, so as to induce that individual to make the referral.  The statute's text renders this requirement clear.  Sub-part one of § 1320a-7b(b) applies to "whoever knowingly and willfully solicits or receives any remuneration . . . in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program". 42 U.S.C. § 1320a-7b(b)(1)(A).  The ordinary meaning of the text indicates that the person making the referral or purchase is the same individual who solicits or receives remuneration.  Sub-part two of the statute covers defendants who offer or pay any remuneration "to any person to induce *such person*" to make a referral or a covered purchase. *Id*. at § 1320a-7b(b)(2)(emphasis added).  The ordinary meaning of the quoted phrase requires that the person receiving the payment be the same person making the referral or covered purchase.  Again, as with sub-part one, the payer must make the payment, either directly or indirectly, to the person who made the referral or purchase.

Dr. Dones correctly points out that "the AKS does not require that [ ] the solicitor of remuneration be the recipient of remuneration." (Response, Doc. 36, 18)  This statement aligns with schemes such as in *McCardell*, where the hospital made the payment to the community educator "through" checks issued to her son.  But Dr. Dones then improperly stretches this principle to contend that "the AKS facially applies even when the solicitation is made by one party with the intention that a third party will be the beneficiary of the verboten scheme." (Response, Doc. 36, 18)  The statute's language does not reach that far.  In essence, Dr. Dones argues that Dr. Six would violate the AKS by asking HMC to pay remuneration to a third party in exchange for Dr. Six making referrals to HMC, with the understanding that Dr. Six would never benefit from that remuneration.  The law makes clear that such an arrangement would not violate the AKS.

11

And Dr. Dones acknowledges that he presents such an alleged scheme in his First Amended Complaint: "Here, Six is alleged to have solicited purchases by HMC from NuERA in exchange for referring patients to HMC, and NuERA is alleged to have received payments for such purchase." (Response, Doc. 36, 18)  In presenting this summary of his own allegations, Dr. Dones properly construes his own First Amended Complaint.  And this construction fails to present a viable claim under the AKS.[6]

### ii. No Intended or Actual Inducement

The Defendants also argue that Dr. Dones fails to allege that HMC paid or was requested to pay remuneration to induce Dr. Six to make referrals to the hospital, or that any inducement actually occurred. (HMC & PHS Motion, Doc. 30–1, 21; Dr. Six & VN Motion, Doc. 31, 5–6; Gonzales & NuERA Motion, Doc. 29, 19)  Under the AKS, "[t]he payer must 'knowingly and willfully' offer or make a payment *to induce* the recipient either 'to refer an individual to a person' for the provision of a covered healthcare good or service under subsection (A), or 'to purchase, lease, order, or arrange for or recommend' procuring a covered healthcare good or service under subsection (B)." *United States v. Shoemaker*, 746 F.3d 614, 627 (5th Cir. 2014) (emphasis added); *see also United States v. Cooper*, 38 F.4th 428, 433 (5th Cir. 2022) (describing one permutation of the law as, "when A pays B *to induce B* to refer C to order a prescription from D, A commits a felony" (emphasis added)).  When presenting a FCA claim based on a violation of the AKS, the relator must provide specific allegations regarding the alleged agreement, actual inducements, and improper referrals.  "[S]weeping and conclusory allegations of 'verbal agreements' . . . without a shred of detail or particularity" are insufficient. *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 Fed. App'x 890, 894 (5th Cir. 2013).

---

[6] The First Amended Complaint also contains no allegation that Gonzales or NuERA provided any form of remuneration to Dr. Six.  In other words, Dr. Dones's allegations do not present a scheme in which HMC paid remuneration to Dr. Six, but did so through Gonzales or NuERA.  At most, Dr. Dones alleges that HMC paid remuneration to Dr. Six's son-law-law, through NuERA.  But unlike the Stark Law, the AKS contains no statutory language concerning remuneration paid to family members.

In the present case, upon review of the First Amended Complaint, the Court agrees that Dr. Dones fails to satisfy this element of an AKS claim. At most, Dr. Dones presents only conclusory statements as to inducement. He titles the AKS section in his pleading as, "HMC confers improper benefits upon Dr. Six and his family in exchange for Dr. Six's patient referrals". (First Am. Compl., Doc. 18, 13) Within that section, he alleges that HMC violated the AKS "by conferring an improper and illegal benefit upon Dr. Six and his family to induce [Dr. Six] to provide services at its facility and to maintain the doctor's exclusivity or near exclusivity." (*Id.* at ¶ 57) But apart from these generic statements, Dr. Dones alleges no specific facts regarding Dr. Six actually referring a patient to HMC, or of any party knowingly soliciting the payment of or agreeing to pay remuneration for any form of referral. In *Nunnally*, the Fifth Circuit affirmed the dismissal of the relator's AKS claim because the complaint contained "no information on the contents of [the alleged] agreements, the identity of any physicians, actual inducements, or improper referrals." *Nunnally*, 519 Fed. App'x at 894. As to actual inducement, the Fifth Circuit noted that the relator's complaint "failed to allege any particular details of any actual referrals or even to offer a time period more distinguishing than since approximately 1992 and continuing to date." *Id.* at 894 (cleaned up). Dr. Dones's allegations resemble the allegations involved in *Nunnally*, and in certain respects fall even short of those deficient allegations, as the relator in that case alleged at least one "example" of specific charges for blood tests. *See id.* Dr. Dones's First Amended Complaint offers no such specifics. Thus, his allegations fail to allege actual inducement with sufficient specificity.

Given that Dr. Dones does not present a viable claim that any Defendant violated the AKS, his FCA claim cannot be premised on that statute.

### b. Stark Law

Dr. Dones also alleges that the Defendants presented a false or fraudulent statement by submitting requests to the federal government that violated the Stark Law, 42 U.S.C. § 1395nn.

Congress enacted the Stark Law "to address overutilization of services by physicians who stood to profit from referring patients to facilities or entities in which they had a financial interest." *U.S. ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 394, 397 (4th Cir. 2012). A physician may not refer a patient to an entity "for the furnishing of designated health services" if the physician–or an immediate family member–possesses a financial relationship with that entity. 42 U.S.C. § 1395nn(a)(1). Under applicable federal regulations, immediate family members include, *inter alia*, spouses, children, and children-in-law. 42 C.F.R. § 411.351. A financial relationship includes either an ownership interest in or a compensation agreement with the entity. *Id.* at §§ 1395nn(a)(2)(A)-(B). The statute also defines a compensation arrangement as "any arrangement involving any remuneration" between the entity and the physician (or the physician's immediate family member), with the remuneration paid "directly or indirectly, overtly or covertly, in cash or in kind." *Id.* at §§ 1395nn(h)(1)(A), (B).

The Defendants challenge Dr. Dones's reliance on alleged Stark Law violations to support his FCA claim.

### i.   HMC's Knowledge

Dr. Dones contends that in his First Amended Complaint, he alleges that HMC agreed to purchase surgical equipment and supplies from NuERA for use in the surgeries that Dr. Six conducted at HMC. Gonzales and his wife, who is Dr. Six's daughter, jointly own NuERA. Dr. Dones takes this undisputed fact to argue that Dr. Six cannot refer surgery patients to HMC because the hospital has a compensation agreement with Dr. Six's son-in-law, through NuERA.

A threshold question is whether such an alleged arrangement represents a direct or an indirect compensation agreement. "A direct compensation arrangement exists if remuneration passes between the referring physician (or a member of his or her immediate family) and the entity furnishing [designated health services] without any intervening persons or entities." 42 C.F.R. § 411.354(c). An indirect compensation agreement arises when an unbroken chain of

14

persons exists between the physician (or immediate family member) and the provider of designated health services, and the compensation within the chain varies based on the volume or value of referrals. 42 C.F.R. § 411.354(c)(2).

The Court finds that Dr. Dones alleges an indirect compensation arrangement.  The Court assumes, for purposes of the statutory analysis, that because Gonzales is Dr. Six's son-in-law, any remuneration to Gonzales would represent remuneration to Dr. Six. *See* 42 U.S.C. § 1395nn(a)(1); 42 C.F.R. § 411.351.  But even with this assumption, the alleged scheme does not qualify as a direct compensation agreement.  Dr. Dones does not allege that HMC made payments directly to Gonzales or Dr. Six.  Rather, the only plausible inference from Dr. Dones's allegations is that HMC purchased equipment and supplies from NuERA, which then paid Gonzales through salary and commissions.  Thus, any remuneration did not flow directly from HMC to Gonzales, but to NuERA, which stood between HMC and Gonzales.

To allege a viable cause of action under the Stark Law based on an indirect compensation agreement, Dr. Dones must plead that: (1) between Gonzales and HMC there existed an unbroken chain of persons or entities with a financial relationship in each other; (2) Gonzales received aggregate compensation from a person or entity within the chain "that varie[d] with the volume or value of referrals" that Dr. Six's referrals generated for HMC; and (3) the hospital had "actual knowledge of, or act[ed] in reckless disregard or deliberate ignorance of, the fact that" Gonzales received aggregate compensation that varied with the volume or value of the referrals or other business that Dr. Six generated. 42 C.F.R. § 411.354(c)(2).

Dr. Dones's allegations satisfy the first element, as he alleges an unbroken chain of entities between Gonzales and HMC.  In particular, Dr. Dones alleges that HMC purchased surgical equipment and supplies from NuERA, which Gonzales owns.  And those purchases established a financial relationship between the hospital and NuERA.

As to the second element, Dr. Dones has pled facts that permit the plausible inference that Gonzales's compensation varied with the volume of Dr. Six's referrals.  When determining whether a compensation agreement varies with the volume or value of referrals, a court looks to "the nonownership or noninvestment interest closest to the referring physician (or immediate family member)" within the chain.  42 C.F.R. § 411.354(c)(2)(ii)(C).  For example, "if a referring physician has an ownership interest in company A, which owns company B, which has a compensation arrangement with company C, which has a compensation arrangement with entity D that furnishes [designated health services]," then a court examines "the aggregate compensation between company B and company C" to determine if the compensation agreement varies with the volume or value of referrals. *Id*.  In the alleged scheme that Dr. Dones presents, Dr. Six was the referring physician.  His son-in-law held an ownership interest in NuERA, which entered into a compensation agreement with HMC, which furnished designated health services.  Thus, the Court looks at the aggregate compensation between HMC and NuERA.  Dr. Dones alleges that HMC purchased equipment and supplies from NuERA solely for the surgeries that Dr. Six performed at HMC. (First Am. Compl., Doc. 18, ¶¶ 48, 51)  This allegation leads to the plausible inference that NuERA's compensation varied by the number of referrals from Dr. Six. In essence, as Dr. Six increased his surgery referrals to HMC, the hospital purchased more equipment and supplies from NuERA, to the benefit of Gonzales, its owner.  Conversely, if Dr. Six ceased performing surgeries at HMC, the hospital would pay no remuneration to NuERA.

Dr. Dones, however, fails to allege sufficient facts demonstrating that HMC had actual knowledge of, or acted in reckless disregard or deliberate ignorance of, Gonzales's relationship with Dr. Six and the compensation received.  A corporation "operates through individuals," so the knowledge of a corporation must be attributable to an individual person. *F.D.I.C. v. Ernst & Young*, 967 F.2d 166, 171 (5th Cir. 1992).  To impute an employee's knowledge to a company, the employee must be "acting within the scope of his authority" and the knowledge must relate "to

16

matters within the scope of that authority." *In re Hellenic Inc.*, 252 F.3d 391, 395 (5th Cir. 2001). In the present matter, Dr. Dones simply pleads that HMC "knew that Gonzales was Dr. Six's son-in-law, and that it was a Stark Law violation for the hospital to purchase goods and services from NuERA and other companies represented by Gonzales (including Xspine/Xtant) in connection with surgeries performed by Dr. Six." (First Am. Compl., Doc. 18, 12)  Dr. Dones does not identify any HMC employee, agent or officer who allegedly knew about Gonzales's relationship with Dr. Six, much less the authority possessed by that person.  His blanket allegations do not permit the plausible inference that an HMC employee with the requisite authority knew about the facts underlying the alleged Stark Law violation.  And HMC's lack of knowledge breaks the requisite chain as to all Defendants.  As a result, Dr. Dones fails to adequately plead a cause of action under this statute.

### ii.  Gonzales & NuERA

Gonzales and NuERA also argue that based on their role in the alleged scheme, the Stark Law cannot apply to them.

The Stark Law covers physicians who make an improper referral and entities that provide designated health services ("DHS") and that receive the improper referral and then present a claim for services based on that referral. *See* 42 U.S.C. §§ 1395nn(a)(1)(A) (physicians), 1396nn(a)(1)(B) (entities).  "A person or entity is considered to be furnishing DHS if it – (i) Is the person or entity that has performed services that are billed as DHS; or (ii) Is the person or entity that has presented a claim to Medicare for the DHS." 42 C.F.R. § 411.351.  The statute defines designated health services broadly, capturing a wide array of services and supplies, such as for clinical laboratory, physical or occupational therapy, radiology, prosthetics, and inpatient and outpatient hospital services, among others.  42 U.S.C. § 1395nn(h)(6).

Gonzales and NuERA argue that neither is a physician nor an entity that provides designated health services, rendering them outside the application of the Stark Law. (Gonzales &

NuERA Motion, Doc. 29, 8)   Dr. Dones acknowledges that Gonzales and NuERA are not physicians, but he contends that they provide designated health services and, as a result, represent covered entities under the statute.  Based on his allegations, however, his argument fails.

Dr. Dones alleges only that "Gonzales was often in the operating room at the same time as Dr. Six during these surgeries." (First Am. Compl., Doc. 18, ¶ 49)  He makes no allegations suggesting that Gonzales or NuERA performed or billed for designated health services.  In his Response, he argues that they performed inpatient hospital services.  But he bases this argument on Dr. Six's statement in his Motion to Dismiss that "spine surgeons work closely with device representatives who accompany surgeons into the operating room and assist in the preparation of the trays of implant pieces." (Response, Doc. 36, 7 (quoting Dr. Six Motion, Doc. 31, 4))  The quoted statement, however, represents neither an allegation—the First Amended Complaint does not provide such detail—nor an admission by Gonzales or NuERA, who did not make the statement.  In any event, accompanying a surgeon into the operating room and preparing a tray of implant pieces does not constitute designated health services, even under the Stark Law's broad definition.  The Center for Medicare and Medicaid Services has unambiguously foreclosed such a position:

> We do not consider an entity that leases or sells space or equipment used for the performance of the service, or furnishes supplies that are not separately billable but used in the performance of the medical service, or that provides management, billing services, or personnel to the entity performing the service, to perform DHS.[7]

Dr. Dones provides no authority supporting his position that an equipment supplier arranging a tray in a surgery room performs designated health services under the statute.  He cites only a case that stands for the basic proposition that designated health services include both inpatient and outpatient services. (Response, Doc. 36, 7 (citing *United States ex rel. Thompson v.*

---

[7] Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2009 Rates; Payments for Graduate Medical Education in Certain Emergency Situations; Changes to Disclosure of Physician Ownership in Hospitals and Physician Self-Referral Rules; Updates to the Long-Term Care Prospective Payment System; Updates to Certain IPPS-Excluded Hospitals; and Collection of Information Regarding Financial Relationships Between Hospitals, 73 Fed. Reg. 48434-01.

18

*Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)))  But that case did not involve individuals or entities resembling a medical equipment provider such as NuERA and Gonzales.  As a result, NuERA and Gonzales are not proper defendants for any claim based on an alleged violation of the Stark Law.

### 2. Scienter

To pursue his FCA claim, Dr. Dones must also demonstrate that the Defendants acted with the requisite scienter to violate the statute.  The Defendants contend that Dr. Dones's well-pled allegations fail to satisfy this element. (Gonzales & NuERA Mot., Doc. 29, 20-21; HMC & PHS Mot., Doc. 30–1, 10; Dr. Six & VN Mot., Doc. 31, 6)

The FCA applies only when the defendants "knowingly" submitted a false claim to the government for payment.  31 U.S.C. § 3729(a)(1).  The "knowingly" element applies not simply to the act of presentment–i.e., the defendant knew presentment would or had occurred–but also to knowledge of the falsity of the submission.  The statute defines "knowingly" as acting with "actual knowledge of the information", "deliberate ignorance of the truth or falsity of the information", or "reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).  This standard renders a lie actionable, but does not reach an error. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  In other words, mere negligence, gross negligence, or mismanagement does not create liability. *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338–39 (5th Cir. 2008); *see also United States ex rel. Miniex v. Houston Hous. Auth., et al.*, No. 21-20435, 2023 WL 6174416, at *6 (5th Cir. Sept. 22, 2023) (affirming dismissal when the relator pled no facts demonstrating that the defendants knew that they were breaking contractual obligations or had acted with reckless disregard); *United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 636 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir.

2019) (affirming the dismissal of a FCA claim when no allegations indicated that the defendants knew they had acted wrongfully).

As to the AKS, Dr. Dones makes no allegation that any Defendant knew that the alleged scheme ran afoul of the AKS and, in turn, the FCA.  The First Amended Complaint contains ample allegations that the Defendants knowingly engaged in certain conduct. (*See, e.g.*, First Am. Compl., Doc. 18, ¶ 18 ("Defendants were all aware of each other's activities and coordinated their efforts in a seamless course of conduct that persisted for the greater part of a decade."))  But a difference exists between knowingly engaging in certain acts, and knowing that certain acts violate federal laws.  The allegations, accepting them as true, do not suffice to demonstrate that any Defendant knew that the alleged scheme violated the AKS, or acted with deliberate ignorance or reckless disregard of the truth or falsity of information that would lead a reasonable person to understand that the conduct violated the AKS.

With respect to the Stark Law, Dr. Dones includes allegations that bear relevance on the element of scienter, but they still fall short.  Dr. Dones first alleges that HMC accepted Dr. Six's proposal to purchase services and goods from NuERA for the surgeries that Dr. Six performed at the hospital. (First Am. Compl., Doc. 18, ¶ 48)  He then pleads that "HMC, PHS, Dr. Six, and Gonzales all knew that Gonzales was Dr. Six's son-in-law, *and that it was a Stark Law violation* for the hospital to purchase goods and services from NuERA and other companies represented by Gonzales (including Xspine/Xtant) in connection with surgeries performed by Dr. Six." (*Id*. at ¶ 50 (emphasis added))  This statement, however, represent only a conclusory allegation as to the requisite scienter.  The Court accepts as axiomatic that Dr. Six and Gonzales knew of their familial relationship.  But no factual allegations address Dr. Six's knowledge of Gonzales's agreement with NuERA, NuERA's actual agreement with HMC, or Dr. Six's or Gonzales's knowledge that the alleged scheme violated any laws.  As for HMC and PHS, Dr. Dones does not identify any individual at those entities who even knew of the familial relationship between Dr. Six and

Gonzales.  This deficiency proves fatal.  "A corporation is only a legal entity and strictly speaking it cannot act or have a mental state by itself." *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 348 (5th Cir. 2013) (cleaned up).  Rather, corporations act through employees and agents.  To impute an employee's or agent's knowledge to a corporation, the individual must be "acting within the scope of his authority" and the knowledge must "relate[] to matters within the scope of that authority".  *Hellenic*, 252 F.3d at 395.  In the present case, Dr. Dones neither identifies an HMC or PHS agent or employee, nor alleges that any such individual possessed the requisite knowledge or held the necessary authority to impute any knowledge to the entity.  And even as to the named individual Defendants, Dr. Dones fails to provide any detail showing how they knew that any conduct violated the Stark Law, or how they acted with reckless disregard of such information.

### 3. Presentment

A claim under the FCA also must prove presentment of a bill to the federal government for payment.  A relator need not plead details as to specific medical bills, but must at least allege "other reliable indications of fraud and . . . a level of detail that demonstrates that an alleged scheme likely resulted in bills submitted for government payment." *Nunnally*, 519 Fed. App'x at 893.  In the present matter, the Defendants argue that Dr. Dones fails to satisfy this element.  (Gonzales & NuERA Motion, Doc. 29, 21-22; HMC & PHS Motion, Doc. 30–1, 13-14; Dr. Six & VN Motion, Doc. 31, 7)

Reviewing the First Amended Complaint leads the Court to agree with the Defendants.  The pleading contains no allegation that any Defendant actually submitted a bill for government payment.  Instead, Dr. Dones generally alleges that "every bill that Dr. Six, HMC, either, or both has submitted to the [United States] or [Texas] for reimbursement for medical supplies, physician services, or hospital services used during or related to the surgeries that Dr. Six has performed at HMC" violated the law.  (First Am. Compl., Doc. 18, ¶ 53)  This conclusory allegation, even when

read in the light most favorable to Dr. Dones, alleges only that to the extent that Dr. Six or HMC submitted a bill for reimbursement, that submission violated the FCA. But Dr. Dones does not affirmatively allege that either Dr. Six or HMC actually presented such a bill. And no reliable indications of fraud, pled at a sufficient level of detail, portray an alleged scheme that likely resulted in bills submitted for government payment. In essence, Dr. Dones describes the Medicaid and Medicare program in detail, and then requests that the Court assume that the defendant hospital and surgeon—here, HMC and Dr. Six—must have presented bills to the government for payment. The law does not allow such an assumption without supporting factual allegations. Under similar circumstances, other district courts have dismissed FCA claims. *See, e.g., U.S. ex rel. Bennett v. Bos. Sci. Corp.*, No. CIV.A. H-07-2467, 2011 WL 1231577, at *30 (S.D. Tex. Mar. 31, 2011) (dismissing FCA claim: "[I]n the complaint, the relator has not cited 'particular patients, dates, and corresponding medical records' for the alleged upcoding. Nor has the relator alleged that any physician or hospital submitted a false claim for reimbursement."); *see also United States ex rel. Crocano v. Trividia Health Inc.*, 615 F. Supp. 3d 1296, 1307 (S.D. Fla. 2022)("Rule 9(b) requires more than inferences, consistencies, and suppositions. It is not enough for a relator to simply allege that fraudulent claims 'must have been submitted, were likely submitted[,] or should have been submitted.'"). And Dr. Dones identifies no decision in which a court has concluded that a relator pled a viable FCA claim based on allegations of presentment similar to those within his First Amended Complaint.

### 4. Summary of Common Defenses

The Defendants each challenge Dr. Dones's cause of action under the FCA on the grounds that his allegations cannot show the required false statement, the necessary scienter, or that presentment actually occurred. As previously explained, the Court agrees, finding that Dr. Dones provides only general allegations about a conceivable scheme, but about which he provides insufficient factual detail to render it plausible. For these reasons, the Court concludes that Dr.

Dones does not present a claim based on the FCA on which relief can be granted. And in light of that conclusion, Dr. Dones also does not allege a viable conspiracy claim.

### C. Prime Healthcare Services

PHS also challenges all of Dr. Dones's causes of action on the grounds that it cannot be held liable for HMC's conduct. The Court agrees.

Dr. Dones does not allege that PHS directly engaged in any wrongdoing. And he does not contest that a "bedrock principle of corporate law is that a parent corporation is not liable for actions taken by its subsidiaries." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (cleaned up). Instead, he alleges that "[a]ccording to [PHS's] filings with the Texas Secretary of State, [PHS] is HMC's sole general partner." (First Am. Compl., Doc. 18, 3) And based on this allegation, he argues that he can "hold [PHS], a general partner of HMC, accountable for the actions of the partnership." (Response, Doc. 36, 10)

The record in this case, however, undermines the premise of Dr. Dones's argument. In the First Amended Complaint, he references HMC's corporate filings with the Texas Secretary of State. (*See* First Am. Compl., Doc. 18, ¶ 10) When considering motions to dismiss, courts can consider documents referenced in the plaintiff's pleading. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). These corporate filings confirm that PHS is not HMC's general partner; Prime Healthcare Service–Harlingen Management, LLC holds that position. (Amendment to Registration of a Foreign Limited Partnership, Doc. 38–1) PHS in turn owns Prime Healthcare Services–Harlingen Management, LLC. (Certificate of Interested Parties, Doc. 21) These corporate records conclusively undermine Dr. Dones's allegation that PHS is the general partner of HMC. As PHS cannot be held liable for the actions of its corporate subsidiaries, Dr. Dones's allegations against this entity do not state a claim upon which relief can be granted.[8]

---

[8] At the hearing on the pending Motions, Dr. Dones's counsel acknowledged that no claims would be viable against PHS if the Court considered the corporate records.

### D.  Texas Medicaid Fraud Prevention Act

Dr. Dones also alleges causes of action based on the TMFPA (First Am. Compl., Doc. 18, ¶¶ 85–96), which represent his sole remaining claims following the Court's conclusion that the First Amended Complaint presents no viable cause of action under federal law.  District courts may exercise supplemental jurisdiction over state law claims even when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  In the present matter, however, the Court declines to do so.

The "general rule" is to "decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Recs. Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).  When considering whether to exercise supplemental jurisdiction, district courts consider "judicial economy, convenience, fairness, and comity" as relevant factors.  *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011).

The Court finds that these factors weigh in favor of declining to exercise supplemental jurisdiction.  Judicial economy typically weighs in favor of exercising supplemental jurisdiction only when the case has already involved significant discovery and motion practice. *See, e.g., Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (finding that the district court abused its discretion in declining to exercise supplemental jurisdiction after three years of litigation and rulings on several important motions related to the merits of the state law claims).  In the present matter, the lawsuit remains at an early stage.  At the hearing on the pending Motions, the parties indicated that they had not engaged in discovery.  Thus, even if the Court declined to exercise supplemental jurisdiction and Dr. Dones had to re-file the TMFPA claims in state court, the parties would experience little, if any, duplication of discovery, motion practice, or trial preparations.  In addition, the convenience and fairness factors prove neutral; the state courthouse lies a block away from the federal courthouse, and no party contends that having to litigate in a state court would be unfair or occasion any undue inconvenience.  Finally,

24

the factor of comity weighs in favor of declining to exercise supplemental jurisdiction.  Case law does not clarify the differences between the TMFPA and the FCA.  The Court located no Fifth Circuit authority providing guidance regarding the distinctions between these statutes, and the State of Texas informs the Court that material differences exist. (*See* Texas Statement of Interest, Doc. 35, 2 ("The TMFPA differs substantially from the federal False Claims Act . . . .")) Federal district courts are "not as well equipped for determinations of state law as are state courts." *Enochs*, 641 F.3d at 160.   Under principles of comity, Texas state courts should have the opportunity to apply a Texas statute.[9]

Based on the relevant factors, the Court declines to exercise supplemental jurisdiction over Dr. Dones's causes of action based on the TMFPA.

### E.  Leave to Amend

In his Response, Dr. Dones requests that the Court grant him leave to amend his complaint "to the extent the Court finds any of [his] allegations deficient at this early state of the action." (Resp., Doc. 36, 22)  At the hearing on the pending Motions, however, counsel for Dr. Dones conceded that he would have no additional facts to allege, and would instead add new claims under state law.

"Although leave to amend should be freely given when justice so requires, a district court may refuse leave to amend if the filing of the amended complaint would be futile, i.e., if the complaint as amended would be subject to dismissal." *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (cleaned up).  With respect to Dr. Dones's causes of action based on federal law, allowing him to amend his pleading would be futile.  His factual allegations would remain identical to those within his First Amended Complaint, and those allegations do not present a

---

[9] In their Motions, the Defendants present arguments against Dr. Dones's TMFPA claims and request that the Court dismiss those causes of action with prejudice.  For the reasons described in this section, however, the Court declines to reach these arguments and will dismiss the claims without prejudice, enabling Dr. Dones to present them to a Texas state court.

claim upon which relief can be granted.  Thus, the Court declines to grant leave for Dr. Dones to amend his First Amended Complaint.

## IV.    Conclusion

For the reasons explained in this Order and Opinion, it is:

**ORDERED** that Defendants Michael Gonzales and NuERA Medical L.L.C.'s Motion to Dismiss Under Federal Rules 12(b)(6) and 9(b) (Doc. 29) is **GRANTED IN PART AND DENIED IN PART**;

**ORDERED** that Defendants Prime Healthcare Services Inc. and Harlingen Medical Center L.P.'s Motion to Dismiss Relator's First Amended Complaint (Doc. 30) is **GRANTED IN PART AND DENIED IN PART**;

**ORDERED** that Defendant Dr. Eric Six, M.D. and Valley Neurosurgeons, P.L.L.C.'s Motion to Dismiss Relator's First Amended Complaint (Doc. 31) is **GRANTED IN PART AND DENIED IN PART**;

**ORDERED** that all of Dr. Dones's causes of action based on federal law against each of the Defendants are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted; and

**ORDERED** that all claims made pursuant to the Texas Medicaid Fraud Prevention Act are **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1367(c)(3).

The Court will separately issue a Final Judgment in accordance with this Order and Opinion.

Signed on November 9, 2023.

Fernando Rodriguez, Jr.
United States District Judge